UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN COURTHOUSE

| | |
|---|---|
| Kandus Dakus, individually and on behalf of all others similarly situated, | 1:22-cv-07962 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Koninklijke Luchtvaart Maatschappij, N.V., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Koninklijke Luchtvaart Maatschappij, N.V. ("Defendant" or "KLM") operates KLM Royal Dutch Airlines which tells potential customers of its commitment to "Fly Responsibly."



2. World temperature has risen by 1.1 ºC since 1850 due to greenhouse gases such as carbon dioxide (CO2) from burning fossil fuels.

3. This climate change has caused global devastation, such as harms to health, economies, and food and water supply.

4. In light of these dangers, 196 countries entered into the 2015 Paris Climate Accords

and adopted the recommendations of the Intergovernmental Panel on Climate Change ("IPCC") to limit climate change to an increase of 1.5 ºC and reach net zero emissions by 2050.

5. Expert reports indicate these reasonable steps will result in several hundred million fewer people being exposed to climate-related risks and susceptible to poverty.

6. Air travel is one of the most significant contributors to climate change.

7. KLM is aware that acting to limit the effects of climate change is important to customers, and encourages them to "Fly Responsibly" to "create[e] a more sustainable future," to achieve "the targets defined in the Paris Climate Agreement."

8. KLM entices customers to "offset" and "reduce" the environmental impact of flying by purchasing carbon credits through its CO2ZERO program.[1]

9. This program is based on reforestation involving planting trees, which function as carbon dioxide sinks, that in theory absorb a defined amount of CO2 from the atmosphere equivalent to what is expended per flier in a typical flight.

10. Defendant's promotion of offsets as sufficient to negate the environmental impact of flying and consistent with the Paris Agreement is false, deceptive and misleading.

11. First, no credible evidence exists that purchasing offsets is equivalent to negating the environmental effects of flying such that a flight could be described as "CO2 neutral" and "CO2ZERO."

12. Second, according to the European Aviation Safety Agency, the non-CO2 effects from flying are three times greater than the warming effect of CO2.

13. Defendant's offset program admittedly has no effect on other greenhouse gases

---

[1] KLM also promotes sustainable aviation fuels even though such fuels have never exceeded a de minimis amount of all fuels used and are not expected to any time in the future.

associated with flying like methane, nitrogen and condensation trails from aircraft ("contrails").

14. Third, guidance from the SBTi and the Voluntary Carbon Markets Integrity Initiative instructs that carbon offsets can only be used to reach emission targets in a way that does not impede reduction in emissions overall consistent with the 1.5 ºC target of the Paris Agreement.

15. Fourth, the use of offsets in the form of trees is misleading because a tree storing CO2 in its organic material is a short-lived and unstable form of storage.

16. When fossil fuels are left unused, they can be stored stably for millions of years.

17. Defendant's encouragement to consumers to "fly responsibly" is inconsistent with limiting the effects of climate change as agreed to in the Paris Agreement.

18. KLM's Climate Action Plan, not fully disclosed to those seeking to purchase flights, reveals it has committed only to the reduction of greenhouse gas emissions by twelve percent by 2030, which is well below 2ºC target of the Paris Agreement.

19. The IPCC determined that changing behavior is the most immediate and significant way to reduce emissions, and can do so by between forty and seventy percent.

20. According to Greenpeace and The New Weather Institute, marketing and advertising of airlines such as that of KLM are responsible for the equivalent of 34 million tons of CO2 emissions.

21. European organizations have brought these issues to Defendant's attention, and it has refused to act.[2]

22. Defendant's advertising impedes the achievement of the Paris target by preventing a reduction in demand for flying.

23. Defendant makes other representations and omissions which are false and

---

[2] Anthony Deutsch, Dutch airline KLM sued over 'greenwashing' ads

3

misleading.

24. As a result of the false and misleading representations, customers are given the false promise that they can "Fly Responsibly" and that the environmental impact of their flights will be balanced by any offsets.

## Jurisdiction and Venue

25. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

26. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

27. Plaintiff is a citizen of Texas.

28. Defendant is a Dutch corporation headquartered in Amstelveen, North Holland, Netherlands.

29. KLM's principal place of business in the United States is in New York County.

30. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

31. The members of the class Plaintiff seeks to represent are more than 100, because KLM flies internationally from dozens of airports in the United States on a daily basis in the States covered by the classes Plaintiff seeks to represent.

32. Venue is in this District because Defendant's principal place of business in the United States is in this District and the representations made to Plaintiff and other fliers were decided upon here.

## Parties

33. Plaintiff Kandus Dukas is a citizen of Corpus Christi, Nueces County, Texas.

34. Defendant Koninklijke Luchtvaart Maatschappij, N.V. is a Dutch corporation headquartered in Amstelveen, North Holland, Netherlands.

35. KLM's principal place of business in the United States is in New York County.

36. KLM is the world's oldest airline and part of the Air France-KLM Group.

37. KLM operates numerous international routes from United States airports.

38. KLM has been at the forefront of the aviation industry, from its adoption of computerized reservations and advanced jumbo jets to its commitment to limiting the dangerous effects of climate change.

39. KLM is particularly committed to reducing the effects of climate change due to its role as the flag carrier of the Netherlands.

40. Since the founding of the Netherlands, "settlers [] started pumping water to clear land for farms and houses," with "[N]o place in Europe [] under greater threat than this waterlogged country on [its] edge."

41. Since "[M]uch of the nation sits below sea level and is gradually sinking … the prospect of rising tides and fiercer storms [brought by climate change]" is not a theoretical but an immediate danger.

42. KLM has emphasized the "need to focus on reducing our negative emissions now, as this is the decade of action," to limit the effects of climate change not just in the Netherlands but globally.

43. However, KLM has lobbied extensively against aviation regulation and promoted a growth and expansion policy, which is inconsistent with achieving the goals of the Paris Agreement.

44. Plaintiff is concerned about effects of climate change.

45. Plaintiff realizes that flying requires emission of carbon dioxide and chose KLM in part because of its professed commitment and actions to limit the effects of climate change.

46. Plaintiff flew KLM from George Bush International Airport in Houston to Europe in the summer of 2022.

47. Plaintiff relied on the above-identified words, promises, commitments, plans, and pictures by KLM about its efforts to limit the effects of climate change when she purchased her flight.

48. Plaintiff chose between KLM and other airlines which did not tout their environmental attributes.

49. Plaintiff paid more for her flight on KLM than she would have paid absent its false and misleading statements and omissions.

## Class Allegations

50. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Texas and New York Class:** All persons in Texas and New York who bought flights on KLM during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Utah, West Virginia, Wyoming, Arkansas, Ohio, Nevada, South Carolina, and Mississippi who bought flights on KLM during the statutes of limitations for each cause of action alleged.

51. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

52. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

53. Plaintiff is an adequate representative because her interests do not conflict with other members.

54. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

55. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

56. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## New York General Business Law §§ 349 and 350

57. Plaintiff incorporates by reference all preceding paragraphs.

58. Plaintiff saw and relied on KLM's representations described above, to expect its flight and actions were consistent with its commitment to flying "sustainably," had practices in place to limit the effects of climate change, and/or could offset the impact of flights purchased by customers.

## Violation of State Consumer Fraud Acts
## (Consumer Fraud Multi-State Class)

59. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

60. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

## Breaches of Express Warranty,
## Implied Warranty of Merchantability/Fitness for a Particular Purpose and
## Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

61. The flights and its actions were identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that because it was through KLM, its environmental impact would be less than other airlines, based on its representations, it was sustainable, and consistent with limiting the impact of climate change.

62. Defendant directly marketed its flights and actions to Plaintiff through its advertisements and marketing, through various forms of media, on its website, and in print and digital in print circulars, direct mail, descriptions distributed to resellers, and targeted digital advertising.

63. Defendant knew the attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

64. Defendant's representations were conveyed in writing and promised its flights and actions would be defect-free, and Plaintiff understood this meant that it was committed to flying "sustainably," had practices in place to limit the effects of climate change, and/or could offset the impact of flights purchased by customers.

65. Defendant's representations affirmed and promised it was committed to flying "sustainably," had practices in place to limit the effects of climate change, and/or could offset the impact of flights purchased by customers.

66. Defendant described itself and its flights so Plaintiff believed it was committed to flying "sustainably," had practices in place to limit the effects of climate change, and/or could offset the impact of flights purchased by customers, which became part of the basis of the bargain that it would conform to its affirmations and promises.

67. Defendant had a societal duty of care to disclose and/or provide non-deceptive descriptions of its efforts to prevent harm to others, by acting consistent with its commitment to

8

limit the harmful effects of climate change.

68. This duty is based on Defendant's outsized role in the aviation market, the world's oldest airline, and the flag carrier for the Netherlands, a country which has grappled with effects of climate change throughout its history.

69. Plaintiff recently became aware of Defendant's breach of it warranties.

70. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the flight's express and implied warranties.

71. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, advocacy organizations, and consumers, to its main offices, and by consumers through online forums.

72. The flights and its actions did not conform to its affirmations of fact and promises due to Defendant's actions.

73. The flights and its actions were not merchantable because they were not fit to pass in the trade as advertised, not fit for the ordinary purpose for which they were intended and did not conform to their promises or affirmations of fact made on its website, on billboards, in print and online, because they were marketed with a commitment to flying "sustainably," indicating practices were in place to limit the effects of climate change, and/or that it could offset the impact of flights purchased by customers.

74. The flights and its actions were not merchantable because Defendant had reason to know the particular purpose for which Plaintiff chose to fly on KLM, because she expected it had a commitment to flying "sustainably," had practices in place to limit the effects of climate change, and/or that it could offset the impact of flights purchased by customers.

### Negligent Misrepresentation

75. Defendant had a duty to truthfully represent the flights and its actions, which it breached.

76. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, an aviation leader representing the Netherlands, a country at the forefront of acting to limit climate change.

77. The representations and omissions went beyond the specific representations on its website, billboards, and elsewhere, as they incorporated the extra-labeling promises and commitments to sustainability and environmental stewardship it has been known for.

78. These promises were outside of the standard representations that other airlines may make in a standard arms-length, context to customers deciding which airline to fly.

79. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

80. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the flight from Defendant.

### Fraud

81. Defendant misrepresented and/or omitted the attributes and qualities of the flights and its actions, that it had a commitment to flying "sustainably," had practices in place to limit the effects of climate change, and/or that it could offset the impact of flights purchased by customers.

82. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

### Unjust Enrichment

83. Defendant obtained benefits and monies because the flights and its actions were not

as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary damages, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated:   September 17, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com