**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN COURTHOUSE**

| | |
|---|---|
| Kandus Dakus, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Koninklijke Luchtvaart Maatschappij, N.V.,<br><br>Defendant | 1:22-cv-07962-RA<br><br><br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Koninklijke Luchtvaart Maatschappij, N.V. ("Defendant" or "KLM") operates KLM Royal Dutch Airlines which touts its commitment to "Fly Responsibly."

**I.   DANGERS OF CLIMATE CHANGE**

2. World temperature has risen by 1.1 ºC since 1850 due to greenhouse gases such as carbon dioxide ($CO_2$) from burning fossil fuels.

3. This climate change has caused global devastation, such as harms to health, economies, and food and water supply.

4. 196 countries entered into the 2015 Paris Climate Accords and adopted the recommendations of the Intergovernmental Panel on Climate Change ("IPCC") to limit climate change to an increase of 1.5 ºC and reach net zero emissions by 2050.

5. Expert reports indicate these steps will result in several hundred million fewer people being exposed to climate-related risks and susceptible to poverty.

6. The IPCC has outlined the necessary emission reductions that are needed to have a

chance of limiting climate change to a (global) warming of 1.5 ºC.

## II. VOLUNTARY ENVIRONEMNTAL INITIATIVES

7. In the three decades since the climate crisis became part of the global agenda, scientists, activists, and politicians have wrongly assumed governments would mandate a shift away from fossil fuels.

8. However, legislative attempts to tackle climate change have repeatedly failed.[1]

9. In this void, corporate social responsibility codes have developed to show the public businesses are committed to protecting the environment.

10. These voluntary environmental initiatives are beyond existing legal requirements.[2]

11. Government officials increasingly focus on the private sector to help limit climate change.[3]

---

[1] Beckers, Anna. Enforcing corporate social responsibility codes: on global self-regulation and national private law. Bloomsbury Publishing, 2015.

[2] Gibson, Robert B. Voluntary initiatives and the new politics of corporate greening. University of Toronto Press, 1999; Lynes, Jennifer K., and Mark Andrachuk. "Motivations for corporate social and environmental responsibility: A case study of Scandinavian Airlines." Journal of International management 14.4 (2008): 377-390; Benn, Suzanne, and Dexter Dunphy. Corporate governance and sustainability: Challenges for theory and practice. Routledge, 2013. Cragg, Wesley, ed. Ethics codes, corporations, and the challenge of globalization. Edward Elgar Publishing, 2005. Peters, N. (2010). Inter-organisational Design of Voluntary Sustainability Initiatives Increasing the Legitimacy of Sustainability Strategies for Supply Chains. Gabler.

[3] McKercher, Bob, et al. "Achieving voluntary reductions in the carbon footprint of tourism and climate change." Journal of sustainable tourism 18.3 (2010): 297-317. Higham, James, et al. "Climate change, tourist air travel and radical emissions reduction." Journal of Cleaner Production 111 (2016): 336-347. Velonaki, Argyro. From Climate Change Knowledge to Climate Change Passivity: Airline Policies on Voluntary Carbon Offsets and the Carbon Literate Citizen. Diss. Manchester Metropolitan University, 2021. Oswald, Lisa, and Andreas Ernst. "Flying in the face of climate change: quantitative psychological approach examining the social drivers of individual air travel." Journal of Sustainable Tourism 29.1 (2020): 68-86. Becken, Susanne. "Tourists' perception of international air travel's impact on the global climate and potential climate change policies." Journal of sustainable tourism 15.4 (2007): 351-368. van Birgelen, Marcel, Janjaap Semeijn, and Pia Behrens. "Explaining pro-environment consumer behavior in air travel." Journal of Air Transport Management 17, no. 2 (2011): 125-128.

12. The Director of President Biden's National Economic Council stated that a transition away from fossil fuels "will only happen if the American private sector, [] [is] an inextricable part of that process."

13. The Secretary of Energy under President Biden has told executives that companies' voluntary commitments are critical to tackling climate change.

14. Reasons that companies adopt voluntary environmental action include a shift away from profit-maximizing to social welfare maximizing behavior, conforming to pressures from community groups, stockholders, environmental organizations and industry members.[4]

### III.  KLM VOLUNTARILY COMMITTED TO ENVIRONMENTAL GOALS

15. KLM is based in the Netherlands, a country uniquely vulnerable to climate change and rising oceans, because much of that nation is below sea level.

16. KLM tells customers of its commitment to "Fly Responsibly" and that it "recognize[s] the urgent need to limit global warming, and [] ha[s] committed to the targets defined in the Paris Climate Agreement."



---

[4] Paton, Bruce. "Voluntary environmental initiatives and sustainable industry."; Baumeister, Stefan. "Mitigating the climate change impacts of aviation through behavioural change." Transportation Research Procedia 48 (2020): 2006-2017.

17. KLM's Climate Action Plan is based on the Science Based Targets Initiative ("STBi") to limit global warming to less than 1.5 ºC.

18. KLM has committed to reduce emissions by 12% in 2030 compared to 2019.

19. KLM recognized "that people are concerned about climate change and take responsibility for reducing the impact of our operations on our environment."

20. KLM entices customers to "offset" and "reduce" the environmental impact of flying through its CO2ZERO program.

21. This includes reforestation projects in Panama and sustainable aviation fuels (SAF).

## IV. KLM HAS NOT KEPT ITS PROMISE TO MEET ENVIRONMENTAL GOALS

A. <u>Offsets Insufficient</u>

22. Carbon offsetting is based on the idea that you can reduce or remove CO2 from the atmosphere by planting and growing trees which absorb CO2.

23. A carbon credit is issued for the prevention of emissions or the removal of greenhouse gases.

24. No credible evidence exists that purchasing carbon credits is equivalent to negating the environmental effects of flying such that a flight could be described as "CO2 neutral" and "CO2ZERO" as Defendant does.

25. One expert stated that "it would be misleading for KLM to suggest to its customers that purchasing offsets can truly compensate for, or reduce the impact of, flying."

26. According to the European Aviation Safety Agency, the non-CO2 effects from flying are three times greater than the warming effect of CO2.

27. This includes other greenhouse gases associated with flying like methane, nitrogen and condensation trails from aircraft ("contrails").

B. <u>Carbon Credits through Reforestation Inadequate</u>

28. The use of offsets via Defendant's reforestation projects is misleading because a tree storing CO2 is a short-lived and unstable form of storage, not permanent.

29. This is out of proportion to the eternity that CO2 would have been in the ground if it had not been used for fuel.

C. <u>Sustainable Fuels have Negligible Impact</u>

30. Defendant's focus on SAFs is misleading because this has a negligible effect on reducing CO2 emissions from flying.

31. The percentage of SAF used by KLM is 0.18% of their total fuel usage.

32. According to the IPCC, these fuel products are unlikely to be used on a commercial scale at anytime in the near future.

D. <u>KLM's Goals are Misleading</u>

33. KLM's projections "are based on a well below 2 ºC scenario" by 2050, which is inconsistent with the Paris Agreement to prevent world temperature rising above 1.5 ºC.

34. KLM contributes to the current pathway in which there is a very high probability that global warming will exceed 1.5 ºC

Jurisdiction and Venue

35. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

36. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

37. Plaintiff is a citizen of Texas.

38. Defendant is a Dutch corporation headquartered in Amstelveen, North Holland,

Netherlands.

39. KLM's principal place of business in the United States is in New York County.

40. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

41. The members of the class Plaintiff seeks to represent are more than 100, because KLM flies internationally from dozens of airports in the United States on a daily basis in the States covered by the classes Plaintiff seeks to represent.

42. Venue is in this District because Defendant's principal place of business in the United States is in this District and the representations made to Plaintiff and other fliers were decided upon here.

## Parties

43. Plaintiff Kandus Dukas is a citizen of Corpus Christi, Nueces County, Texas.

44. Defendant Koninklijke Luchtvaart Maatschappij, N.V. is a Dutch corporation headquartered in Amstelveen, North Holland, Netherlands.

45. KLM's principal place of business in the United States is in New York County.

46. KLM is the world's oldest airline and part of the Air France-KLM Group.

47. KLM operates numerous international routes from United States airports.

48. KLM is committed to reducing the effects of climate change due to its role as the flag carrier of the Netherlands.

49. Since the founding of the Netherlands, "settlers [] started pumping water to clear land for farms and houses," with "[N]o place in Europe [] under greater threat than this waterlogged country on [its] edge."

50. Since "[M]uch of the nation sits below sea level and is gradually sinking … the

prospect of rising tides and fiercer storms [brought by climate change]" is not a theoretical but an immediate danger.

51. Plaintiff is concerned about effects of climate change.

52. Plaintiff realizes that flying requires emission of carbon dioxide and chose KLM in part because of its commitments and actions to limit the effects of climate change.

53. Plaintiff flew KLM from George Bush International Airport in Houston to Europe in the summer of 2022.

54. Plaintiff relied on the above-identified words, promises, commitments, plans, and pictures by KLM about its efforts to limit the effects of climate change when she purchased her flight.

55. Plaintiff chose between KLM and other airlines which did not tout their environmental attributes.

56. Plaintiff paid more for her flight on KLM than she would have paid absent its false and misleading statements and omissions.

## Class Allegations

57. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Texas and New York Class:** All persons in Texas and New York who bought flights on KLM during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Utah, West Virginia, Wyoming, Arkansas, Ohio, Nevada, South Carolina, and Mississippi who bought flights on KLM during the statutes of limitations for each cause of action alleged.

58. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled

to damages.

59. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

60. Plaintiff is an adequate representative because her interests do not conflict with other members.

61. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

62. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

63. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law §§ 349 and 350</u>

64. Plaintiff incorporates by reference all preceding paragraphs.

65. Plaintiff saw and relied on KLM's voluntary representations with respect to limiting climate change, through its actions and those made available to its customers, and believed these were consistent with those goals.

66. Plaintiff was misled because its efforts were not consistent with its climate change promises.

<u>Violation of State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

67. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

68. The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

### Breach of Contract

69. Plaintiff entered into a contract with Defendant when she paid for a flight on KLM.

70. The terms included Defendant's representations that it was acting in accordance to reach the goals of the Paris Agreement and preventing climate change to exceed 1.5 degrees Celsius by 2050.

71. Defendant breached these terms because its targets for emissions reduction were not consistent with the Paris Agreement nor with CO2ZERO or emission neutrality.

72. Plaintiff suffered damages by Defendant's breach because she spent more money by booking a flight on KLM than with another airline that did not make such promises to her.

### Unjust Enrichment

73. Defendant obtained benefits and monies because the flights and its actions were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary damages, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated: December 14, 2022

                                        Respectfully submitted,

                                        /s/Spencer Sheehan
                                        Sheehan & Associates, P.C.
                                        60 Cuttermill Rd Ste 412
                                        Great Neck NY 11021
                                        (516) 268-7080
                                        spencer@spencersheehan.com