**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KANDUS DAKUS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 1:22-cv-07962-RA |
| v. | |
| KONINKLIJKE LUCHTVAART MAATSCHAPPIJ, N.V., | |
| Defendant. | |

**DEFENDANT KLM'S MEMORANDUM OF LAW IN**
**<u>SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

Keara M. Gordon
Colleen Carey Gulliver
Haley D. Torrey (*pro hac vice*)
DLA PIPER LLP
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
keara.gordon@dlapiper.com
colleen.gulliver@dlapiper.com
haley.torrey@us.dlapiper.com

*Attorneys for Defendant*
*Koninklijke Luchtvaart Maatschappij, N.V.*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

    A.    The Plaintiff, Ms. Dakus ...........................................................................................3

    B.    KLM's Actions to Work Toward More Sustainable Aviation....................................5

        1.    KLM is Working Toward the Paris Agreement Targets....................................5

        2.    KLM Gives Passengers the Option to Reduce Their Impact. ..................................6

STANDARD OF REVIEW .....................................................................................................6

ARGUMENT ...........................................................................................................................7

    I.    The ADA Preempts the Consumer Protection and Unjust Enrichment Claims............7

    II.    The Plaintiff Lacks Article III Standing. .....................................................................9

    III.    The Plaintiff Has Not Suffered an Injury That KLM Caused.....................................11

        A.    The Plaintiff Has Not Plausibly Alleged Causation. .......................................12

        B.    The Plaintiff Has Not Suffered an Injury. .......................................................13

    IV.    The Breach of Contract Claim Fails for Additional Reasons. ....................................14

        A.    There Is No Contract Between KLM and Ms. Dakus Regarding the Paris Agreement or KLM's Environmental Initiatives. ..................................14

        B.    The Plaintiff Fails Sufficiently to Plead a Contract. ......................................15

        C.    Aspirational Website Statements Do Not Create a Contract...........................16

        D.    The Plaintiff Fails to Allege a Breach. ...........................................................16

    V.    The GBL Claims Fail for Additional Reasons............................................................17

        A.    KLM Did Not Make a Material Misrepresentation..........................................17

            1.    The Statements are True....................................................................18

            2.    The Allegations Regarding the Paris Agreement are Predicated on a Misstatement and Are Aspirational Statements............................21

        B.    The Plaintiff Cannot Invoke New York's GBL. .............................................23

    VI.    The Unjust Enrichment Claim Fails. ..........................................................................23

    VII.    The Plaintiff Cannot Assert Claims Under Other States' Consumer Fraud Statutes.......................................................................................................................24

    VIII.  The Remedies Sought Beyond Compensatory Damages Must Be Stricken................25

CONCLUSION ......................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdel-Karim v. EgyptAir Airs.*,
116 F. Supp. 3d 389 (S.D.N.Y. 2015) ...................................................................................11

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
520 F.3d 218 (2d Cir. 2008) ................................................................................................8

*Akridge v. Whole Foods Mkt. Grp., Inc.*,
*2022 WL 955945* (S.D.N.Y. Mar. 30 2022) .......................................................................11

*Alatortev v. JetBlue Airways, Inc.*,
2018 WL 784434 (N.D. Cal. Feb. 7, 2018) .........................................................................16

*Amaya v. Ballyshear LLC*,
340 F. Supp. 3d 215 (E.D.N.Y. 2018) ..................................................................................7

*American Airs., Inc. v. Wolens*,
513 U.S. 219 (1995) .........................................................................................................8, 9

*Angeles v. Nestle USA, Inc.*,
2022 WL 4626916 (S.D.N.Y. Sept. 30, 2022) ...............................................................17, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................7

*Barber v. Nestlé USA, Inc.*,
154 F. Supp. 3d 954 (C.D. Cal. 2015) ................................................................................22

*Berman v. Sugo*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008) ..................................................................................4

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) .................................................................................................4

*Campbell-Clark v. Blue Diamond Growers*,
2019 WL 10852810 (E.D.N.Y. Dec. 17, 2019) ...................................................................25

*Carter v. Healthport Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) ...................................................................................................7

*Chou v. Charles Schwab & Co.*,
2022 WL 1127384 (N.D. Cal. Mar. 22, 2022) ....................................................................15

*Chung v. Pure Fishing, Inc.*,
2022 WL 866769 (E.D.N.Y. Mar. 23, 2022) .......................................................................25

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ..........................................................................11, 14

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................................................24

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)....................................................................................................4

*DeCostanzo v. GlaxoSmithKline PLC*,
  2022 WL 17338047 (E.D.N.Y. Nov. 29, 2022)...................................................................13

*Dwyer v. Allbirds, Inc.*,
  598 F. Supp. 3d 137 (S.D.N.Y. 2022).....................................................................17, 18, 23

*Earth Island Institute v. The Coca-Cola Co.*,
  No. 2021 CA 001846 ...........................................................................................................22

*Echo Bay Pharms., LLC v. Torrent Pharma, Inc.*,
  2022 WL 2132964 (S.D.N.Y. June 14, 2022) .....................................................................12

*Fawemimo, v. Am. Airs., Inc.*,
  751 F. App'x 16 (2d Cir. 2018) .............................................................................................8

*Fink v. Time Warner Cable*,
  837 F. Supp. 2d 279 (S.D.N.Y. 2011)..................................................................................24

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2019)...........................................................................................17, 21

*Fisher v. Richmond, The Am. Int'l Univ. in London, Inc.*,
  2018 WL 3979594 (S.D.N.Y. Aug. 20, 2018), *aff'd*, 773 F. App'x 15 (2d Cir.
  2019) ...............................................................................................................................15, 17

*Frei v. Taro Pharms. U.S.A., Inc.*,
  443 F. Supp. 3d 456 (S.D.N.Y. 2020), *aff'd sub nom. Frei v. Taro Pharm.*
  *U.S.A., Inc.*, 844 F. App'x 444 (2d Cir. 2021) ...................................................................12

*In Re Gerber Prods. Heavy Metals Baby Food Litig.*,
  2022 WL 10197651 (E.D. Va. Oct. 17, 2022)......................................................................13

*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006)...................................................................................................4

*Gould v. Helen of Troy Ltd.*,
  2017 WL 1319810 (S.D.N.Y. Mar. 30, 2017) ......................................................................25

*Grunwald v. Bon Secours Charity Health Sys. Med. Grp., P.C.*,
  2020 WL 2192683 (S.D.N.Y. May 6, 2020) .........................................................................7

*United States ex rel. Hanks v. United States*,
   961 F.3d 131 (2d Cir. 2020)................................................................................10

*People ex rel. Harris v. Delta Air Lines, Inc.*,
   247 Cal. App. 4th 884 (2016) ...............................................................................8

*Harris v. Pfizer, Inc.*,
   586 F. Supp. 3d 231 (S.D.N.Y. 2022)..................................................................18

*Housey v. Procter & Gamble Co.*,
   2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ........................................................12

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
   1 F. Supp. 3d 34 (E.D.N.Y. 2014) *on reconsideration*, 14 F. Supp. 3d 99
   (E.D.N.Y. 2014).....................................................................................................25

*Hughes v. Chattem. Inc.*,
   818 F.Supp.2d 1112 (S.D. Ind. 2011) ..................................................................11

*Huston v. Conagra Brands, Inc.*,
   2022 WL 4647251 (C.D. Ill. Sept. 30, 2022) (Arkansas) .....................................24

*INTL FCStone Mkts., LLC v. Intercambio Mexicano de Comercio S.A. de C.V.*,
   2021 WL 5304285 (S.D.N.Y. Nov. 15, 2021) .......................................................12

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................................................14

*Jessani v. Monini N. Am., Inc.*,
   744 F. App'x 18 (2d Cir. 2018) .............................................................................17

*Joan Cravens, Inc. v. Deas Constr. Inc.*,
   2016 WL 9240622 (S.D. Miss. May 5, 2016) .......................................................24

*Kaufman v. Sirius XM Radio, Inc.*,
   751 F. Supp. 2d 681 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012)........23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)...............................................................................................11

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018).......18

*Kruger v. Virgin Atl. Airways, Ltd.*,
   976 F. Supp. 2d 290 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014).......14

*In re LATAM Airs. Grp. S.A.*,
   2022 WL 3965697 (Bankr. S.D.N.Y. Aug. 31, 2022) ............................................8

*Lee v. City of New York,*
  2005 WL 2365320 (S.D.N.Y. Sept. 22, 2005), *aff'd*, 181 F. App'x 55 (2d Cir.
  2006) ....................................................................................................................24

*Lehman v. USAIR Grp., Inc.,*
  930 F. Supp. 912 (S.D.N.Y. 1996)........................................................................8

*Leonard v. Nw. Airs., Inc.,*
  605 N.W.2d 425 (Minn. Ct. App. 2000).................................................................8

*Lilani v. Noorali,*
  2011 WL 13667 (S.D. Tex. Jan. 3, 2011) ............................................................23

*MacNaughten v. Young Living Essential Oils, LC,*
  575 F. Supp. 3d 315 (N.D.N.Y. 2021) .................................................................25

*Maddox v. Bank of N.Y. Mellon Trust Co.,*
  19 F.4th 58 (2d Cir. 2021) ....................................................................................9

*McLean-Laprade v. HSBC,*
  2013 WL 3930565 (N.D.N.Y. July 30, 2013) .......................................................25

*Miami Prods. & Chem. Co. v. Olin Corp.,*
  546 F. Supp. 3d 223 (W.D.N.Y. 2021)..................................................................24

*Miller v. Sanofi Consumer Healthcare,*
  2023 WL 112553 (S.D.N.Y. Jan. 5, 2023) ...........................................................21

*Morales v. Trans World Airs., Inc.,*
  504 U.S. 374 (1992)...........................................................................................7, 8

*Myers v. Starbucks Corp.,*
  2020 WL 13302437 (C.D. Cal. July 29, 2020)..................................................19, 22

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
  350 F. Supp. 2d 160 (D. Me. 2004) ......................................................................24

*Nicklas v. Pro. Assistance, LLC,*
  2018 WL 8619646 (D. Wyo. Sept. 26, 2018).........................................................24

*Norman v. Trans World Airls., Inc.,*
  2000 WL 1480367 (S.D.N.Y. Oct. 6, 2000)...........................................................25

*In re Nw. Airs. Priv. Litig.,*
  2004 WL 1278459 (D. Minn. June 6, 2004)............................................................8

*Nw., Inc. v. Ginsberg,*
  572 U.S. 273 (2014)...............................................................................................8

*Okoroafor v. v. Emirates Airs.,*
  2020 WL 3567143 (N.Y. Sup. Ct. June 22, 2020)...................................................8

*Pels v. Keurig Dr. Pepper, Inc.*,
    2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ....................................................11

*Pena v. Brit. Airways, PLC (UK)*,
    2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020), *aff'd,* 849 F. App'x 13 (2d Cir.
    2021) ...............................................................................................................8

*People v. Trans World Airs., Inc.*,
    147 Misc. 2d 697 (Sup. Ct. N.Y. Cnty. 1990), *aff'd in part*, 171 A.D.2d 76
    (1st Dep't 1991) ...............................................................................................8

*PHI Air Med., LLC v. Corizon, Inc.*,
    628 S.W.3d 460 (Tenn. Ct. App. 2021) ...........................................................8

*Pittman v. Chick-Fil-A, Inc.*,
    2022 WL 2967586 (S.D.N.Y. July 27, 2022) ........................................... *passim*

*Rivera v. S.C. Johnson & Son, Inc.*,
    2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021) .............................................7, 14

*Roberts v. Bassett*,
    2022 WL 16936210 (2d Cir. Nov. 15, 2022) ...................................................9

*Roberts v. Weight Watchers Int'l, Inc.*,
    217 F. Supp. 3d 742 (S.D.N.Y. 2016) ............................................................25

*Robey v. PVH Corp.*,
    495 F. Supp. 3d 311 (S.D.N.Y. 2020) ............................................................13

*Ruiz v. Darigold, Inc.*,
    2014 WL 5599989 (W.D. Wash. Nov. 3, 2014) .............................................22

*Rynasko v. New York Univ.*,
    2021 WL 1565614 (S.D.N.Y. Apr. 21, 2021) .................................................10

*Schultz v. United Airs., Inc.*,
    797 F. Supp. 2d 1103 (W.D. Wash. 2011) .....................................................16

*Simington v. Lease Fin. Grp., LLC*,
    2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) ...................................................25

*Smith v. Apple, Inc.*,
    583 F. Supp. 3d 554 (S.D.N.Y. 2022) ............................................................15

*Sokoloff v. Town Sports Int'l, Inc.*,
    6 A.D.3d 185 (1st Dep't 2004) .......................................................................11

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) .............................................................................11

*Spencer v. Delta Air Lines, Inc.*,
   2010 WL 11684812 (D. Minn. June 6, 2004) ..................................................................11

*Stephenson v. Citco Grp. Ltd.*,
   700 F. Supp. 2d 599 (S.D.N.Y. 2010) ...........................................................................7

*Suero v. NFL, et al.*,
   2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) ...............................................................21

*Tasini v. N.Y. Times Co.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002) ...........................................................................10

*Trejo de Zamora v. Auto Gallery, Inc.*,
   2014 WL 1685925 (D. Nev. Apr. 28, 2014) ...................................................................24

*Turk v. Rubbermaid Inc.*,
   2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) ..................................................................12

*Ullmo ex rel. Ullmo v. Gilmour Acad.*,
   273 F.3d 671 (6th Cir. 2001) ........................................................................................17

*Vail v. Pan Am Corp.*,
   616 A.2d 523 (N.J. Super. Ct. App. Div. 1992) .............................................................9

*Watson v. United Airs., Inc.*,
   2017 WL 6060173 (D. Haw. Apr. 14, 2017), *aff'd* 708 F. App'x 500 (9th Cir.
   2018) .............................................................................................................................16

*Whalen v. Michael Stores Inc.*,
   153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017) .............7

*Williams v. Quest Diagnostics, Inc.*,
   353 F. Supp. 3d 432 (D.S.C. 2018) ...............................................................................24

*Wynn v. Topco Assocs., LLC*,
   2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .............................................................17, 24

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*,
   214 F. Supp. 3d 179 (E.D.N.Y. 2016) ...........................................................................22

*Yak v. Bank Brussels Lambert*,
   252 F.3d 127 (2d Cir. 2001) ...........................................................................................4

*Zachmann v. Coleman Co.*,
   2022 WL 161480 (S.D.N.Y. Jan. 18, 2022) ...................................................................23

*Zagoria v. New York Univ.*,
   2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021) ................................................................23

*Zanotti v. Invention Submission Corp.*,
   2020 WL 2857304 (S.D.N.Y. June 2, 2020) ...............................................................9, 10

**Statutes**

Airline Deregulation Act of 1978, 49 U.S.C. § 41713 ........................................................ *passim*

New York General Business Law § 349 .............................................................................. *passim*

New York General Business Law § 350 .............................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a) ..................................................................................................................24

Fed. R. Civ. P. 12(b) ..................................................................................................................7

## <u>INTRODUCTION</u>

One would not suspect this from the First Amended Complaint ("FAC"), but the Plaintiff, Ms. Dakus, did not select Koninklijke Luchtvaart Maatschappij, N.V. ("KLM") to fly to Europe, did not purchase her ticket, did not choose to purchase Sustainable Aviation Fuel ("SAF") or contribute to reforestation projects—both optional choices when flying KLM—and may not even have paid for her ticket. Despite those facts, she claims that she chose to fly on KLM and paid a price premium for her flight because of KLM's statements on its website about steps that it is taking to tackle climate change. Upon analysis, she largely does not allege these statements were untrue—instead, she claims KLM's environmental efforts were "insufficient," "inadequate," or "have negligible impact." But criticizing KLM's efforts or having a subjective belief that KLM is not doing enough to tackle climate change is not fraud and does not breach her contract with KLM.

Ms. Dakus' initial complaint attempted to assert a variety of fraud and warranty claims—with no breach of contract claim—on behalf of various putative classes.[1] She then filed the FAC, which abandons the warranty claims and some, but not all, of the fraud-based claims and conjures up one for breach of contract. Specifically, she now asserts: violations of GBL sections 349 and 350; unjust enrichment; breach of contract; and her Multi-State Consumer Fraud Claim. Her decision to amend appears to be based on a realization that the claims she dropped were preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713 ("ADA"). All of her claims fail.

Ms. Dakus' GBL, unjust enrichment, and the Multi-State Consumer Fraud Claims fail because the ADA preempts them. Courts routinely dismiss as preempted such claims, which Ms. Dakus seems to have recognized when she abandoned her fraud and negligent misrepresentation

---

[1] The Complaint asserted claims for: New York General Business Law ("GBL") §§ 349 and 350; breaches of express warranty, implied warranty of merchantability and fitness for a particular purpose, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, et seq; negligent misrepresentation; fraud; unjust enrichment; and unspecified consumer fraud acts of acts of eight additional states (the "Multi-State Consumer Fraud Claims"). (ECF No. 1.)

claims.  (Section I.)

Ms. Dakus lacks Article III standing because she did not suffer an injury-in-fact that is fairly traceable to KLM's challenged conduct.  On this factual challenge, KLM demonstrates that a third-party organization that offers group educational trips purchased Ms. Dakus' ticket and selected KLM as the airline, and that ticket did not include SAF or contribute to KLM's reforestations projects.  Ms. Dakus also may not have paid for some or all of her flights; they may have instead been funded by the educational group or a GoFundMe fundraiser.  (Section II.)

For similar reasons—and more—Ms. Dakus' claims fail because she has not plausibly alleged injury, causation, or reliance.  She was part of a group booking selected by the educational group, so it is not possible that KLM's challenged website statements caused Ms. Dakus to choose KLM.  It is implausible that she actually paid a price premium (if anything) or suffered any monetary loss as she contracted for a flight to Europe, which she received.  (Section III.)

For her contract claim, Ms. Dakus does not reference—or attach—the contract she alleged was broken or specify its provisions.  She claims that aspirational statements KLM made that it is working toward the goals of the Paris Climate Agreement ("Paris Agreement") to reduce emissions by 2º Celsius by 2050 somehow created a contract, which KLM allegedly breached—even though these are aspirational targets and we are obviously 27 years away from 2050.  In reality, the only contract here between Ms. Dakus and KLM is its General Conditions of Carriage ("COC"), which was not alleged to have been breached and which does not discuss the Paris Agreement or any of KLM's environmental initiatives.  (Section IV.)

The GBL claims also fail because KLM did not make any misleading statements.  Juxtaposing KLM's statements with the allegations demonstrates that none are misleading.  The fact that Ms. Dakus apparently disagrees with, criticizes, or thinks that KLM's environmental

initiatives are insufficient is irrelevant.  To the extent that Ms. Dakus quibbles with KLM's approach, that does not render the statements KLM made untrue.  Additionally, Ms. Dakus—who resides in Texas and flew from Texas to Europe—cannot invoke New York's GBL.  (Section V.)

The unjust enrichment claim is duplicative of the Plaintiff's other claims, and she has not established that KLM retaining the cost of her ticket would be unjust.  (Section VI.)  She cannot assert claims under other states' consumer fraud statutes and the Multi-State Consumer Fraud Claims fail for the same reasons her other claims fail.  (Section VII.)

 Finally, should any of Ms. Dakus' claims survive—which they should not—the Court should strike her requests for anything beyond compensatory damages because: (1) the COC so limits KLM's liability; (2) statutory or punitive damages are unavailable for a breach of contract claim; and (3) the ADA preempts claims for punitive damages.  (Section VIII.)

## FACTUAL BACKGROUND[2]

### A.    The Plaintiff, Ms. Dakus

Ms. Dakus alleges only that she "flew KLM from George Bush International Airport in Houston to Europe in the summer of 2022."  (FAC ¶ 53.)  Noticeably absent are *any* allegations surrounding the purchase of her ticket, including who purchased it, when, how, what, if anything, she reviewed before the purchase, what she paid, or the terms of the contracts governing her ticket. This is likely because *Ms. Dakus knows she did not purchase her ticket and did not select the airline*.

Instead, a third party—the American Council for International Studies ("ACIS")— purchased Ms. Dakus' ticket.  (Ex. 1, Declaration of Eric Caron, ¶ 5.)[3]    ACIS organizes

---

[2] For purposes of KLM's motion to dismiss, KLM accepts Ms. Dakus' well-pled allegations as true except to the extent that they are not otherwise contradicted.  KLM reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not).

[3] Exhibit references are to the exhibits attached to the declaration of Keara M. Gordon, dated January 23, 2023 ("Gordon Declaration").  The Court may consider public documents, documents that the plaintiff relied on in bringing

"international educational experiences" for students and their teachers.  (Ex. 2.)  Ms. Dakus, a

teacher, flew on KLM as a chaperone for a trip, and in doing so, agreed to ACIS' terms and

conditions ("ACIS Terms").[4]  ACIS utilizes "airline group travel contracts" for trip bookings and

"[t]he particular airline used [for a given trip] shall be determined by ACIS" (not Ms. Dakus).  (Ex.

3 at 1.)  Indeed, it appears that Ms. Dakus may not have known what airline she was flying until

*after* she agreed to the ACIS Terms and paid for her trip.  (*Id.* at 2 ("Airline eticket information

will be sent only if full payment and the signed release from all participants has been received.").)

Not only did she not select or purchase her flight, Ms. Dakus may not have even paid for

it.  ACIS Terms state that "teachers who travel … will receive complimentary benefits … as

compensation for chaperoning, preparation and organization of the educational travel program."

(*Id.* at 3.)  And, in May 2022, Ms. Dakus created a "GoFundMe" webpage titled, "Kindergarten

Teacher Bucket List Trip."  (Ex. 4.)  Ms. Dakus sought donations to fund her travel "as a chaperone

… on a trip of a lifetime to Greece, France, Scotland, and London through ACIS."  (*Id.*)  Ms.

Dakus raised $1,930.00.  (*Id.*)  Ms. Dakus' ticket on KLM cost $1,405.57. (Ex. 1 ¶ 6.)

---

the suit, documents of which the plaintiff has knowledge, and matters for which judicial notice may be taken.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Diveroli v. Am. Airlines, Inc.*, 2019 U.S. Dist. LEXIS 190519 at *17 (S.D. Fla. Nov. 4, 2019) (Passenger Name Record); *Cattaneo v. Am. Airlines, Inc.*, 2015 WL 5610017, at *1 n.2 (N.D. Cal. Sept. 24, 2015) (plaintiff's itinerary).  The Court may take judicial notice of documents and information from websites that the FAC incorporates.  *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 123 (2d Cir. 2011); *see also Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, at *1 n.1 (S.D.N.Y. July 24, 2018) (considering party's website); *Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016) (same).  Here, the FAC incorporates iterations of KLM's website and its Climate Action Plan.  (*See, e.g.,* FAC ¶¶ 16-17, 33.)  The Court may also consider facts outside the pleadings on a motion to dismiss pursuant to 12(b)(1).  *Finger Lake LLC v. Qiang Tu*, 2020 WL 2555250, at *1, n.1 (S.D.N.Y. May 20, 2020) (Abrams, J.).

[4]The Court may properly consider the ACIS Terms and the COC in deciding the 12(b)(6) portions of this motion.  When a "complaint relies on the terms of [an] agreement," the Court "may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  Court may consider a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint."  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Berman v. Sugo*, 580 F. Supp. 2d 191, 201 (S.D.N.Y. 2008); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on the motion."); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 131 (2d Cir. 2001) ("Carefully avoiding all mentions of [documents] does not make them any less integral to [the] complaint.").

Ms. Dakus, as a passenger on KLM, is subject to its COC.  (Ex. 5.)  ACIS's Terms also make that fact clear, as they provide that "[t]he airline regulations and the participant's contract with the airline, when issued, shall constitute the *sole contract* between the airline and the participant."  (Ex. 3 at 2 (emphasis added).)  The COC does not mention or reference the Paris Agreement or any of KLM's sustainability initiatives.  (*See generally* Ex. 5.)  There is no contract between Ms. Dakus and KLM that remotely even touches on those items.

**B.**      **KLM's Actions to Work Toward More Sustainable Aviation**

"We all know travelling leaves a carbon footprint" and KLM does not deny that.  (Ex. 6.)  To combat those impacts, in 2019, KLM introduced its "Fly Responsibly" initiative and is working to "transform KLM into a more sustainable airline."  (Ex. 7.)  KLM "has been at the forefront … [of] its commitment to limiting the dangerous effects of climate change."  (ECF No. 1 ¶ 38.)  Despite KLM's efforts, "[t]he aviation industry is considered a 'hard to abate' sector, due to a lack of alternatives and a rise in air mobility demand," and "[m]uch more is needed."  (Ex. 9 at 6.)  KLM publicly discloses its $CO_2$ emissions and net $CO_2$ emissions, which while declining, are significant.  (Ex. 8.)

**1.      KLM is Working Toward the Paris Agreement Targets.**

In 2022, KLM agreed to the Science Based Targets initiative ("SBTi"), which allowed KLM to set $CO_2$ reduction targets in line the Paris Agreement, "the aim of which is to limit global warming to well below 2°C [by 2050] compared to pre-industrial levels in order to mitigate the impact of climate change."  (Ex. 7.)  The Paris Agreement sets ambitious goals to limit global warming to well-below 2°C by 2050 while working toward 1.5°C.  (Ex. 9 at 6.)  The regulation of the climate goals of the "[a]viation [industry] is excluded in [the Paris Agreement]," and the responsibility of ICAO.  (Ex. 10.)  In December 2022, the SBTi validated that "[KLM's] emission reduction target for 2030 adheres to the well-below 2°C trajectory."  (Ex. 11.)  KLM "has

embarked on a journey towards [environmental] impact[,] but the only way to get there is together."  (Ex. 12.)

## 2. KLM Gives Passengers the Option to Reduce Their Impact.

One of the ways that KLM strives to mitigate its environmental impact is by incorporating SAF on some of its flights departing from Amsterdam.  (Ex. 9.)  "[SAF] is a cleaner substitute for fossil kerosene."  (Ex. 7.)  But, KLM explicitly explains that SAF currently comprises less than one percent of its fuel usage, which "[a]lthough . . . small … is an essential factor in achieving the global climate targets" and it is expensive.  (*Id.*)  When explaining "why doesn't KLM simply switch to SAF?", KLM states, "Unfortunately, it's not that easy.… There is very little production capacity available in the world."  (Ex. 8.)  For those passengers who want to help the environment, KLM offers an option to buy additional SAF with their booking.  (Exs. 6, 9.)  ACIS did not buy SAF in conjunction with Ms. Dakus' ticket.  (Ex. 1.)

KLM also offers an option to support carbon offsets by contributing to KLM's reforestation program.  (Exs. 6, 7, 9.)  "Customer contributions are invested directly in a carbon-offsetting project in Panama … that focuses on planting new trees, preserving existing forests and supporting the local community."  (Ex. 9 at 22.)  KLM makes clear that "the flight itself won't suddenly be 'greener' because of [KLM's] reforestation programme."  (Ex. 6.)  "With reforestation, you pay a small contribution to compensate (part of) your flight's impact on the environment.  *This does not affect the direct emissions of the flight itself* …."  (Ex. 12.)  KLM does "not see $CO_2$ compensation as the ultimate solution," but after reducing its negative impact, one of the levers that it offers to customers to partially compensate for their emissions.  (Ex. 7.)  ACIS did not contribute towards KLM's reforestation program in conjunction with the purchase of Ms. Dakus' ticket.  (Ex. 1.)

## STANDARD OF REVIEW

"[A] district court shall dismiss an action for lack of subject matter jurisdiction … when

'the plaintiff lacks constitutional standing ….'" *Rivera v. S.C. Johnson & Son, Inc.*, 2021 WL 4392300, at *3 (S.D.N.Y. Sept. 24, 2021) (Abrams, J.) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015)).  "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that she has standing…." *Id.*  "[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).  When it does so, the defendant may proffer evidence to "reveal the existence of factual problems."  *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 219 (E.D.N.Y. 2018) (citation omitted); *see also Grunwald v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, 2020 WL 2192683, at *2 (S.D.N.Y. May 6, 2020) (court may "refer to evidence outside the pleadings." (citation omitted)); *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 579 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89, 90 (2d Cir. 2017) (same).  While the Court "must accept as true the factual allegations contained in the [FAC]," "it will not draw argumentative inferences in favor of Plaintiffs because subject matter jurisdiction must be shown affirmatively." *Whalen*, 153 F. Supp. 3d at 579 (citation omitted).

Under Rule 12(b)(6), a complaint must be dismissed if it does not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "[A]lthough the Court must still accept factual allegations as true, it should not credit 'mere conclusory statements.'"  *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 618-19 (S.D.N.Y. 2010) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I.   The ADA Preempts the Consumer Protection and Unjust Enrichment Claims.

To prevent states from "undo[ing] federal deregulation with regulation of their own," *Morales v. Trans World Airs., Inc.*, 504 U.S. 374, 378 (1992), the ADA includes a "broad" preemption provision that provides that a state "may not enact or enforce a law, regulation, or other

provision having the force and effect of law related to price, route, or service of an air carrier that may provide air transportation under this subpart."  49 U.S.C. § 41713(b)(1).  "[T]he Supreme Court has repeatedly emphasized the breadth of the ADA's preemption provision."  *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008); *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014) (acknowledging broad interpretation).  ADA preemption "applies with equal force to suits brought under state common law, assuming the necessary nexus to an airline service." *Fawemimo, v. Am. Airs., Inc.*, 751 F. App'x 16, 18 (2d Cir. 2018).

Courts routinely preempt claims asserting violations of state consumer statutes and unjust enrichment claims that relate to airline rates or services.  *See, e.g.*, *Morales*, 504 U.S. at 390-93 (consumer protection claim preempted); *American Airs., Inc. v. Wolens*, 513 U.S. 219, 228 (1995) (same); *In re LATAM Airs. Grp. S.A.*, 2022 WL 3965697, at *12-14 (Bankr. S.D.N.Y. Aug. 31, 2022) (unjust enrichment claim preempted; "It is simply not credible to say that the unjust enrichment claim does not relate to how LATAM prices its airfares."); *Pena v. Brit. Airways, PLC (UK)*, 2020 WL 3989055, at *4-5 (E.D.N.Y. Mar. 30, 2020), *aff'd*, 849 F. App'x 13 (2d Cir. 2021) (GBL 349 claim preempted); *Okoroafor v. v. Emirates Airs.*, 2020 WL 3567143, at *1 (Sup. Ct. N.Y. Cnty. June 22, 2020) (same); *Lehman v. USAIR Grp.*, Inc., 930 F. Supp. 912, 915-16 (S.D.N.Y. 1996) (unjust enrichment claim preempted); *People v. Trans World Airs., Inc.*, 147 Misc. 2d 697, 700-01 (Sup. Ct. N.Y. Cnty. 1990), *aff'd in part*, 171 A.D.2d 76 (1st Dep't 1991) (GBL 350 claim preempted); *PHI Air Med., LLC v. Corizon, Inc.*, 628 S.W.3d 460, 471 (Tenn. Ct. App. 2021) (unjust enrichment claim preempted) (collecting cases); *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 901 (2016) (consumer protection claims preempted); *Spencer v. Delta Air Lines*, Inc., 2010 WL 11684812, at *3 (S.D. Cal. Oct. 26, 2010) (same); *In re Nw. Airs. Priv. Litig.*, 2004 WL 1278459, at *4 (D. Minn. June 6, 2004) (same); *Leonard v. Nw.*

8

*Airs., Inc.*, 605 N.W.2d 425, 433 (Minn. Ct. App. 2000) (unjust enrichment claim preempted); *Vail v. Pan Am Corp.*, 616 A.2d 523, 526 (N.J. Super. Ct. App. Div. 1992) (consumer claims preempted).

In *Wolens*, a plaintiff brought a putative class under the Illinois Consumer Fraud and Deceptive Practices Act, claiming an airline deceptively marketed its frequent flyer program.  513 U.S. at 225.  The Supreme Court held that the claims were preempted because a plaintiff cannot use state consumer protection laws to "guide and police the marketing practices of the airlines." *Id.* at 228.  Instead, the U.S. Department of Transportation "retains authority to investigate unfair and deceptive practices and unfair methods of competition by airlines …." *Id.* at 228 n.4.

The same result follows here.  Ms. Dakus alleges that she "paid more for her flight" than she would have otherwise because of KLM's website statements, which necessarily implicates KLM's rates, and she attacks KLM's advertising of the services that it offers.  (*See* FAC. ¶ 56.) As a result, the ADA preempts her consumer protection and unjust enrichment claims.

## II.   **The Plaintiff Lacks Article III Standing**.

"'No concrete harm; no standing.'"  *Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021)). To establish Article III standing, a plaintiff must show: "(1) an 'injury-in-fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'"  *Id.* (citation omitted) (finding no standing); *see Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *6 (S.D.N.Y. June 2, 2020) ("the injury 'must actually exist' …." (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016))).  To meet the fairly traceable prong, "'the injury has to be 'fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court.'"  *Roberts v. Bassett*, 2022 WL 16936210, at *3 (2d Cir. Nov. 15, 2022) (quoting *Lujan v. Defs. of Wildlife*,

9

504 U.S. 555, 560 (1992)).

Here, there is no injury and no causal connection. As to her consumer protection and unjust enrichment claims, Ms. Dakus asserts in an entirely conclusory manner that she "chose between KLM and other airlines which did not tout their environmental attributes" (FAC ¶ 55) and then "paid more for her flight on KLM than she would have paid" because of KLM's challenged statements. (FAC ¶ 56.) But on this factual challenge to standing, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 353-54 (S.D.N.Y. 2002) (citation omitted) (collecting cases); s*ee also United States ex rel. Hanks v. United States*, 961 F.3d 131, 136 (2d Cir. 2020) (burden on plaintiff).

The fact is that Ms. Dakus did not choose KLM. (*See* Ex. 1 ¶ 5.) She actually had *no* choice in the selection of which airline she flew, and she did not book her ticket—ACIS did. (Ex. 3 at 1 ("[t]he particular airline used shall be determined by ACIS").) She then funded the ticket, in whole or in part, via her GoFundMe page (Ex. 4) and received "complimentary benefits from ACIS" in connection with the trip, (Ex. 3). And any payment she made toward the flight was *before* she knew that ACIS had selected KLM. (*Id.*)

She lacks standing for her breach of contract claim too. The COC—the only agreement between the parties—does not discuss the Paris Agreement or promise anything related to KLM's sustainability initiatives. (Ex. 5.) There is no contract in this regard between Ms. Dakus and KLM and in the absence of a contractual relationship governing the subject matter, she cannot plausibly allege an injury arising from a breach of contract. *See, e.g., Rynasko v. New York Univ.*, 2021 WL 1565614, at *3 (S.D.N.Y. Apr. 21, 2021) (no injury in fact where no contract alleged); *Zanotti*, 2020 WL 2857304, at *8 (allegations of harm were not fairly traceable to the defendant's conduct).

There was also no contract between Ms. Dakus and KLM to purchase SAF or contribute to KLM's reforestation projects.  (See Ex. ¶¶ 10-11.)  Because Ms. Dakus did not actually contract for these initiatives, she was not harmed.  *See, e.g., Akridge v. Whole Foods Mkt. Grp., Inc., 2022 WL 955945*, at *5-8 (S.D.N.Y. Mar. 30, 2022) (no standing where plaintiff did not plausibly allege he purchased the product); *Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (no "particularized injury" when plaintiff did not adequately plead he bought the product).

At bottom, ACIS purchased a "group" ticket for Ms. Dakus for travel.  Pursuant to the COC, KLM flew her safely to her destination and there is no allegation that it did not.  Thus, she received the benefits due her under the contract and did not suffer an injury-in-fact. *See, e.g., Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (plaintiff's receipt of adequate insurance coverage was fatal to his claim of overpayment); *Sokoloff v. Town Sports Int'l, Inc.*, 6 A.D.3d 185, 185 (1st Dep't 2004) (plaintiff lacked standing where he received the benefits set forth in his gym contract); *Hughes v. Chattem. Inc.*, 818 F.Supp.2d 1112, 1120 (S.D. Ind. 2011) (purchasing a product the plaintiffs "now wish they had not purchased" did not confer standing).  Ms. Dakus lacks standing to pursue all her claims.

## III.   **The Plaintiff Has Not Suffered an Injury That KLM Caused.**

Injury and causation are necessary elements of Ms. Dakus' breach of contract and consumer protection claims.  *See, e.g., Abdel-Karim v. EgyptAir Airs.*, 116 F. Supp. 3d 389, 406-07 (S.D.N.Y. 2015) (dismissing contract claim); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (dismissing GBL claims).[5]  Neither is plausibly pled here.

---

[5] This Court ordinarily applies the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941).  No choice of law analysis is required here because no conflicts exist between the laws of Texas (where Ms. Dakus resides) and New York and Ms. Dakus' claims fail under both.

A.      **The Plaintiff Has Not Plausibly Alleged Causation**.

"To properly allege causation [under the GBL], a plaintiff must state . . . that [s]he has seen the misleading statements of which [s]he complains before [s]he came into possession of the products [s]he purchased." *Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *3 (S.D.N.Y. Mar. 24, 2022) (citation omitted).  For a GBL 350 claim, "[a] plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied." *Frei v. Taro Pharms. U.S.A., Inc.*, 443 F. Supp. 3d 456, 470 (S.D.N.Y. 2020), *aff'd sub nom. Frei v. Taro Pharm. U.S.A., Inc.*, 844 F. App'x 444 (2d Cir. 2021) (citation omitted) (dismissing claim); *see also Turk v. Rubbermaid Inc.*, 2022 WL 836894, at *8 (S.D.N.Y. Mar. 21, 2022) (dismissing GBL claims for lack of causation and reliance).  "In a breach of contract action, the plaintiff must demonstrate more than simply that defendant breached its contract and that the plaintiff suffered damage.  Plaintiff cannot recover if it would have suffered the harm regardless of defendant's actions." *Echo Bay Pharms., LLC v. Torrent Pharma, Inc.*, 2022 WL 2132964, at *12 (S.D.N.Y. June 14, 2022) (citation omitted); *INTL FCStone Mkts., LLC v. Intercambio Mexicano de Comercio S.A. de C.V.*, 2021 WL 5304285, at *5 (S.D.N.Y. Nov. 15, 2021) (dismissing contract claim).

Here, Ms. Dakus alleges that she "saw and relied on" KLM's statements about its environmental initiatives, (FAC ¶ 65), but this entirely conclusory allegation fails plausibly to plead causation or reliance and documents properly before this Court contradict these conclusory allegations.  The ACIS Terms establish that: ACIS, not Ms. Dakus, chose the airline; ACIS, not Ms. Dakus, purchased her ticket; since she did not buy it at all, she necessarily did not buy the ticket on KLM's website; and Ms. Dakus was likely unaware that ACIS would choose KLM when she contracted with ACIS.  (Ex. 3.)  Because Ms. Dakus did not choose whether to fly on KLM, it is not plausible that KLM's website statements caused her to select KLM.

**B.** <u>**The Plaintiff Has Not Suffered an Injury**</u>.

Ms. Dakus posits two supposed injuries: that she would not have chosen KLM at all and the payment of a price premium. (*See, e.g.,* FAC ¶¶ 54-55.) For the same reasons that there is no Article III standing, both fail. Additionally, courts routinely "'reject[] misrepresentation claims based solely on a theory that the defendant's misrepresentation deprived the plaintiff of an opportunity to make a better-informed choice whether to buy the product.'" *Robey v. PVH Corp.*, 495 F. Supp. 3d 311, 321 (S.D.N.Y. 2020) (citation omitted); *see also In Re Gerber Prods. Heavy Metals Baby Food Litig.*, 2022 WL 10197651, at *8 (E.D. Va. Oct. 17, 2022) (plaintiffs "must do more than allege [they] did not receive the benefit [they] thought [they were] obtaining"). Stated otherwise, "the deceptive conduct cannot be pled as both act and injury.'" *Pittman v. Chick-Fil-A, Inc.*, 2022 WL 2967586, at *5 (S.D.N.Y. July 27, 2022) (citation omitted).

In *Pittman*, the plaintiff claimed that the defendant misrepresented its "low-cost delivery fee" because it supposedly marked up food costs on delivery orders. *Id.* at *1. The Court rejected her claimed injury—that she "would not have made the purchase had she known" about the deception—because it "amounts to an allegation of deception as both act and injury, which is insufficient." *Id.* at *6. So too here. By alleging that she chose KLM because of the challenged statements (FAC ¶ 55), Ms. Dakus improperly conflates deception and injury.

Ms. Dakus' price premium injury is not plausibly pled. It is implausible that Ms. Dakus paid a premium for her "group booking" flight that a group educational travel company made. (Exs. 1, 3.) Indeed, it is likely that Ms. Dakus did not pay *anything* for her flight on KLM, much less a price premium given the amount she raised on her GoFundMe Page and ACIS' "complimentary benefits." (Exs. 3, 4.) *See DeCostanzo v. GlaxoSmithKline PLC*, 2022 WL 17338047, at *7 (E.D.N.Y. Nov. 29, 2022) ("plaintiff cannot make a showing of pecuniary harm in the form of a price premium because she did not pay for" the product).

13

Even if Ms. Dakus' price premium injury was plausible (which it is not), it is insufficiently pled. "A well pleaded allegation that a plaintiff paid a premium may be sufficient to allege injury. . .." *Colella*, 348 F. Supp. 3d at 143 (rejecting allegations). However, "[s]imply … recit[ing] the word 'premium' multiple times in [the] Complaint does not make Plaintiffs' injury any more cognizable." *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (same). Here, Ms. Dakus fails to allege or identify: (1) the specific price she paid; (2) the premium KLM allegedly charged; (3) any specific competitor's flight (or price); or (4) how those flights are purportedly comparable to Ms. Dakus' flight. As such, she fails sufficiently to allege injury.[6]

## IV.     The Breach of Contract Claim Fails for Additional Reasons.

Ms. Dakus' breach of contract claim also fails because: (A) there is no contract in which KLM promised her anything about the Paris Agreement or KLM's environmental initiatives; (B) she has not sufficiently pled the terms of a contract; (C) the statements on which Ms. Dakus predicates her claim are aspirational statements, not enforceable contractual obligations; and (D) there was no breach.

### A.     There Is No Contract Between KLM and Ms. Dakus Regarding the Paris Agreement or KLM's Environmental Initiatives.

As previously discussed, the only contract between the Plaintiff and KLM is the COC. (Ex. 5.) The COC does not make any reference to, let alone promise anything related to, the Paris Agreement or KLM's sustainability initiatives and it does not incorporate any of the challenged statements or the websites where they appeared. "To incorporate a document by reference, New York law requires that the document be referenced beyond all reasonable doubt." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 313 (E.D.N.Y. 2013) (citation omitted), *aff'd*, 578 F. App'x

---

[6] Although the Court in *Rivera* held that the plaintiff's allegations "suffice[ed]" to allege a premium price injury, 2021 WL 4392300, at *7, that defendant did not make a factual challenge to standing, as KLM does here, and the plaintiff's allegations were particularized, containing specific facts about the product's price, which are entirely absent here.

51 (2d Cir. 2014); *see also Chou v. Charles Schwab & Co.*, 2022 WL 1127384, at *5 (N.D. Cal. Mar. 22, 2022) (advertising statement did not create a contract).

Quite the contrary, the COC contains an integration clause, which states that the passenger's ticket "evidences the existence, the conclusion and the content of the [COC] between [KLM] and the Passenger whose name is shown on the Ticket." (Ex. 5 § 3.1.) ACIS Terms also confirm that Ms. Dakus' contract with KLM was limited to the express language of the COC. (Ex. 3 at 2 ("[t]he airline regulations and the participant's contract with the airline, when issued, shall constitute the sole contract between the airline and the participant.") Moreover, when ACIS purchased Ms. Dakus' ticket, it did not purchase either of KLM's offered sustainability initiatives. (Ex. 1.) Ms. Dakus contracted with KLM to fly her to Athens; it did.

### B.      The Plaintiff Fails Sufficiently to Plead a Contract.

"[A] plaintiff 'must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Pittman*, 2022 WL 2967586, at *6 (citation omitted); *Fisher v. Richmond, The Am. Int'l Univ. in London, Inc.*, 2018 WL 3979594, at *4 (S.D.N.Y. Aug. 20, 2018), *aff'd*, 773 F. App'x 15 (2d Cir. 2019) (Abrams, J.) (same)*; see also Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022) ("The conclusory assertion that such a contract existed is not enough . . . .")

In *Pittman*, the plaintiff argued that she and the defendant contracted for food delivery services, which was based on the "representations made in [the defendant's] mobile app and website" regarding a flat rate delivery fee. 2022 WL 2967586, at *6. The Court dismissed the claim, holding that the plaintiff failed "to set forth the specific or essential terms of a contract between Pittman and [the defendant]." *Id*. The allegations "amounted to a simple characterization of the nature of the promise, which is insufficient to allege a breach of contract" and failed to present "the specific terms of any purported agreement between [the plaintiff] and [the

defendant]." *Id.* (cleaned up).

Here, Ms. Dakus does not identify, or attach, any contract, nor does she set forth the specific terms of the purported agreement. All she alleges is that the "terms [of the unspecified contract] included [KLM's] representations that that it was acting in accordance to reach the goals of the Paris Agreement and preventing climate change to exceed 1.5 degrees Celsius by 2050." (FAC ¶¶ 70-71). As in *Pittman*, this is insufficient, and the breach of contract claim fails.

### C. Aspirational Website Statements Do Not Create a Contract.

Courts routinely hold that aspirational website statements do not create a contract. *See, e.g., Watson v. United Airs., Inc.*, 2017 WL 6060173, at *6 (D. Haw. Apr. 14, 2017) ("will transfer" statements did not form a contract because they "provide no evidence that any of the elements of a contract exist"), *aff'd* 708 F. App'x 500 (9th Cir. 2018); *Alatortev v. JetBlue Airways, Inc.*, 2018 WL 784434, at *6 (N.D. Cal. Feb. 7, 2018) ("endeavors" language does not create an "express commitment"); *Schultz v. United Airs., Inc.*, 797 F. Supp. 2d 1103, 1107 (W.D. Wash. 2011) (language "expressing [an] aspirational intention … is insufficient to create an implied contract"). Here, KLM's aspirational statements that indicate what it is working to achieve by 2050 – 27 years in the future – do not create a binding contract.

### D. The Plaintiff Fails to Allege a Breach.

Even if the challenged statements created a contract (which they do not), there is no breach because the statements are factually true, and Ms. Dakus misrepresents them. What the Paris Agreement states is that the signatories will work "to limit the global temperature increase in this century to 2 degrees Celsius *while pursuing efforts* to limit the increase even further to 1.5 degrees." United Nations, The Paris Agreement, https://www.un.org/en/climatechange/paris-agreement (last accessed January 2, 2023) (emphasis added). Thus, KLM's statements about working toward well below 2º C accurately reflects its efforts to work toward the Paris Agreement.

*See Fisher*, 2018 WL 3979594, at *4 (holding defendant did not breach term of purported agreement where the plaintiff "fundamentally miscomprehends the statement at issue").

KLM's desire to work toward "well below" 2° Celsius "is not inconsistent with the Paris Agreement," and KLM did not promise Ms. Dakus that it is, today, at "emission neutrality" or emits zero carbon dioxide.  (FAC ¶ 71.)  Instead, KLM's website is quite clear that while "[t]he aviation industry has *the ambition* to become net zero *by 2050*" (Ex. 8 (emphasis added)), KLM's "operations are not fully sustainable yet," and that "[m]uch more is needed," (Ex. 7).  *See Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 676–77 (6th Cir. 2001) ("a breach of contract claim will not arise from the failure to fulfill a statement of goals or ideals").  There was no breach.

## V.     The GBL Claims Fail for Additional Reasons.

The GBL claims are preempted and there is no causation or injury. KLM also did not make a material misrepresentation and Ms. Dakus—who resides in Texas—cannot invoke the GBL.

### A.     KLM Did Not Make a Material Misrepresentation.

A materially misleading statement is one that is likely to mislead a "reasonable consumer". *Angeles v. Nestle USA, Inc.*, 2022 WL 4626916, at *3 (S.D.N.Y. Sept. 30, 2022) (Abrams, J.) (dismissing GBL and unjust enrichment claims); *see also Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 154 (S.D.N.Y. 2022) (same); *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (Abrams, J.) (same).  A plaintiff must "plausibly allege 'that *a significant portion* of the general consuming public or of targeted consumers . . . could be misled.'" *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (emphasis added) (citation omitted).  "[I]t is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" *Angeles*, 2022 WL 4626916, at *3 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013*)* (affirming dismissal)).  Ms. Dakus fails to meet this standard.

### 1.     The Statements are True.

"A party does not violate GBL 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." *Dwyer*, 598 F. Supp. 3d 1136799, at *6 (citation omitted).  "Assuming that a reasonable consumer might ignore the evidence plainly before [her] 'attributes to consumers a level of stupidity that [courts] cannot countenance and that is not actionable . . . ." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 311–12 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 710 F. App'x 43 (2d Cir. 2018); *see also Harris v. Pfizer, Inc.*, 586 F. Supp. 3d 231, 243-44 (S.D.N.Y. 2022) ("A plaintiff does not have a claim . . . just because she comes away from an advertisement with an incorrect impression.").

*Dwyer* is instructive.  There, Allbirds represented that its wool sneakers had a "Low Carbon Footprint," among other statements, and it explained that it used a "life cycle assessment ('LCA') tool to estimate its products' carbon footprint" and the "Higg Material Sustainability Index … a standard developed by the Sustainable Apparel Coalition" and provided other details about the methodology supporting the product statements.  598 F. Supp. 3d at 145.  Nevertheless, the plaintiff claimed that the environmental claims were misleading.

The Court disagreed.  Applying a "reasonable consumer" standard, the Court rejected an attack on the LCA tool that Allbirds used, finding it was a "criticism of the tool's methodology, not a description of a false, deceptive, or misleading statement about the Product."  *Id.* at 149. "'The alleged inadequacy of the standards imposed is not enough to render the statements actionable.'"  *Id.* at 150 (quoting *Lee v. Can. Goose US, Inc.*, 2021 WL 2665955, at *6 (S.D.N.Y. June 29, 2021) (dismissing analogous claim where the plaintiff "argue[d] that [the defendant's] compliance, regulation, and licensing are insufficient and unsatisfactory")).  Even if the plaintiff believed that the defendant should "use a different method" to measure its carbon footprint, that "does not plausibly suggest that what Defendant in fact says is materially misleading."  *Id.*

18

Likewise, a court dismissed similar claims in *Myers v. Starbucks Corp.*, 2020 WL 13302437, at *4-5 (C.D. Cal. July 29, 2020). There, the Court dismissed claims about Quaker granola bars, which stated Quaker "supports sustainably sourced cocoa" through a third party. Not only was that statement true, but "[n]o reasonable consumer could interpret Quaker's label as a promise to eliminate unethical practices from its supply chain." *Id*., at *5. The Court also dismissed claims regarding Mars' use of the "Rainforest Alliance Certification" on its chocolate bars. *Id*. Again, the plaintiff did not allege the statement was untrue, but claimed that the certification was "bogus" and gave consumers a "false impression" that the cocoa was child-labor-free. *Id*. The Court rejected the plaintiff's arguments. *Id*.

The same result is compelled here with regard to the statements pertaining to KLM's initiatives regarding carbon offsets, reforestation, and SAF. In the section where Ms. Dakus explains why she thinks that KLM's environmental statements were misleading, she reveals that she does not actually claim that KLM did not do what it said it would do: attempt to tackle climate change issues though carbon offsets, reforestation, and promoting SAF. (FAC, § IV.) Instead, she characterizes the carbon offsets as "insufficient," reforestation as "inadequate," and SAF as having a "negligible impact." (*Id*.) Thus, she advocates the subjective belief that KLM's efforts are inadequate, which is insufficient to state a claim. (*See, e.g., id.* ¶¶ 22-34, 65).

As illustrated below, the Plaintiff's allegations are simply a disagreement over the effectiveness of KLM's articulated efforts.

| Topic | Alleged Issue/Misstatement | What KLM Actually Said |
|---|---|---|
| Carbon Offsets | * Allegedly "insufficient" for various reasons (FAC ¶¶ 22-27);<br><br>*"No credible evidence exists that purchasing carbon credits | KLM did not promise Ms. Dakus that her flight would be carbon neutral, that it would emit "zero" carbon dioxide, or that carbon offsets "negated" the environmental impact of the flight. Instead, it says: |

| | | |
|---|---|---|
| | is equivalent to negating the environmental effects of flying such that a flight could be described as 'CO2 neutral' and 'CO2Zero' as Defendant does" (FAC ¶ 24); and<br><br>*"One [unidentified] expert stated that 'it would be misleading for KLM to suggest to its customers that purchasing offsets can truly compensate for, or reduce the impact of, flying.'"[7] (FAC ¶ 25.) | "We all know travelling leaves a carbon footprint." (Ex. 6);<br><br>"The flight itself won't suddenly be 'greener' because of [KLM's] reforestation programme." (*id.*);<br><br>"With reforestation, you pay a small contribution to compensate (part of) your flight's impact on the environment. ***This does not affect the direct emissions of the flight itself***, but you help by planting trees that reabsorb the CO2 emitted by your flight." (Ex. 12. (emphasis added));<br><br>"Although compensation does not affect our (direct) emissions, and do not contribute to the achievement of our target, it does offer customers the potential to contribute to carbon sequestration and ecosystem restoration." (Ex. 9 at 22); and<br><br>KLM does "not see CO2 compensation as the ultimate solution," but given "the limited availability of [SAF] or electric aircraft means that the airline industry must fall back on CO2 compensation." (Ex. 7.) |
| Reforestation | *"The use of offsets via Defendant's reforestation projects is misleading because a tree storing CO2 is a short-lived and unstable form of storage, not permanent."<br><br>* "This is out of proportion to the eternity that CO2 would have been in the ground if it had not been used for fuel." (FAC ¶¶ 28-29.) | KLM does not make any statement that reforestation solves climate change. Instead, it says, "We do not see CO2 compensation as the ultimate solution," and that the reforestation merely allows passengers to help restore forests that absorb CO2. (Ex. 7.) |
| SAF | "[KLM's] focus on SAFs is misleading because this has a negligible effect on reducing CO2 emissions from flying" and that the "percentage of | KLM does not pretend that use of SAF solves the world's environmental problems, and clearly discloses its limited usage:<br><br>"There is very little production capacity |

---

[7] While the FAC has quote marks around part of this sentence, it does not identify the supposed expert or attribute the quote in any way.

20

| | | |
|---|---|---|
| | SAF used by KLM is 0.18% of their total fuel usage."  (FAC ¶¶ 30-31.) | available in the world" (Ex. 8);<br><br>"SAF is at least 2 to 3 times more expensive than regular kerosene, [b]ecause of the high prices, very few airlines are willing and able to buy SAF, [a]nd because there is so little demand, production capacity doesn't scale up." (*id.*); and<br><br>"In 2019 (pre-Covid), SAF accounted for 0.18% of KLM's total fuel use."  (Ex. 7.) |

The FAC complains about the "non-$CO_2$ effects from flying" and the presence of "other greenhouse gases" (FAC ¶¶ 26-27) but does not identify any statement KLM made that is allegedly rendered untrue.  Further, the FAC does not plead facts that establish that a reasonable consumer would be misled by statements about one's carbon offsets that did not mention other gasses.

Ms. Dakus fails to identify any misleading statement; she only criticizes the nature and effectiveness of KLM's accurately stated initiatives.

### 2.   The Allegations Regarding the Paris Agreement are Predicated on a Misstatement and Are Aspirational Statements.

Ms. Dakus' claim regarding the Paris Agreement is predicated on a misrepresentation.  But "[a] plaintiff … may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss."  *Miller v. Sanofi Consumer Healthcare*, 2023 WL 112553, at *2 (S.D.N.Y. Jan. 5, 2023) (quoting *Fink*, 714 F. 3d at 742); s*ee also Suero v. NFL, et al.*, 2022 WL 17985657, at *13 (S.D.N.Y. Dec. 16, 2022) (alleged statement that football stadium was "*under* 20 minutes from New York City" was not misleading where the defendant's website estimated a commute of "*approximately* 20 minutes") (emphasis added).

As explained previously, the Plaintiff misrepresented the language of the Paris Agreement, which states that the signatories would work toward "2 degrees Celsius *while pursuing efforts* to limit the increase even further to 1.5 degrees" and the SBTi has "confirmed" that KLM's targets

for 2030 adhere to its 2º C goal.  (*See* Section IV.D.)  As a result, what KLM said was true.

Moreover, these targets are *goals*.  "Courts have consistently rejected quarrels, such as [the Plaintiff's], with forward-looking or aspirational statements."  Order Granting Mot. to Dismiss, *Earth Island Institute v. The Coca-Cola Co.*, No. 2021 CA 001846 B (Sup. Ct. D.C. Nov. 10, 2022) (Ex. 13 at 6); *see also XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) (aspirational terms such as "committed to," "aim to," and "believe deeply" not misleading); *Myers,* 2020 WL 13302437, at *4; *Barber v. Nestlé USA, Inc.*, 154 F. Supp. 3d 954, 962-64 (C.D. Cal. 2015) (statements that "[Nestlé] fully support[s]" an initiative "and aim[s] to provide an example" in "[its] business activities" do not mislead consumers); *Ruiz v. Darigold, Inc.*, 2014 WL 5599989, at *4 (W.D. Wash. Nov. 3, 2014) (dismissing claims).

In *Earth Island*, the plaintiff alleged that Coca-Cola's marketing was deceptive because it depicted "the company as sustainable and environmentally friendly."  (Ex. 13 at 1.)  The Court disagreed, rejecting a claim that the statement "Part of our sustainability plan is to help collect and recycle a bottle or can for every one we sell globally by 2030" was actionable because "a consumer would not be able to determine if the goal has yet been met in 2022 as it is set significantly in the future" and the word "'help' muddles the promise, such that the enforceability, even in 2030, appears to be somewhat uncertain."  (*Id.* at 5.)  Likewise, the statement "[m]ake 100% of our packaging recyclable globally by 2025" was "a future goal that cannot yet be measured."  (*Id.* at 5-6.)  The Court dismissed the claims.

So too here.  KLM has explained that it is working to reach "well below 2º C" by 2050— *which is in 27 years.*  This is the trajectory that KLM is still working toward and the FAC's allegation that "there is a very high probability that global warming will exceed 1.5 ºC" does not establish that any of KLM's statements are untrue.  *See Myers,* 2020 WL 13302437, at *4 ("Quaker

does not promise a perfect solution.  Instead, it uses aspirational language—'promotes,' aims,' and 'supports'—which acknowledges its limited control over the supply chain.")

    **B.**    **The Plaintiff Cannot Invoke New York's GBL.**

The GBL "only protect[s] consumers when 'the transaction in which [they] [are] deceived . . . occur[s] in New York.'"  *Zachmann v. Coleman Co.*, 2022 WL 161480, at *3 (S.D.N.Y. Jan. 18, 2022) (quoting *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002)).  Where a plaintiff "does not allege [she] was deceived in New York" and she purchased the product outside of New York, her GBL claims must be dismissed.  *Id.* (dismissing claims).

Here, there is no connection alleged between Ms. Dakus and New York: she is a Texas citizen, does not allege that she bought her flight—from Houston—in New York, that she looked at KLM's website in New York, or ever even visited New York.  Her claim, as well as those of any non-New York putative class members fail.  *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010), *aff'd*, 474 F. App'x 5 (2d Cir. 2012) (dismissing claim).

**VI.**    **The Unjust Enrichment Claim Fails.**

The unjust enrichment claim fails.  Texas does not even recognize unjust enrichment as an independent cause of action.  *See, e.g., Lilani v. Noorali*, 2011 WL 13667, at *11 (S.D. Tex. Jan. 3, 2011) (most Texas appellate courts do not view unjust enrichment as an independent cause of action).  Under New York law, the claim is duplicative of Ms. Dakus' other claims. *See, e.g., Dwyer*, 598 F. Supp. 3d at 157 ("courts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims." (citation omitted) (dismissing claim)); *Pittman*, 2022 WL 2967586, at *7 (same); *Zagoria v. New York Univ.*, 2021 WL 1026511, at *5 (S.D.N.Y. Mar. 17, 2021) (dismissing breach of contract claim).  Ms. Dakus' unjust enrichment claim consists of one conclusory sentence that reiterates her prior claims. (*Compare* FAC ¶ 73, *with* ¶¶ 64-66, 69-72.)  Because Ms. Dakus' "unjust enrichment claim is premised on the same factual

allegations as her other claims, and she has not alleged any damages separate from those other claims," it should be dismissed. *Pittman*, 2022 WL 2967586, at *7.

Even if the claim was not duplicative (which it is), it still fails because: (1) KLM did not make any misleading statement, *Wynn, LLC*, 2021 WL 168541, at *7 (dismissing unjust enrichment claim where plaintiffs did not "plausibly allege[] any misleading or incorrect statements"); *Angeles*, 2022 WL 4626916, at *5 (dismissing unjust enrichment claim); and (2) Ms. Dakus has not adequately pled that KLM was unjustly enriched. Equitable relief is not warranted if the product was purchased and used as intended. *See, e.g., Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 286 (S.D.N.Y. 2011). Ms. Dakus claims that KLM "obtained benefits and monies." (FAC ¶ 73.) Ms. Dakus flew to her destination as intended, so she has not alleged that KLM benefited at her expense or that equity and good conscience require the return of any payment.

## VII. **The Plaintiff Cannot Assert Claims Under Other States' Consumer Fraud Statutes**.

Ms. Dakus cannot assert her Multi-State Consumer Fraud Claims.[8] Under the laws of each of these states, such claims can succeed only if the challenged statements are misleading, which as explained in Section V.A., they are not.[9] The claims also fail because her GBL claim fails.

---

[8] Ms. Dakus fails to identify the specific statutes at issue. Her failure to do so mandates dismissal. *See* Fed. R. Civ. P. 8(a); *Lee v. City of New York*, 2005 WL 2365320, at *2 (S.D.N.Y. Sept. 22, 2005), *aff'd*, 181 F. App'x 55 (2d Cir. 2006) (plaintiff must give defendants "fair and adequate notice of his claims and the grounds on which they rest").

[9] *See, e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1011, 1016 (C.D. Cal. 2015) (Ohio "appl[ies] a reasonableness standard"); *Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 239 (W.D.N.Y. 2021) (West Virginia) (same); *Huston v. Conagra Brands, Inc.*, 2022 WL 4647251, at *3 (C.D. Ill. Sept. 30, 2022) (Arkansas) (same); *Williams v. Quest Diagnostics, Inc.*, 353 F. Supp. 3d 432, 450 (D.S.C. 2018) (South Carolina) ("[A]n act is 'deceptive' when it has a tendency to deceive." (citation omitted)); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 204 (D. Me. 2004) (Utah) (same). *Nicklas v. Pro. Assistance, LLC*, 2018 WL 8619646, at *3 (D. Wyo. Sept. 26, 2018) (Wyoming) (a deceptive practice is "one that is likely to mislead consumers"); *Trejo de Zamora v. Auto Gallery, Inc.*, 2014 WL 1685925, at *9 (D. Nev. Apr. 28, 2014) (Nevada) ("For purposes of deceptive trade practices, materiality is a question of fact . . . [and the] essential question is whether the reasonable buyer's decision to buy or not to buy would change if the fact at issue were disclosed."). The Mississippi claim fails because a private right of action cannot proceed unless the plaintiff first made "a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General", and Ms. Dakus has not done so. *Joan Cravens, Inc. v. Deas Constr. Inc.*, 2016 WL 9240622, at *2 (S.D. Miss. May 5, 2016) (quoting Miss. Code. Ann. § 75-24-15(2)). The South Carolina claim also fails because the consumer protection statute does not permit consumer class actions, S.C. Code Ann. § 39-5-140(a).

*Simington v. Lease Fin. Grp., LLC*, 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *see also Gould v. Helen of Troy Ltd.*, 2017 WL 1319810, at *6 (S.D.N.Y. Mar. 30, 2017) (dismissing multi-state consumer protection claims); *Chung v. Pure Fishing, Inc.*, 2022 WL 866769, at *7 (E.D.N.Y. Mar. 23, 2022) (same); *MacNaughten v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 335 (N.D.N.Y. 2021) (same).

Finally, a plaintiff can only assert a claim if she "resides in, does business in, or has some other connection to [a given] state[.]" *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014), *on reconsideration*, 14 F. Supp. 3d 99 (E.D.N.Y. 2014); *Campbell-Clark v. Blue Diamond Growers*, 2019 WL 10852810, at *1 (E.D.N.Y. Dec. 17, 2019) (dismissing claims); *Simington*, 2012 WL 651130, at *7 (dismissing consumer protection claims). Ms. Dakus resides in Texas and does not articulate any connection with the other states. She cannot bring claims under those states' laws.

## VIII.   The Remedies Sought Beyond Compensatory Damages Must Be Stricken.

Ms. Dakus' request for "statutory and/or punitive damages" should be stricken. (FAC, Prayer for Relief.)  First, the COC prohibits Ms. Dakus from obtaining anything other than compensatory damages.  (Ex. 5 § 19.1.2(b) ("the Carrier shall not be liable, in any way, for consequential Damage or any form of non compensatory Damage").)   Such clauses are enforceable. *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 753–54 (S.D.N.Y. 2016).

Second, "the general rule in New York is that punitive damages are not available in breach of contract actions." *McLean-Laprade v. HSBC*, 2013 WL 3930565, at *5 (N.D.N.Y. July 30, 2013) (citation omitted).  Finally, the ADA preempts Ms. Dakus' claim for punitive damages. *Norman v. Trans World Airls., Inc.*, 2000 WL 1480367, at *6 (S.D.N.Y. Oct. 6, 2000) (dismissing claim).

## **<u>CONCLUSION</u>**

KLM respectfully requests that this Court dismiss the FAC in its entirety with prejudice.


Dated: January 23, 2023                    Respectfully submitted,

DLA Piper LLP (US)

*/s/ Keara M. Gordon*
Keara M. Gordon

*Attorney for Defendant*
*Koninklijke Luchtvaart Maatschappij, N.V.*

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 23, 2023, the foregoing Memorandum of Law

in Support of KLM's Motion to Dismiss the First Amended Complaint was electronically filed

with the Clerk of the Court using the CM/ECF system and thereby served on the following

counsel:

Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck, NY 11021
spencer@spencersheehan.com
*Counsel for Plaintiff*

Dated: January 23, 2023

                                        */s/ Keara M. Gordon*
                                         Keara M. Gordon