# EXHIBIT 13

### IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| EARTH ISLAND INSTITUTE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2021 CA 001846 B |
| ) | Judge Maurice A. Ross |
| v. ) | |
| ) | |
| THE COCA-COLA COMPANY, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## ORDER GRANTING MOTION TO DISMISS

### Introduction

On June 4, 2021, Earth Island Institute (Plaintiff) filed a Complaint against The Coca-Cola Company (Defendant) based upon statements made by Defendant, on various platforms, regarding sustainability initiatives. Plaintiff asserts that Defendant's statements constitute false and deceptive marketing by representing the company as sustainable and environmentally friendly in violation of the District of Columbia Consumer Protection Procedures Act (CPPA). D.C. Code §§ 28-3901, *et seq*. On June 13, 2022, Defendant filed a Motion to Dismiss. A motion hearing was held before the Court on September 14, 2022. The matter is now ripe for resolution.

### Legal Standard

Pursuant to Super. Ct. R. 12(b)(6), in order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *See Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543-44 (D.C. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). Further, "the remaining factual allegations must plausibly suggest liability and raise

1

a right to relief above the speculative level." *Nat. Consumers League v. Wal-Mart Stores Inc.*, No. 2015 CA 007732 B, 2016 WL 4080541 (D.C. Super. July 22, 2016).

The standard for surviving dismissal in this matter would require a plausible basis that Defendant "has engaged in unfair or deceptive trade practices under the CPPA." *Ctr, for Inquiry, Inc. v. Walmart, Inc.*, No. 2019 CA 3340 B, 2020 WL 6556839, at *5 (D.C. Super. Ct. Apr. 2, 2015). *See also Coca-Cola's Motion to Dismiss Complaint Pursuant to D.C. Super. Ct. R. 12(b)(6)* ("MTD") at 6.

## Statutory Framework

This action is brought under the District of Columbia Consumer Protection Procedures Act ("CPPA"). D.C. Code §§ 28-3901, *et seq*. Plaintiff highlights the following alleged violations of the CPPA (D.C. Code § 28-3904(a), (d), (e), (f), (f-1), (h)):

> (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
> (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;
> (e) misrepresent as to a material fact which has a tendency to mislead;
> (f) fail to state a material fact if such failure tends to mislead;
> (f-1) [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead;
> (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

According to the CPPA, a violation occurs regardless of "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904. The representation or misrepresentation is evaluated in the eyes of a reasonable D.C. consumer. The fact that a reasonable customer *could be* reasonably misled is sufficient to constitute a violation. *Earth Island Institute v. BlueTriton Brands* No. 2021 CA 003027 B, 2022 D.C. Super. LEXIS 11, at

14-15 (June 7, 2022). Additionally, the misrepresentation need not be done intentionally by Defendant. *Frankeny v. District Hospital Partners, LP* 225 A.3d 999 at 1004-1005 (D.C. 2020).

## Analysis

There are three reasons as to why the Defendant's motion will be granted, and Plaintiff's complaint will be dismissed; (1) Defendant's statements are aspirational in nature and, therefore, not a violation of the CPPA, (2) Defendant's statements are not tied to a "product or service," and (3) Defendant's statements cannot be cobbled together to allege one general misrepresentation. These three reasons are discussed, in turn, below.

**I.     Defendant's statements are aspirational in nature and, therefore, not a violation of the CPPA. D.C. Code § 28-3901, *et seq*.**

In the complaint, Plaintiff cites to various statements made by Coca-Cola, appearing in a range of publications including Twitter, the Coca-Cola website, and Coca-Cola's annual Business & Strategy Report. Compl. *generally*. Of the statements, a majority included aspirational sentiments, such as future goals or vague corporate ethos. Compl. *generally*.

*Nat. Consumer League v. Wal-Mart Stores, Inc.* evaluated a motion to dismiss a CPPA cause of action against Wal-Mart Stores, Inc., The Children's Place, Inc., and J.C. Penny Corporation, Inc. for similar forward-looking or aspirational statements. No. 2015 CA 007732 B, 2016 WL 4080541 (D.C. Super. July 22, 2016). In *Nat. Consumer League*, the court held "the usage of the qualifying terms 'expect,' 'goal,' and 'ask' is demonstrative of the aspirational nature of the statements and further demonstrates that the statements are not promises to consumers. . .the defendants did not use qualifying terms binding retailers such as 'ensure,' 'promise,' or forbid.'" *Nat. Consumer League v. Wal-Mart Stores, Inc.*, No. 2015 CA 007732 B, 2016 WL 4080541 at 6 (D.C. Super. July 22, 2016). Included below are various statements that Plaintiff cites to support the CPPA claim and correlating analysis.

*General Aspirational Statements and Vague Corporate Ethos:*

(1) "Our planet matters. We act in ways to create a more sustainable and better shared future. To make a difference in people's lives, communities and our planet by doing business the right way." Compl. ¶ 32. *Sustainable Business,* The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business (last visited June 3, 2021).
(2) "Scaling sustainability solutions and partnering with others is a focus of ours." Compl. ¶ 33. @CocaColaCo, Twitter (Sept. 24, 2020, 9:01 AM), https://twitter.com/cocacolaco/status/1309115717204226055.
(3) "Business and sustainability are not separate stories for The Coca-Cola Company – but different facets of the same story." Compl. ¶ 34. @CocaColaCo, Twitter (Apr. 24, 2020, 4:20 PM), https://twitter.com/cocacolarco/status/112114682673298945.
(4) "We're using our leadership to achieve positive change in the world and build a more sustainable future for our communities and our planet. . .I'm reminded of the power of our people to make a difference, to serve our communities and constantly work to shape a more sustainable business." Compl. ¶ 35-36. *2019 Business & Sustainability Report*, The Coca-Cola Company (Apr. 2020), https://www.coca-colacompany.com/content/dam/journey/us/en/reports/coca-cola-business-and-sustainability-report-2019.pdf.
(5) "Because our company is in so many communities globally, we can share our best practices. We can collaborate with governments, communities, the private sector, and NGOs to help develop more effective recycling systems that meet each community's unique needs." Compl. ¶ 41. *Business & Sustainability Report*, The Coca-Cola Company (Apr. 2020), https://www.coca-colacompany.com/content/dam/journey/us/en/reports/coca-cola-business-and-sustainability-report-2019.pdf.
(6) "[C]omitted to creating a World Without Waste by taking responsibility for the packaging we introduce to markets and working to reduce ocean pollution." Compl. ¶ 40. *Progress Against a World Without Waste: Holding Ourselves Accountable,* The Coca-Cola Company (Oct. 9, 2018) https://www.coca-colacompany.com/news/progress-against-a-world-without-waste.

The above statements are general, aspirational corporate ethos. There are no promises or measurable datapoints that would render the above statements true or false. Phrases such as "a more sustainable and better shaped future," "a focus of ours," "a more sustainable future for our communities and our planet," "help develop more effective recycling systems," and "committed to creating" are extremely vague, and while they point to a general theme of sustainability and

4

corporate improvement, there is not a measurable standard to apply as to whether or not Defendant has met these general goals.

In *Nat. Consumer League*, the court found that "[Plaintiff] goes too far by recasting the retailers' aspirational statements into 'promises' made to the consumer. . .It is clear that the language of the defendants does not convey a promise." No. 2015 CA 007732 B, 2016 WL 4080541 at 6 (D.C. Super. July 22, 2016). The statements above fall into the same category of characterization as *Nat. Consumer League*. *Id.* Defendant made no promises in the above statements with specific steps being taken to ensure a specific amount of sustainability for the company. As aspirational and general statements, the above examples do not successfully create a claim under the CPPA.

*More Specific, Future Statements:*

(1) "Part of our sustainability plan is to help collect and recycle a bottle or can for every one we sell globally by 2030." Compl. ¶ 45. @CocaColaCo, Twitter (Feb. 3, 2020, 10:38 AM), https://twitter.com/cocacolarco/status/1224356370708881411.
(2) "Make 100% of our packaging recyclable globally by 2025. [And] [u]se at least 50% recycled material in our packaging by 2030." Compl. ¶ 51. *Sustainable Packaging Design,* The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business/packaging-sustainability/design (last visited June 3, 2021).

The above statements are much more specific than the previous statements. These statements include specific measurements that hold the potential to be a promise to a consumer. With that said, the statements also include the caveat that the goals are set significantly in the future. For example, "help collect and recycle a bottle or can for every one we sell globally by 2030" is a goal, but a consumer would not be able to determine if the goal has yet been met in 2022 as it is set significantly in the future. Also, the inclusion of the word "help" muddles the promise, such that the enforceability, even in 2030, appears to be somewhat uncertain. The

5

second statement aspiring to "make 100% of our packaging recyclable by 2025. . .[And] [u]se at least 50% recycled material in our packaging by 2030" is also a future goal that cannot yet be measured. As future, aspirational goals, these statements cannot successfully create a valid claim under the CPPA until they have been found to be inaccurate or misleading.

*Nat. Consumer League* held that "general and unspecific statements are not actionable due to the fact that no reasonable consumer would rely upon them." No. 2015 CA 007732 B, 2016 WL 4080541 at 7 (D.C. Super. July 22, 2016). Plaintiff asserts that, from the above statements, "no reasonable consumer who sees Coca-Cola's representations would expect the steps that Coca-Cola is taking to combat plastic pollution to be so insignificant relative to the scale at which its plastic pollution occurs." Compl. ¶ 16. Plaintiff's argument highlights the flaw in its reasoning. Plaintiff is not challenging Defendant's statement or product, as it must under the CPPA, but its actions.

In short, Earth Island Institute has not alleged that any statement by Coca-Cola is provably false or plausibly misleading. Earth Island Institute does not allege that Coca-Cola misled consumers as to its products' characteristics, or even as to its current environmental practices. Rather, Earth Island Institute asserts that because Coca-Cola allegedly has failed to meet certain environmental goals in the past, it should not be allowed to set any for the future. Courts have consistently rejected quarrels, such as Earth Island Institute's, with forward-looking or aspirational statements. Thus, Earth Island Institute's claim relating to such statements also fails.

> II. **Defendant's statements are not tied to a "product or service" as required by the CPPA. D.C. Code § 28-3904(a), (d), and/or (h).**

Sections (a), (d), and (h) of the CPPA are all similar in the fact that they require a deception involving specific "goods or services." D.C. Code § 28-3904(a), (d), (h). The text is as follows:

> It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to:
>
> (a) Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
> (d) Represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;
> (h) Advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

Speaking plainly, the good at issue is the beverage sold by Coca-Cola. At the very most, the good may be expanded to include the bottle holding the beverage. Of all of the statements cited by Plaintiff, not one of them is pictured on the bottle itself. Compl. *generally.* Instead, the statements appear on a variety of external sources, including the Coca-Cola website, Twitter, and the Business & Sustainability report. *Id.* Plaintiff asserts that the sustainability statements made by Defendant, while not on the bottle itself, are designed to effectuate a sale of the product, thus making the CPPA applicable. *Motion to Dismiss Hearing. See also* Compl. 135.

This court ruled on a similar motion to dismiss evaluating CPAA claims for a deceptive or misleading label on salmon including the term "sustainable" in *GMO Free USA v. Aldi Inc.* No. 2021 CA 001694 B, 2022 WL 554486 (D.C. Super. Feb. 16, 2022). The court found that the motion to dismiss failed because, after construing facts in the most favorable light to the plaintiff, it was possible for a reasonable consumer to find the term "sustainable" on salmon packaging to believe that the salmon had been farmed "in accordance with high environmental

7

and animal welfare standards, but in reality, the salmon are sourced unsustainably." *GMO Free USA v. Aldi Inc.* No. 2021 CA 001694 B, 2022 WL 554486, at 1 (D.C. Super. Feb. 16, 2022). The present case is distinguishable from *GMO Free USA v. Aldi Inc.* because (1) the sustainability statements do not appear on the label or product itself, and (2) the sustainability promise in *GMO Free* was proven to be incorrect, and therefore, possibly misleading under the statute.

Including corporate ethos, hopes, and philosophies, represented by statements on various corporate communications, but not on the product label, cannot be considered as part of the product itself. Because none of the cited statements are part of the product, they cannot be evaluated under CPAA sections (a), (d), (h). D.C. Code § 28-3904, and fail to state a claim upon which relief may be granted.

### III. Defendant's statements are not sufficient to create a misleading "general impression" or a "mosaic of representations" to a reasonable D.C. consumer as a matter of law. D.C. Code § 28-3904(e), (f), and/or (f-1).

Sections (e), (f), and (f-l) of the CPPA are all different from the sections cited above because they do not require specific "goods or services," making the analysis more complex. D.C. Code § 28-3904(e), (f), (f-1). The text is as follows:

> It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to:
>
> (e) misrepresent as to a material fact which has a tendency to mislead;
> (f) fail to state a material fact if such failure tends to mislead;
> (f-1) [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead.

Plaintiff asserts that Defendant's statements, taken together as a "general impression" and a "mosaic of representations," are sufficient for a reasonable consumer to be misled as to Coca-Cola's sustainability as a matter of law. Compl. 5. *See also Motion to Dismiss Hearing*.

Plaintiff cites to *Earth Island Institute v. BlueTriton Brands* as their primary supportive case. No. 2021 CA 003027 B, 2022 D.C. Super. LEXIS 11 (June 7, 2022). Looking to *Earth Island Institute v. BlueTriton Brands*, the court held that the defendant (a water bottle brand) portrayed its business practices as sustainable as a matter of law. *Id.* As such, whether the sustainable representations were sufficient to mislead a reasonable consumer was a question of fact for the jury. *Id.* The court found "The challenged [sustainability] statements are comprised of representations regarding the quality and characteristics of defendant's products, the company's manufacturing practices, the environmental impact of these practices, general representations about the plastic and recycling industry across the country, the company's efforts to counter the negative effects of its industry, and the goals for the company going forward." *Id* at 13-14. The court struck the defendant's argument that the statements could not be determined as misleading, as a matter of law, in context of the company's entire representation across its social media and website. *Id* at 14. Instead, the court reiterated that this was a factual question.

As an initial matter, this Court rejects the notion that a plaintiff can make a CPPA claim on the basis of a "general impression" or a "mosaic of representations." The statute provides a cause of action for a misleading "material fact," not a bungle of different statements taken from various documents at different times. The rationale for tying the misrepresentation to a material fact instead of a mosaic or general impression is clear. Whereas here, the defendant is a national global entity, the trial (not to mention discovery) would be rudderless as each side cherry-picked events, documents, and actions all over the world over several decades to state or negate how the defendant entity "represented" itself. Such a vague, subjective, and undefinable allegation does not state a claim under the CPPA.

Earth Island Institute readily acknowledges that at the heart of its complaint, they take issue with Coca-Cola's marketing strategy. *See* Opposition at 8. Earth Island Institute claims "Coca-Cola's business practices fall far short of what consumers would expect from a "sustainable company." As for goals, Earth Island Institute asserts Coca-Cola knows it will not achieve the goal it promises to consumers, and even If the goals were achieved, they would not have the effects that Coca-Cola represents. For example, Earth Island Institute says Coca-Cola knows it cannot create "a world without waste."

Earth Island Institute's assertions reveal the fundamentally flawed premise of its complaint. Coca-Cola has branded itself. Nothing in the CPPA prohibits an entity from cultivating an image, and that is why Earth Island Institute's pleading is not moored to the statute or prevailing case law. Earth Island Institute concedes that the CPPA makes unlawful any "misrepresentation as to a material fact," Opposition at 12, not a mosaic of some sort. The complaint begs several questions: What is a sustainable company, or even an environmental advocacy group? Who defines the terms? What are consumer expectations? There is no precedent for such questions, in part because the law does not regulate expectations. Moreover, goals cannot be promises. In any event, how does Earth Island Institute or a reasonable juror decide that Coca-Cola's future goals cannot be met. Would Earth Island Institute make the same allegation about a manufacturer who promised aircraft in 1900, a President in 1961 who promised to land a person on the moon and return that person safely to Earth by 1970, or an entrepreneur whose goal in 2000 was to have more than 95% of Americans owning a cellular phone in 2021[1]. Courts cannot be expected to determine whether a company is actually committed to creating a "world without waste" or "to doing business the right way."

---

[1] *Mobile Fact Sheet*, Pew Research Center (Nov. 10, 2022, 9:52 AM), https://www.pewresearch.org/internet/fact-sheet/mobile/.

10

In the present case, Plaintiff asserts that this case and *BlueTriton* are one in the same and should be treated as such. Looking to Plaintiff's provided exhibit, representations between the *BlueTriton* case and the present case are shown. Compl. 4. See below:

| Representations at Issue in *BlueTriton* | Representations at Issue in Present Matter |
|---|---|
| We're proud to introduce our 100% recycled and recyclable bottles." (Ex. A ¶ 63). | "Make 100% of our packaging recyclable globally by 2025." (Compl. ¶ 51). |
| "By embedding sustainability into the foundation of our brands, we are able to deliver . . . [a product that] aligns with what our consumers want . . . ." (Ex. A ¶ 48). | Our planet matters. We act in ways to create a more sustainable and better shared future. To make a difference in people's lives, communities and our planet by doing business the right way." (Compl. ¶ 32). |
| BlueTriton is at "the forefront of sustainable water management, advancing recycling and waste reduction." (Ex. A ¶ 51). | "We're using our leadership to achieve positive change in the world and build a more sustainable future for our communities and our planet." (Compl. ¶ 35). |
| "at its core, [BlueTriton] cares about water." (Ex. A ¶ 54). | "Scaling sustainability solutions and partnering with others is a focus of ours." (Compl. ¶ 33). |
| "keep[s] [plastic] out of landfills, waterways, and oceans." (Ex. A. ¶¶ 59, 63). | Coca-Cola aims to "[c]ollect and recycle a bottle or can for each one we sell by 2030. (Compl. ¶ 43). |

As demonstrated above, BlueTriton's language is significantly more concrete than the language by Defendant. A phrase such as "100% recycled and recyclable bottles" is much more concrete and indicative to a promise to consumers than Defendant's aspiration to make packaging recyclable "by 2025." Compl. 4. BlueTriton claimed to have already achieved its ambitious sustainability goals. Likewise, BlueTriton's statement that it "keep[s] [plastic] out of landfills, waterways, and oceans" is a promise with fortifying language, while Defendant's "aim to collect and recycle a bottle or can for each one we sell by 2030" is another aspirational goal. *Id.* Here, Coca-Cola made no definitive claims, and in fact, acknowledged its limitations by publicly setting goals.

The court must disagree with Plaintiff that the present case deserves the same outcome as *Earth Island Institute v. Blue Triton Brands*. The statements that Plaintiff highlights are blatantly

11

cherrypicked from various publication sources including Twitter, the Coca-Cola website, and Coca-Cola's annual Business & Strategy Report. Compl. *generally*. Of note, none of the statements appear on the product itself.[2] There is no plausible framework to determine whether a reasonable DC consumer could be misled by a general impression. Even taken together, the cited statements by Defendant are aspirational, limited, and vague such that, as a matter of law, such statements cannot be misleading.

### Conclusion

For the reasons stated above, this Court grants Defendant Coca-Cola's Motion to Dismiss Complaint Pursuant to D.C. Super. Ct. R. 12(b)(6). Accordingly, it is this **10th** day of November 2022, hereby:

**ORDERED** that the Motion to Dismiss is **GRANTED**;

**FURTHER ORDERED**, that Plaintiff's Complaint is **DISMISSED**; and

**FURTHER ORDERED**, this case is now closed.

**SO ORDERED**.

*Maurice A. Ross*

Judge Maurice A. Ross

Copies to:

Kim E. Richman
*Plaintiff's Counsel*

Steven A. Zalesin
Jane Metcalf
Kevin Opoku-Gyamfi
Anthony C. LoMonaco
Anthony T. Pierce
Miranda A. Dore
*Defendant's Counsel*

---

[2] At least some of the statements at issue in *Earth Island Institute v. Blue Triton Brands* apparently actually appear on the product label.