# EXHIBIT 1

Case 1:22-cv-07962-RA-RWL   Document 26-1   Filed 05/10/23   Page 2 of 14
GLORIA MIRAMONTES, Individually, and On Behalf of All Others..., Slip Copy (2023)
2023 WL 3293424

2023 WL 3293424
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

GLORIA MIRAMONTES, Individually, and On Behalf of All Others Similarly Situated, Plaintiff,
v.
RALPH LAUREN CORPORATION, Defendant.

22-cv-04192 (CM)
|
Filed 05/05/2023

# DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMahon, J.:

**\*1** Plaintiff Gloria Miramontes ("Plaintiff") is a resident of El Paso, Texas. Her attorney has a habit of bringing consumer fraud class actions against Ralph Lauren Corp. in federal courts — taking advantage of the generous jurisdictional provision of the Class Actions Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). Thus far Plaintiff's counsel's efforts to sue Ralph Lauren for having an allegedly insufficient amount (less than 100%) of Pima cotton in its Pima cotton sweaters have been rebuffed in the Middle District of Florida and the Eastern District of Wisconsin. This is counsel's second try at suing in this court; a motion to dismiss a first filed action nearly identical to this one (although brought on behalf of a different plaintiff) is presently pending before my colleague, The Hon. Paul G. Gardephe.

Plaintiff's Complaint must be dismissed with prejudice. Her effort to sue Ralph Lauren pursuant to New York's consumer fraud statute, N.Y. General Business Law §§ 349 and 350, is dead on arrival, because the purchase of an allegedly mislabeled item in Texas by a Texan is not actionable under a law that was passed to protect New Yorkers consumers engaged in New York transactions. Nor will this court allow Plaintiff to sue as the representative of classes of consumers who are protected under the laws of other states — especially where, as here, there is no allegation that the Plaintiff ever engaged in any commercial transaction in any state but Texas, where her consumer fraud claim appears to be time barred. Her claims for breach of express and implied warranty, as well as for violation of the Magnuson Moss Warranty Act, are frivolous on their face. And Miramontes fails to state any claim for negligent misrepresentation, fraud or unjust enrichment, whether under New York or Texas law.

Defendant moves to dismiss the Complaint for failure to state a claim, failure to plead fraud with particularity, and for failure to establish a certifiable class, pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 12(f). For the following reasons, the Defendant's motion to dismiss is GRANTED. Plaintiff's Complaint is dismissed, with costs to the Defendant.

## BACKGROUND

I. Factual History

Plaintiff is a resident of El Paso, Texas. Defendant is a Delaware corporation with its principal place of business in New York, New York. (Complaint, Dkt. No. 1 ("Compl.") ¶¶ 54-55).

On or about November 9, 2019, Plaintiff bought a "women's burgundy lightweight V-neck sweater" (the "Product") at The Polo Factory Store in in Canutillo, Texas, just outside of El Paso.[1] She fails to plead what she paid for the sweater, except to say that it cost "no less than $39.99." (*Id.* ¶¶ 1, 44, 59).

[1] The Polo Factory Store is located within "The Outlet Shoppes at El Paso," an "Outlet shopping center" which hosts "an array of merchandise at 20 percent to 70 percent off department store prices," according to The Outlet Shoppes's website, https://www.theoutletshoppesatelpaso.com/information/.

The neck tag on the sweater said, "WASHABLE PIMA COTTON." (*Id.* ¶ 2). The Product's hangtags stated, "Fine luxurious yarns crafted from Pima Cotton fibers distinguish this signature design, knit in a fine gauge stich for lightweight comfort and an exquisitely soft hand." (*Id.* ¶ 3). The tags said nothing about how much Pima cotton was used to craft the yarn that was knitted into the sweater or whether any other fiber was used to make the yarn. It did not, however, represent that the sweater was made of 100% Pima Cotton. (*Id.*).

**\*2** According to the Complaint, different types of cotton are distinguished by their "different characteristics, such as strength, softness, and fiber length." (*Id.* ¶ 6). However, "the main criteria [sic] to identify the type of cotton is the fiber length." (*Id.* ¶ 7). Pima cotton is alleged to be a "type of

extra-long staple ('ELS') cotton with a range of 1.2 inches to 1.48 inches." (*Id.* ¶ 9). The Complaint alleges that, "Pima cotton products are costlier than those made of shorter types of cotton." (*Id.* ¶ 13).

Plaintiff did not buy the sweater because she needed something to wear. Rather, she (and her attorney) submitted it for testing to determine the length of its cotton fibers, as well as the types and amounts of cottons contained in the Product. Plaintiff's counsel had the sweater tested using the Single-Fiber Test developed by the American Society for Testing and Materials. (Compl. ¶ 9). The test results, which are summarized in something called the "TexTest Report," showed that all of the cotton fibers in the sweater were shorter than 1.20 inches. (*Id.* ¶ 17). But that did not mean there was no Pima cotton in the sweater. Indeed, an expert retained by Plaintiff's attorney, Dr. Sabit Adenur, reviewed the TexTest Report and opined that as much as 62% of the fibers in the sweater could have been Pima cotton, accounting for the 25% fiber shortening that occurs during the manufacturing process. (*Id.* ¶¶ 18-19). Since her own expert declined to opine that the sweater did not contain Pima cotton, Plaintiff was reduced to suggesting, "It is unlikely the cotton fibers used in the Product were reduced in size by 25% from the time the cotton was harvested until it was analyzed." She pleaded no fact supporting her "suggestion" that, contrary to the opinion of her expert, it was "unlikely" that the fibers in the sweater shrank by that amount during the manufacturing process. (*Id.* ¶ 23).

Plaintiff alleges that she "believed and expected the Product contained cotton that was only Pima cotton, because the neck tag stated Pima cotton and the hang tag described only Pima cotton," and failed to mention any other fiber that was in the sweater. (*Id.* ¶ 60). Plaintiff claims that the contents of the neck tag and hang tags contained representations, promises, and warranties by the Defendant that the sweater was made entirely of Pima cotton. (*Id.* ¶¶ 60-61). "Plaintiff believed and expected the Product contained cotton that was only Pima cotton ... because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product." (*Id.* ¶ 60). In reliance on "the words, terms [sic] coloring, descriptions, layout, placement, packaging, hang tags, and/or images on the Product, on the label, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions ... Plaintiff bought the Product at or exceeding [$39.99]." (*Id.* ¶¶ 61-63).

Plaintiff asserts she was injured by her reliance on the Defendant's purported representation that the Product was constructed exclusively of Pima cotton. (*Id.* ¶¶ 60-65). Plaintiff states she either "would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it." (*Id.* ¶ 63). She alleges, "The Product was worth less than what Plaintiff paid and she would not have paid as much absence Defendant's false and misleading statements and omissions." (*Id.* ¶ 65).[2]

[2] Just out of curiosity, the court went onto the internet and learned that a full-priced Ralph Lauren Pima cotton V-neck sweater costs $98. https://www.ralphlauren.com/men-clothing-sweaters/pima-cotton-v-neck-sweater/328913.html. Of course, outlet stores like the one at which Miramontes bought the sweater in suit sell clothing at a fraction of its full price.

\*3 Plaintiff asserts nine causes of action, all of which are premised on her allegation that the sweater was comprised of, at the very most, 62% Pima cotton, when "the Product purports to be only Pima Cotton." (*Id.* ¶ 36). Plaintiff also seeks to certify two classes — a Texas Class and the Consumer Fraud Multi-State Class — on behalf of other consumers who purchased these sweaters, either in Texas or in other states. (*Id.* ¶ 68).

II. <u>Plaintiff's Counsel's Other Pima Cotton Punitive Class Actions against RLC</u>

As mentioned, Plaintiff's counsel has filed three other putative class action lawsuits, in federal courts in New York, Florida, and Wisconsin, in which the named plaintiff alleges that RLC misleadingly labeled its cotton products as being entirely constructed from Pima cotton when they were in fact not. Plaintiff's counsel discontinued two of those lawsuits — one shortly after an order was entered dismissing the case with leave to refile an amended complaint,[3] and one shortly after RLC filed a motion to dismiss.[4] In the third lawsuit, which is presently pending before my colleague Judge Gardephe, the plaintiff is a New Jersey resident who purchased a RLC sweater in New York; in that case, plaintiff's expert concluded that the product at issue contained just 7% Pima cotton. *Carter v. Ralph Lauren Corp.*, No. 1:21-cv-01202-PGG (S.D.N.Y., filed Feb. 10. 2021).

Case 1:22-cv-07962-RA-RWL   Document 26-1   Filed 05/10/23   Page 4 of 14
GLORIA MIRAMONTES, Individually, and On Behalf of All Others..., Slip Copy (2023)

2023 WL 3293424

3   *Cota v. Ralph Lauren Corp.*, No. 1:21-cv-01089 (E.D. Wis., Sept. 18, 2021).

4   *Ross v. Ralph Lauren Corp.*, No. 6:21-cv-01295 (M.D. Fla. Aug. 12, 2021).

Each of the plaintiffs in the *Carter*, *Ross*, and *Cota* cases either actually lived in the state whose consumer protection law was invoked or bought the allegedly mislabeled products in the state whose consumer protection law was invoked. In the case at bar, however, Plaintiff Miramontes, who resides in Texas and purchased the Product in Texas, has sued in New York, alleging a violation of New York's consumer protection law. It seems that her purchase took place outside the two-year statute of limitations that applies to claims brought under the relevant consumer protection law in Texas. (Motion to Dismiss, Dkt. No. 11 ("Def. Br.") at 1). So instead she sues under New York law, ostensibly on the theory that, as New York is where Defendant's principal place of business is located, its consumer protection law applies to her purchase.

In addition to pursuing her own claim, Miramontes seeks to represent two classes of purchasers of the Product (this specific, women's burgundy V-neck sweater) — one consisting of individuals who, like Plaintiff, purchased the Product in Texas, and the other consisting of individuals who purchased the Product in one of the following nineteen states: New York, Connecticut, New Hampshire, Indiana, Virginia, Montana, Wyoming, Idaho, Alaska, Vermont. Georgia, Iowa, Minnesota, Delaware, Mississippi, Tennessee, Arkansas, South Carolina, and Utah. (Compl. ¶ 68). Miramontes does not allege that she bought an RLC Pima cotton sweater in any of those states.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for the failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly* 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570. Moreover, "where the well-plead facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**\*4** When asserting a claim for fraud, the plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Rombach v. Chang*, 355 F.3d 164, 170-71 (2nd Cir. 2004). Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constitute fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit has read Rule 9(b) to require that a "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir. 1993).

### DISCUSSION

Taking Plaintiff's assertion that the Product contained less than 100% Pima cotton as true (as I must on a motion to dismiss), none of the facts pleaded "shows that the pleader is entitled to relief" on any of her nine possible theories of recovery. Fed. R. Civ. P. 8(a)(2).

Plaintiff's claims rest on the proposition that RLC has misrepresented that its Product was made of 100% Pima cotton when it was not. (Compl. ¶¶ 1, 36, 60.) However, Plaintiff concedes that, "Defendant is technically correct that the Complaint '[can]not point to any representation [ ] that the Product contained 100% Pima cotton' or that it is 'made entirely from' this variety." (Opposition to Motion to Dismiss, Dkt. No. 14, ("Opp. Br.") at 2). Instead, she insists that the failure to mention any other product led her reasonably to "understand" that the product was 100% Pima, rather than a cotton blend. In short, she pleads fraud and misrepresentation by omission.

I. First and Second Claims for Relief: New York General Business Law §§ 345 & 350

Plaintiff asserts claims under §§ 349 and 350 of the New York General Business Law ("GBL") (Count I and Count II, respectively). New York GBL requires the alleged "[d]eceptive acts or practices in the conduct of any business, trade or commerce ... *in this state* are hereby declared unlawful." N.Y. Gen. Bus. Law, § 349(a) (emphasis added). The same language is used in New York GBL § 350, which makes it unlawful to engage in false advertising practices "in this state." N.Y. Gen. Bus. Law, § 350.

These claims are easily dismissed. Plaintiff is a Texan who bought a product in Texas, viewed the descriptions in Texas. The GBL offers her not a scintilla of protection for this purchase. The law on this point is well settled.

The Second Circuit has interpreted language "in this state" as a "limiting phrase" requiring that "the transaction in which the consumer is deceived ... occur in New York." *Cruz v. FXDirectDealer LLC*, 720 F.3d 115, 122 (2nd Cir. 2013) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 & n.1). In *Cruz*, the Second Circuit determined the appropriate test to establish whether a transaction occurred in New York is "to focus on the location of the transaction, and in particular New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties.' " *Id.* (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325). In its most recent decision discussing GBL §§ 349-350, the Second Circuit refers to this as "territoriality," and asserts that it must be pleaded in order for a claim brought under these consumer protection statutes to survive. *MacNaughton v. Young Living Essential Oils, LC*, 2023 WL 3185045, at *5 (2nd Cir. May 2, 2023). In *MacNaughton*, the Second Circuit repeated and reaffirmed the holding in *Cruz*, requiring " 'a sufficient nexus between [the plaintiff's] transaction with [the defendant] and New York to fall within the territorial reach' of the New York General Business Law." *Id.* (quoting *Cruz*, 720 F.3d at 122 (2nd Cir. 2013)).

**\*5** Thus, the fact that Ralph Lauren has its principal place of business in New York is irrelevant when deciding whether Plaintiff's purchase of this sweater is a transaction protected by the GBL. What is relevant is that there be some nexus between the transaction and New York. *Id. See also Cruz*, 720 F. 3d at 122 (2nd Cir. 2013). Plaintiff, a Texan who saw the label and purchased the sweater in Texas, pleads no such nexus. That dooms her GBL claims.

Plaintiff contends that the nexus requirement is satisfied because, "Defendant's decisions for labeling the Product" occurred at its headquarters in New York County. (Compl. ¶ 52). But New York's highest court, the New York Court of Appeals, has plainly held that "hatching a scheme" in New York does not mean that the consumer "transaction" has the requisite nexus to satisfy the territoriality requirement of the GBL. *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 323 (2002). In *Goshen*, the Court considered whether "originating a marketing campaign in New York in and of itself constitute[s] an actionable deceptive act or practice under the [GBL § 349]" *Id.* The Court concluded that it did not; rather, what mattered was where the consumer was deceived. "The transaction in which the consumer is deceived must occur in New York." *Id.* As a result, the GBL claims of a Florida resident who purchased an insurance policy issued in Florida by Mutual of New York were dismissed.

In this case, the Plaintiff was deceived in Texas, not New York — no matter where Defendant's marketing team decided what to put on the labels of the sweater. As *Goshen* plainly holds, that allegations does not satisfy the territoriality requirement of the GBL's consumer protection laws.

New York courts routinely dismiss cases like this one, in which out-of-state transactions form the basis of a complaint under the GBL, at the pleading stage. *See, e.g. Kaufman v. Sirius XM Radio, Inc.*, 474 Fed. Appx. 5, *6-7 (2nd Cir. 2012); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020); *Horn v. Medical Marijuana, Inc.*, 383 F. Supp. 3d 114, 127-28 (W.D.N.Y. 2019); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 402-03 (S.D.N.Y. 2010). Plaintiff's claims meet with the same fate. As there is no way for Plaintiff to amend her Complaint to assert a claim under GBL §§ 349 and 350, Counts I and II are dismissed with prejudice.

II. Second Claim for Relief: Class Action Claims Asserted Under the Consumer Protection Laws of Various States

Plaintiff paints herself as a potential class representative of two classes — one consisting of purchasers of the Washable Pima sweater in Texas and one consisting of purchasers of this product in nineteen other states (New York, Connecticut, New Hampshire, Indiana, Virginia, Montana, Wyoming, Idaho, Alaska, Vermont, Georgia, Iowa, Minnesota, Delaware, Mississippi, Tennessee, Arkansas, South Carolina, and Utah). (Compl. ¶ 68). She alleges that consumers in those states, too, were misled, under the consumer protections laws of their respective states or New York law, just as she was.

a. *Plaintiff Cannot Sue of Behalf of a Class of Texas Purchasers*

To the extent that the Plaintiff purports to sue on behalf of a class of purchasers in Texas, her claim must also be dismissed.

A Texas class would likely be asserting claims under that state's Deceptive Trade Practices Act (DTPA). It is incontrovertible that Plaintiff has not brought any such claim on her own behalf. Nor could she. As Defendant points out, the DTPA has a statute of limitations of two years. Tex. Bus. & Com. Code Ann. § 17.565. The limitations period starts to run "two years after the date on which the false, misleading, or deceptive act or practice occurred or ... two years after the consumer discovered ... the occurrence of the false, misleading, or deceptive act or practice." Tex. Bus. & Com. Code Ann. § 17.565. Plaintiff purchased the Product on November 9, 2019, and received the results of the TexTest Report on February 11, 2020. (Compl. ¶ 8, 59). At that moment, the statute of limitations began to run. The two-year period for bringing her claim expired on February 11, 2022. This means any claim Plaintiff might have been able to bring was already time barred at the moment she filed this lawsuit, and is certainly time barred today.

**\*6** The Court is aware that many states extended the statutes of limitations applicable to civil actions in 2020, in order to take into account the disruption occasioned by the COVID pandemic. Unfortunately for Plaintiff, Texas is not one of those states. [5]

[5] The parties failed to anticipate and brief this issue, but the Court has done the work for them.

On March 13, 2020, the Supreme Court of Texas issued the First Emergency Order Regarding the COVID-19 State of Disaster, in which it stated that, "All courts in Texas *may* in any case, civil or criminal ... [m]odify or suspend any and all deadlines and procedures ... for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted." (First Emergency Order Regarding the COVID-19 State of Disaster, Misc. Dkt. No. 20-9042) (emphasis added). So, the authority to extend the statute of limitations extends only to a Texas court — certainly not to this Court — and was in any event purely discretionary with the Texas judge before whom an otherwise time-barred matter was pending. Since Miramontes has never filed a claim under the DTPA before a Texas court, there is no basis whatsoever on which she could possibly assert that the statute of limitations on such claim has been tolled or suspended by virtue of the First Emergency Order. This is true even though the Governor of Texas has not yet lifted the COVID "state of disaster." [6]

[6] Texas remains one of the few states that continues under a COVID state of emergency. See, e.g., "Governor Abbott Renews COVID-19 Disaster Declaration in April 2023," Office of the Texas Governor (April 15, 2023) https://gov.texas.gov/news/post/governor-abbott-renews-covid-19-disaster-declaration-in-april-2023

Neither does any order of the Governor of the State of New York render it possible for Plaintiff to plead a claim under the DTPA in this court today. On March 20, 2020 — on which day the statute of limitations on Plaintiff's DTPA claim had already run for 37 days — Governor Cuomo issued Executive Order 202.8. The original order tolled the statute of limitations for filing any action through April 19, 2020. Subsequent Executive Orders extended the toll through November 3, 2020 — a total of 228 days. The latest day on which Plaintiff could have asserted a claim under that statute in a New York court, therefore, was August 22, 2022. Today is May 5. and Plaintiff has made no effort to assert a claim under the Texas DTPA, in this court or anywhere else. She has more than run out of time to do so.

This means Plaintiff cannot assert a viable claim under the Texas DTPA, and so cannot represent a class of Texas consumers suing under that statute.

And of course, Texas consumers are no more able to assert claims concerning their Texas transactions under the GBL than Miramontes herself can.

b. *New York Sub-Class*

To the extent that Plaintiff purports to sue in a representative capacity on behalf of consumers who engaged in transactions in New York, her claim must be dismissed because she is not a member of any such class, as she has no claim under the General Business Law. It has been held that individuals whose purported claims for damages under sections 349 and 350 of the GBL "have been found to be without merit plaintiffs may not, as class representatives, maintain a class action based on

Case 1:22-cv-07962-RA-RWL    Document 26-1    Filed 05/10/23    Page 7 of 14
GLORIA MIRAMONTES, Individually, and On Behalf of All Others..., Slip Copy (2023)
2023 WL 3293424

those sections." *See, e.g. Estruch v. Volkswagenwerk, AG*, 97 A.D. 2d 978 (N.Y. App. Div. 1983).

### c. *Other State Consumer Protection Statutes*

***7** Finally, as Plaintiff has not alleged any facts tending to show that she might have a claim under any other state's consumer protection law arising out of her purchase of a sweater in Texas. she cannot assert a claim on behalf of consumers in those states.

Plaintiff's theory is not well articulated, but it seems to be that she can represent consumers in some 18 other states who purchased a Pima cotton V-neck Ralph Lauren sweater in those states because those consumers were all "deceived" in the same way she was. But Plaintiff has made no effort to explain how she has standing to bring claims under any of the state statutes she invokes — especially since her only asserted consumer protection claim has been dismissed with prejudice. Nor has she made any effort to identify the specific state statutes she alleges RLC has violated or plead any of their elements. She merely "reserve[s] their rights to assert their consumer protection claims" under the states they represent. (Compl. ¶ 83). "Reserving rights" is not the same thing as bringing claims, and for that reason the court dismisses any suggestion that Plaintiff has successfully brought claims under any of the consumer protection statues of the states of Connecticut, New Hampshire, Indiana, Virginia, Montana, Wyoming, Idaho, Alaska, Vermont. Georgia, Iowa, Minnesota, Delaware, Mississippi, Tennessee, Arkansas, South Carolina, or Utah.

Moreover, Plaintiff could not possibly bring a class action under the law of any of those 18 states, since her only transaction took place in Texas and the laws of those states no more protect Texas consumer transactions than does the GBL. It is a general rule that a statute of one state has no extraterritorial effect beyond its borders, and absent specific language in a statute indicating that the legislature intended otherwise, the presumption is that the statute is intended to apply only within the territorial jurisdiction of the state enacting it. 73 Am. Jur. 2d Statutes § 243 (Feb. 2023). The state consumer protection laws invoked by Plaintiff, like those of New York and Texas, are presumed to be territorial in nature. Not a single statute under which Plaintiff "reserves the right to assert consumer protection claims" contains express language indicating that it was intended to apply to transactions that neither took place in the state nor involved a citizen of the state. Indeed, most of those statutes contain language indicating that they are designed to protect the citizens of a particular state from deceptive practices in the state. *See* Conn. Gen. Stat. Ann. §§ 42-110(4)(a), (b), and (g); N.H. Rev. Stat. Ann § 358-A:2; AS 45.50.531; Ga. Code Ann. § 10-1-391(a); Del. Code Ann. Tit. 6, § 2512; Tenn. Code Ann. §§ 47-18-102(2) and (4); S.C. Code Ann. § 39-5-10(b); Utah Code Ann. § 13-11a-1. State courts in some of these states have interpreted state consumer protection statutes to have restricted territorial reach in the absence of express language indicating a legislative intent that they should apply extraterritorially. [7] And other states' courts have explicitly affirmed the general presumption that a statute only applies within the jurisdiction of the state enacting it. [8]

[7] *Johannessohn v. Polaris Industries, Inc.*, 450 F. Supp. 3d 931, 962 (D. Minn. 2020), *aff'd* 9 F. 4th 981 (8th Cir. 2021) ("Given the presumption against the extraterritorial application of Minnesota statutes and the lack of any statutory language allowing such application, the Court concludes that the MCFA may be applied *only* to conduct that occurred in Minnesota.") (emphasis added); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 633-34 (D. Del. 2007) ("This Act [the Delaware Consumer Protection Statute] is limited to actions that take place within the State of Delaware.");

[8] *Phillips v. Consolidated Supply Co.*, 126 Idaho 973, 976 (1995) ("Absent a statute granting extraterritorial rights, '[s]tatutes are intended to apply and be confined in their operation to persons, property and rights which are within the territorial jurisdiction of the law-making power.' ") (citations omitted); *R&G Props, Inc. v. Column Fin., Inc.*, 968 A.2d 286, 299-300 (Vt. 2008) ("[A] statute which uses general words is to be construed as having no extraterritorial effect, unless it clearly indicates a different intention.") (citations omitted). *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 141 (Iowa 2018) ("it is a well-settled presumption that state statutes lack extraterritorial reach unless the legislature clearly expresses otherwise.").

***8** Moreover, like New York, courts in many states have expressly held that only residents of their states can bring consumer fraud class actions on behalf of other state residents. *See, e.g.*, *Connecticut Pipe Trades Health Fund v. Philip Morris, Inc.*, 153 F. Supp. 2d 101, 107 (D. Conn.

Case 1:22-cv-07962-RA-RWL   Document 26-1   Filed 05/10/23   Page 8 of 14
GLORIA MIRAMONTES, Individually, and On Behalf of All Others..., Slip Copy (2023)
2023 WL 3293424

2001); *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.*, 604 P.2d 1113, 1119-20 (Alaska 1980); *In re Lithium Ion Batteries Antitrust Litigation*, 2014 WL 4955377, at * 17 (N. D. Cal., Oct. 2, 2014). In South Carolina, a person may bring a private claim under Section 39-5-20 "individually, but not in a representative capacity," barring Plaintiff from asserting claims under South Carolina law in a representative capacity at all. S.C. Code. Ann. § 39-5-140. *See also Dema v. Tenant Physician Services-Hilton Head, Inc.*, 383 S.C. 115, 122-23 (2009).

For all of these reasons, Plaintiff — who has the burden to plead facts showing that she has standing to bring class representative claims under the consumer fraud statutes of the 18 states identified above — has utterly failed to plead any facts indicating that she may do so. Texas is the only state under whose consumer protection laws Plaintiff could have sued. She chose not to do so at a time when she might have brought such an action; the statute of limitations, extended to its uttermost, bars her from doing so today.

For the above reasons, all of the purported representative and class claims asserted by Plaintiff (or, if not exactly asserted, as to which she "reserves her right" to assert) are dismissed with prejudice.

### III. Breach of Express Warranty, Implied Warranties, and MMWA

Plaintiff's express and implied warranty claims rely on her contention that Defendant labeled and advertised the Product in a manner that warranted to Plaintiff that the sweater was made of exclusively Pima cotton. (Compl. ¶¶ 36, 60) (Counts III, IV, V, and VI). The Complaint alleges Defendant has a duty, as it has held "itself out as having special knowledge and experience in this area" and is a "trusted company known for its high quality products." (*Id.* ¶ 104). Additionally, Plaintiff states she has "provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees." (*Id.* ¶ 96).

Plaintiff does not plead whether New York or Texas law should apply to these claims, (Compl. ¶¶ 87-102), and the parties have not engaged in choice of law analysis. Defendant, in its motion to dismiss, addresses both New York and Texas law with respect to the warranty claims and contends that the result is the same under either state's statute. (Def. Br. at 15-16). Defendant is correct. Under either state's law, Plaintiff's breach of warranty claims must be dismissed.

#### a. *Express Warranty*

When stating a claim for breach of an express warranty in New York, a plaintiff must allege "there was an affirmation of the fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012). To initiate a breach of warranty claim, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a). "The purpose of the notice requirement is not to inform the seller of his own act, but to reveal to him that the buyer chooses to assert the act as a breach and seek a legal remedy therefore." *Tomasino v. Estee Lauder Companies Inc.* 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting *In re Gotham Silver Co.*, 91 F. Supp. 520, 523 (S.D.N.Y. 1950)) (internal alterations omitted). "The notice required to preserve the right to use for damages need only alert the prospective defendant that the transaction was troublesome." *Barton v. Pret A Manger (USA) Ltd.*, 535 F.Supp.3d 225, 245 (S.D.N.Y. 2021) (internal quotations, citations, and alterations omitted).

**\*9** Texas law states that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tex. Bus. & Com. Code § 2.607(c)(1). "This pre-suit notice requirement is a condition precedent to the cause of action and must be pled and proven for the claim to succeed." *Fearrington v. Boston Scientific Corp.*, 410 F. Supp. 3d 794, 806 (S.D. Tex. 2019).

Thus, regardless of whether the court applies New York or Texas law, the result is the same: before suing for breach of express warranty, the plaintiff must provide pre-suit notice to the defendant.

Plaintiff argues that filing the Complaint in this litigation serves as the requisite notice. (Opp. Br. at 10). But the filing of the complaint cannot possibly serve as "pre-suit" notice, because the filing of the complaint does not *precede* the commencement of the lawsuit; it *is* the commencement of the lawsuit. Recognizing this, a number of my colleagues have held that neither a complaint itself, nor a complaint alleging the plaintiff "provided or will provide notice" is sufficient to satisfy the pre-suit notice requirement. *Campbell v. Whole Foods Market Group, Inc.*, 516 F. Supp. 3d 370,

391 (S.D.N.Y. 2021) (finding the pre-suit notice requirement was unfulfilled when the plaintiff asserted in its Complaint that "Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees."). *See also Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (finding that filing a complaint was insufficient to satisfy the notice requirement); *Quinn v. Walgreens Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing breach of warranty claims when plaintiff failed to allege any notice); *Colella*, 348 F. Supp. 3d at 143-44 (same). *C.f. Suarez v. California Natural Living, Inc.*, 2019 WL 1046662 (finding the requisite pre-suit notice was satisfied when the plaintiff alleged sending a "Pre-Suit Notice letter" before the complaint was filed.). For this reason, the breach of express warranty claim, whether under New York or Texas law, must be dismissed.

"[T]he sufficiency and timeliness of the notice is generally a question or the jury." *Hubbard v. General Motors Corp.*, 1996 WL 274018, at *4 (S.D.N.Y. 1996). However, "courts have found some delays unreasonable as a matter of law." *Atronic Intern., GmbH v. SAI Semispecialists of America, Inc.*, 2006 WL 2654827, at *9 (E.D.N.Y. 2006) (collecting cases where courts found an unreasonable delay after 16 months or less).

Here, it is far too late for Plaintiff to cure her error, because her delay of over three years in giving the requisite notice is per se unreasonable. While, "In some cases it might be appropriate to provide the plaintiff an opportunity to replead where, even if notice is not alleged in the complaint, there is evidence that some form of notice may have occurred," that is not the case here. *Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 261 (E.D.N.Y. 2014). New York law requires that "the buyer must *within a reasonable time after he discovers or should have discovered any breach* notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a) (emphasis added). "The notice requirement applies to consumer fraud actions." *Colpitts*, 527 F. Supp. 3d at 589. "Failure to notify the seller of the breach, thereby allowing the seller and opportunity to cure, bars recovery on the basis of breach of warranty." *McKay v. Nnovartis Pharmaceuticals Corp.*, 934 F. Supp. 2d 898, 912 (W.D.T.X. 2013) (quoting *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189 (Tex. App.—Dallas 1996, no pet.)).

 *10  Plaintiff has not pleaded any facts tending to show that she put Defendant on notice of her breach of warranty claim under either New York or Texas law within a "reasonable time" after she learned that she discovered the breach in February of 2020. Nor has she pleaded any circumstances that would justify the delay. In *Tomasino*, for example, the plaintiff learned about the defect that formed the basis of her lawsuit in 2010, but allowed "two to three years ... to pass [before giving pre-suit notice] ... constitut[ing] an unreasonable delay." *Id*. It did not matter that the plaintiff filed her Complaint within the four-year statute of limitations applicable to breach of express warranty claims under the U.C.C; the phrase "reasonable time after he discovers or should have discovered any breach" is not co-extensive with the statute of limitations applicable to breach of warranty claims. She was, therefore, "barred from any remedy" for breach of warranty.

Here, if Plaintiff were to give notice today of the alleged defect in her sweater and then re-file her breach of express warranty claim, that claim would be dismissed — notwithstanding the fact that it was brought within the four-year statute of limitations applicable to such claims — because she failed to give pre-suit notice within a reasonable time after learning of the breach in February 2020. Plaintiff is thus "barred from any remedy." *Tomasino*, 44 F. Supp. 3d at 260.

Finally, Plaintiff also asserts that at least New York law does not require pre-filing notice of breach of warranty claims in all cases. (Opp. Br. at 10-11). Miramontes is correct that "there is a 'line of New York cases suggesting that the notice requirement does not apply to retail sales.' " *Gordon v. Target Corp.*, No. 20-cv-9589, 2022 WL 836773, at *15 and n.7 (S.D.N.Y. Mar. 18, 2022) (citation omitted). However, "the exception to the notice requirement for retail consumers does not apply where, as here, a plaintiff alleges only economic injury." *Id. See also Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 589 (S.D.N.Y. 2021). "Although a minority of New York State cases suggest an exception to the notice requirement in retail sales ... the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 144 (E.D.N.Y. 2018).

Here, Plaintiff alleges only economic injury, in the form of having paid a price premium. She alleges no physical injury resulting from her purchase of the sweater. Therefore, she does not fall within the exception to the pre-suit notice requirement.

Plaintiff's breach of express warranty claim (Count III) is, therefore, dismissed with prejudice.

b. *Implied Warranties*

Plaintiff also alleges violations of the implied warranties of merchantability and fitness for a particular purpose, in Count IV and Count V. Both allegations fail, whether under New York or Texas law.[9]

[9]   Defendants briefed this issue under the law of both states; Plaintiff briefed only New York law.

In New York, to assert a claim for a breach of the implied warranty of merchantability, a plaintiff must show "the product in question is not fit for the ordinary purpose for which it is to be used." *Szymczak v. Nissan N. Am. Inc.*, No. 10-CV-7493, 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011). The ordinary purpose of a sweater is to be worn as an article of clothing. Plaintiff does not allege any facts tending to show that the sweater was not wearable or otherwise not fit for the intended purpose of a sweater. Indeed, Plaintiff could not possibly know if the sweater was not fit for its ordinary purpose, since she concedes in her Complaint that she never wore it. (Compl. ¶ 35). Not can she allege that it was not washable, because she never tried to wash it. (*Id.*) The only inference one can draw from the facts alleged is that Plaintiff never intended to use the sweater for its intended purpose — she bought the sweater in the hope of using it to bring a lawsuit against Defendant — which makes her assertion of a claim for breach of implied warranty of merchantability for the sweater's ordinary purpose not only implausible, but presumptively sanctionable.

**\*11**  The same is true of her claim for breach of the implied warranty of fitness for a particular purpose. The elements of such a claim are: "[1] the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required; and [2] the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and [3] that the buyer did in fact rely on that skill." *Marache v. Akzo Nobel Coatings, Inc.*, No. 08-cv-1049(SHS)(AJP), 2010 WL 908467 at *17 (S.D.N.Y. Mar. 12, 2010) (citing *Saratoga Spa & Bath v. Beeche Sys. Corp.*, 656 N.Y.S. 2d 787, 790 (App. Div. 1997).

Plaintiff has not alleged any facts tending to show that Defendant had reason to know of the "particular purpose" for which Plaintiff bought the sweater — which was to obtain evidence to support a lawsuit against RLC. Defendant had no reason to anticipate the Product would be used for any purpose other than as an article of clothing. Plaintiff admits to not using the Product for its *intended* purpose, and there was no reason for Defendant to suspect that she or anyone else would buy a sweater for any other purpose.

Nor are any facts alleged tending to show that Plaintiff was relying on RLC's skill and judgment to select a furnish her goods suitable for her undisclosed purpose (i.e., for the purpose of obtaining evidence so that she could sue Ralph Lauren).

Finally, the U.C.C.'s "notice requirement also applies to claims for breach of implied warranty." *Campbell*, 516 F. Supp. 3d at 392. This provides yet another reason to dismiss Miramontes' breach of implied warranty claims.

Counts IV and V are dismissed with prejudice.

c. *Magnuson Moss Warranty Act*

Plaintiff also brings claims under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* (Count VI). Under 15 U.S.C. § 2310(d)(1), "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." The term "written warranty" is defined as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specific level of performance over a specified period of time." 15 U.S.C. § 2301(6). While the words "Pima cotton" relate to "the nature of the material" used in the sweater Plaintiff purchased, those words do not suggest the product is defect-free or will meet some specific level of performance over a specified period of time. Therefore, Plaintiff fails to state a claim under the Magnuson Moss Warranty Act.

Additionally, the term "implied warranty" is defined as "an implied warranty arising under State law ... in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). As shown previously, both implied warranty claims alleged here fail as a matter of New York law. Therefore, Plaintiff has no viable claim under the Magnuson Moss Warranty Act for this reason as well.

As no amendment could possibly cure these defects, Count VI — Plaintiff's only federal claim — is dismissed with prejudice.

IV. Various Tort and Contract Claims

a. *Negligent Misrepresentation*

Defendant proposes that Texas law should apply to Plaintiff's claim of negligent misrepresentation. (Def. Br. at 9). Defendant argues there is a true conflict between Texas and New York law on this point, and that choice of law analysis dictates the application of Texas law to this claim. (Def. Br. at 9-10). Without addressing a conflict of law analysis, Plaintiff asserts negligent misrepresentation claims should apply the law of "the place where the fraud was centered and where misrepresentations were made." (Opp. Br. at 14) (quoting *AHW Inv. P'ship v. Citigroup Inc.*, 980 F. Supp. 2d 510, 523 (S.D.N.Y. 2013)). Of course, Plaintiff makes the fundamental error of concluding that the place where the misrepresentation was made is New York; in fact, any representation made to Plaintiff was made in Texas. It would thus seem that Defendant is correct and Texas law should apply.

*12 But in the end, it does not matter, because Plaintiff loses under the law of either state.

"The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved" when performing a choice of law analysis in New York. *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 222 (1993). "An actual conflict is present '[w]here the applicable law from each jurisdiction provides different substantive rules.' " *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) (quoting *Curley v. AMR Corp.*, 153 F. 3d 5, 12 (2nd Cir. 1998)). If there is an actual conflict present, then "the Court must determine which jurisdiction has the greatest interest in this litigation." *Id.* at 148.

In New York, to make out a claim for negligent misrepresentation, the plaintiff must allege the following elements: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Inv'rs, Inc. v. Trafalgar Powers Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). Texas, by contrast, does not require any special relationship between the parties for a plaintiff to state a viable claim for negligent misrepresentation. *Miller v. LandAmerica Lawyers Title of El Paso*, 362 S.W. 3d 842, 845 (Tex. App. 2012). There is, therefore, a "true conflict" between the laws of the two states.

When a true conflict is found, New York applies the law of the jurisdiction with the greater interest in the litigation. *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. at 148. "Two separate inquires are thereby required to determine the greater interests: (1) what are the significant contacts and in which jurisdiction are they located; and (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Properties Corp.*, 84 N. Y. 2d 519 (1994). The significant contacts inquiry points to Texas, where Plaintiff saw the tags and reached her understanding that, whatever RLC said, Defendant meant the sweater she was purchasing was 100% Pima cotton. (*See* Compl. ¶ 59). And as consumer protection statutes are conduct-regulating statutes, rather than loss allocation statutes, the rule is clear: "Where the parties are domiciled in different states, the locus of the tort will almost always be determinative in a cases involving conduct-regulating laws." *Krock v. Lipsay*, 97 F. 3d 640 (2nd Cir. 1996). As has been discussed extensively above, the representation (the tort) was committed in Texas. Therefore, Texas law applies.

Plaintiff's negligent misrepresentation claim fails under Texas law because it, like her DPTA claim, is time barred. The Fifth Circuit has "interpreted the Texas authorities to apply a two-year statute of limitations to negligent misrepresentations claims." *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas*, 20 F. 3d 1362, 1371 (5th Cir. 1994). Despite the discretionary statute of limitations extension authorized by Texas Supreme Court — discussed *Supra* p. 11-12 — Plaintiff's negligent misrepresentation claim is time-barred in Texas, and must be dismissed with prejudice.

*13 Even if New York law applies to her negligent misrepresentation claim, Plaintiff loses. That is because Plaintiff alleges no facts tending to show that any "special relationship" existed between her and RLC, as required in New York to state a claim for negligent misrepresentation.

"[A] special relationship exists if the defendant 'possess[es] unique or special expertise' or is 'in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Sarr v. BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR), 2020 WL 729883, at *6 (E.D.N.Y. Feb. 13, 2020) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011)). Plaintiff alleges that, "Defendant had a duty to truthfully represent the Product" and that "[t]his duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products." (Compl. ¶¶ 103-04). Plaintiff additionally asserts that "contractual privity, is sufficient to establish a special relationship, which exists where Plaintiff purchased the Product at the Polo Factor Store, and not from a third party." (Opp. Br. at 14) (internal citations omitted).

However, it is well settled that "[a] 'special relationship' requires 'a closer degree of trust between the parties than that of the ordinary buyer and seller ...' " (Dk. No. 15 ("Reply Br.") at 8) (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir.2008)). Moreover, a bare and conclusory assertion that a party has special expertise in an area of production or sale of a product is not sufficient to plead a special relationship. *See Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166-67 (S.D.N.Y. 2021) (dismissing a negligent misrepresentation claim because no special relationship was alleged when Plaintiff merely alleged, in a conclusory manner, that Defendant "held itself out as having special knowledge and expertise in product, service and/or sale of the product type").

Finally, the negligent misrepresentation claim must be dismissed because both Texas and New York law provide that, "A plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available." *Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*, 410 F.Supp.3d 662, 687 (S.D.N.Y.2019) (citations omitted); *see also Middaugh v. InterBank*, 528 F.Supp.3d 509, 555-56 (N.D.Tex.2021). Defendant alleges Plaintiff's tort claims are "based on the same alleged misrepresentation as her contractual breach of warranty claims (her assertion that RLC warranted that the sweater was 'made entirely' of Pima Cotton) and seeks the same recovery (monetary damages in an unspecific amount to compensate for her the difference between the amount she paid for the sweater and the actual value of the Product absent the alleged misrepresentation)." (Def. Br. at 20). New York employs the economic loss rule "to prevent the recovery of damages that are inappropriate because they actually lie in the nature of a breach of contract as opposed to tort." *Hydro Inv'rs, Inc. v. Trafalgar Powers Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). The inquiry of whether the economic loss doctrine applies to the claim of negligent misrepresentation, if New York law controls as Plaintiff argues, turns to the nature of the claims.

*14 New York's Third Department has held that "where only economic loss with respect to a product itself is alleged and the underlying transaction is a *sale of goods*, the purchaser is limited to its contractual remedies and may not maintain the traditional tort cause of action of negligence or strict products liability." *AKV Auto Transport, Inc. v. Syosset Truck Sales, Inc.*, 24 A.D. 3d 833, 834-35 (3rd Dep't 2005) (emphasis added). In *AKV Auto Transport*, the defendant had disclaimed implied warranties and made no express warranty to the plaintiff. *Id.* On review, the Third Department determined the lower court erred by failing to dismiss plaintiff's remaining tort claims, as they were barred by the economic loss rule even when the contracts claims were not available. *Id.*

The Second Circuit has dismissed tort liability claims under the economic loss doctrine, even when actions for breach of contract and warranty were also dismissed. *Suffolk County v. Long Island Lighting Co.*, 728 F. 2d 52, 64 (2nd Cir. 1984). In *Suffolk County*, the parties were lacking the requisite privity for plaintiff to bring its contracts claims. *Id.* But, as plaintiff only alleged economic loss for its tort claims, they too failed. *Id.* In the case at bar, because Plaintiff economic loss is the basis of her contracts claims and tort claims, the tort claims are barred.

For the foregoing reasons, Plaintiff's negligent misrepresentation claim, Count VII, is dismissed with prejudice.

b. *Fraud*

The economic loss doctrine bars the fraud claim for the same reason it bars the negligent misrepresentation claim — both tort claims allege the same economic injury as the contract claims. "A plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available." *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*, 172 F. Supp. 3d 700, 718-19 (S.D.N.Y. 2016). For that

reason alone, the fraud claim, Count VIII, must be dismissed with prejudice, as it cannot be repleaded to cure the defect.

Additionally, Plaintiff's fraud claim must be dismissed because the Complaint fails to allege facts showing Defendant intended to, or did, committed fraud.

To meet the heightened pleading requirements of Rule 9(b) for a fraud claim in New York, a plaintiff must plead facts showing that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damages as a result of such reliance." *CBI Cap. LLC v. Mullen*, No. 19 CIV. 5219, 2020 WL 4016018, at *7 (S.D.N.Y. Jul. 16, 2020). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiff asserts she has adequately plead these elements. She states:

> The "who" is "Ralph Lauren Corporation." Compl. ¶ 67. The "what" are its "v-neck sweaters" identified as "Pima cotton" and "crafted with Pima cotton." Compl. ¶¶ 1-2. The "where" and "when" was at "the Polo Factory Store, 7051 S Desert Blvd El Paso, TX 79932, on November 9, 2019." Compl. ¶ 59. The "how" was "contain[ing] a significant amount of less expensive shorter cotton fibers and cotton byproduct fibers," while representing that the Product contained "only Pima cotton." Compl. ¶¶ 37, 60.

Opp. Br. at 15.

Assuming *arguendo* that this satisfied at least some of her pleading burden, Plaintiff fails to allege facts that Defendant intended to defraud her, or that it actually defrauded Plaintiff. All Plaintiff alleges, with respect to Defendant's intent, is that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Compl. ¶ 113). But merely stating that a defendant's intent to defraud a plaintiff can be deduced from a defendant's alleged misrepresentations is not enough to satisfy the pleadings requirements of Rule 9(b). *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021), is dispositive of the issue.

*15 In *Colpitts*, the plaintiff asserted "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate." The court rejected this allegation as the foundation of a fraud claim, stating, "Such conclusory allegations fall short of the Rule 9(b) standard." *Id.* (collecting cases where conclusory allegations evincing fraudulent intent do not satisfy the Rule 9(b) standard).

The court recognized that "conclusory assertions of intent may support a fraud claim if supported by facts giving rise to a strong inference of fraudulent intent." *Id.* (internal quotations and citations omitted). For example, "alleging that the defendant sponsored a study, the results of which refuted the claims made on defendant's labels," satisfied the fraudulent intent requirement in *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 73-74 (E.D.N.Y. 2017). *Id.* But that is not the case here, where Plaintiff has alleged no facts giving rise to any inference, let alone a strong inference, of an intent to defraud customers into thinking that its sweater was made of 100% Pima cotton. The Product is perfectly consistent with RLC's affirmative representations. Per Plaintiff's own expert, the sweater contains Pima cotton — quite a bit of it — and she alleges no facts tending to show that it was not washable, lightweight or soft to the touch. (*See* Compl.)

Plaintiff's "understanding" that the product contained "only Pima cotton" was precisely that — her understanding, her interpretation. (Compl. ¶ 60). But fraud is based on representations. and Plaintiff concedes that "Defendant is technically correct that the Complaint not point to any *representation* [ ] that the product contained 100% Pima cotton' or that is 'made entirely' from this variety." (Opp. Br. at 2) (emphasis added). Ergo, Plaintiff concedes that Defendant made no materially false representation — or any false representation at all.

Of course, fraud may be committed by omission. *Schlaifer Nace & Co. v. Estate of Warhol*. 119 F. 3d 91, 98 (2nd Cir. 1997) (explaining the five elements of fraud in New York). Viewing the facts most favorably (one might say, charitably) to Plaintiff, she contends that Defendant committed fraud by omitting to state facts that were necessary to make the statement that it did make — "WASHABLE PIMA COTTON" — accurate. However, that is not a plausible allegation. Plaintiff's own expert — whose conclusion she puts in the text of her Complaint (Compl. ¶¶ 16-21) — opines that as much as 62% of the cotton fibers in the Product were Pima cotton; her lawyer's speculation that the expert's opinion (which is specifically pleaded) was itself implausible does not alter the fact that her pleading alleges that an expert witness would testify that the sweater contained Pima cotton. And

Plaintiff pleads no fact tending to show that the sweater was not washable — or that it was not "knit in a fine gauge stich for lightweight comfort" or that it did not have "an exquisitely soft hand," as alleged on the hang tag.

Count VIII is dismissed with prejudice.

### c. *Unjust Enrichment*

"The essential inquiry in an action for unjust enrichment ... is whether it is against equity and good conscience to permit the defendant to retrain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). However, "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777 (2012). Because this claim is based on the same allegations as Plaintiff's other tort and contract claims, it cannot be maintained. The claim for unjust enrichment, Count IX, is dismissed with prejudice.

### CONCLUSION

*16 For the reasons discussed above, the motion to dismiss is **GRANTED,** and the Complaint is dismissed with prejudice and with costs to Defendant.

This constitutes the decision and order of the court. It is a written opinion. The Clerk of Court is respectfully directed to terminate the motions at Docket Number 11.

BY ECF TO ALL COUNSEL

**All Citations**

Slip Copy, 2023 WL 3293424

---

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.