UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KANDUS DAKUS,

                Plaintiff,

        v.                            22-cv-7962 (RA)

KONINKLIJKE LUCHTVAART          OPINION & ORDER
MAATSCHAPPIJ, N.V.,

                Defendant.

---

RONNIE ABRAMS, United States District Judge:

      Plaintiff Kandus Dakus brings this putative class action against Defendant Dutch airline Koninklijke Luchtvaart Maatschappij, N.V. ("KLM") on behalf of consumers in Texas, New York, and various other states who purchased KLM airline tickets. First Am. Compl. ("FAC" or the "Complaint") ¶ 57. In sum and substance, she alleges that KLM entices consumers to purchase its airline tickets with misleading promises of its commitment to adhere to the carbon emissions targets defined by the historic Paris Climate Agreement, *id.* ¶ 16, and that she "relied on" KLM's statements "about its efforts to limit the effects of climate change when she purchased her flight," *id.* ¶ 54. She asserts causes of action for alleged violations of New York General Business Law §§ 349 and 350, other states' similar consumer fraud acts, as well as common law claims for breach of contract and unjust enrichment. FAC ¶¶ 64–67.

      Now before the Court is Defendant KLM's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support of its 12(b)(1) motion, KLM raises a factual challenge to Plaintiff's jurisdictional allegations. Specifically, KLM has submitted materials demonstrating that Plaintiff used a third-party travel booking service, did not herself choose KLM as her airline when she purchased the flight, and thus could not have relied upon any of KLM's representations

related to its climate change initiatives, as her Complaint alleges. *See* Dkt. 21, Exs. 1–4. Because Plaintiff has failed to meet her burden of establishing jurisdictional facts supporting her allegations that she suffered an injury-in-fact, the Court concludes that she does not have Article III standing to bring this action. Accordingly, and for the additional reasons that follow, Defendant's motion to dismiss is granted. In addition, in light of the direct inconsistencies between what was alleged in the Complaint and the additional facts that Plaintiff has now included in a supplemental declaration, Plaintiff's counsel shall show cause why sanctions pursuant to Federal Rule of Civil Procedure 11(b)(3) should not be levied against him.

## BACKGROUND

Beginning in 2019, Defendant KLM introduced its "Fly Responsibly" initiative, advertising itself as an airline working to become more sustainable. The initiative noted that KLM "recognize[s] the urgent need to limit global warming, and [] ha[s] committed to the targets defined in the Paris Climate Agreement." FAC ¶ 16. The initiative was "based on the Science Based Targets Initiative to limit global warming to less than 1.5 °C," and, among other things, that KLM "committed to reduce emissions by 12% in 2030 compared to 2019." *Id*. ¶¶ 17–18. As part of the initiative, KLM further offered customers the opportunity to "offset" and "reduce" the environmental impact of flying "through its CO2ZERO program." *Id*. ¶ 20. KLM advertised its participation in the Fly Responsibly initiative directly to consumers, as pictured below:



*Id*. ¶ 16.

In the summer of 2022, Plaintiff Kandas Dakus, a citizen of Corpus Christi, Texas, flew from George Bush International Airport in Houston to Europe on a KLM-operated flight. *Id*. ¶ 53. Ms. Dakus claims to be "concerned about effects of climate change" and "realizes that flying requires emission of carbon dioxide;" accordingly, she alleges that she "chose KLM in part because of its commitments and actions to limit the effects of climate change." *Id*. ¶¶ 43, 51–52. In key part, the Complaint alleges that she "relied on" KLM's statements "about its efforts to limit the effects of climate change when she purchased her flight," that she "chose between KLM and other airlines which did not tout their environmental attributes," and that she "paid more for her flight on KLM than she would have paid absent its false and misleading statements and omissions." *Id*. ¶¶ 54–56. According to the Complaint, Plaintiff was misled by KLM's Fly Responsibly initiative, the airline's carbon offsetting is insufficient to meet its stated goals, and KLM has generally "not kept its promise[s]" regarding its environmental goals. *Id*. ¶¶ 22–34.

In support of its 12(b)(1) motion to dismiss now before the Court, Defendant KLM has brought a factual challenge to Plaintiff's jurisdictional allegations. In support, KLM has submitted: (1) a Declaration of KLM's "Senior Vice President North America" stating that a third-party organization, the American Council for INTL Studies ("ACIS"), booked Plaintiff's airline ticket, *see* Dkt. 21, Ex. 1 ¶ 5; (2) said organization's Terms and Conditions, which indicate that it only provides airline information to customers *after* payment has been remitted, *id*., Ex. 3; and (3) evidence of a GoFundMe page created by Plaintiff soliciting donations to fund her trip, *id*., Ex. 4. Defendant argues these documents show that Plaintiff did not herself choose KLM as her airline, that she did not know KLM had been selected before she paid for her flight, and that she may not have paid for her ticket at all. *See* Mot. 10. Defendant therefore contends that Plaintiff lacks

3

Article III standing because "there is no injury and no causal connection." *See* Mot. 9–11.

Plaintiff's opposition to the motion did not address these factual submissions directly, instead relying on the familiar standard for 12(b)(6) purposes that a court "must accept all well-pleaded allegations as true." Opp. at 2. Recognizing that Plaintiff's opposition brief had failed to address Defendant's factual challenge, the Court gave Plaintiff additional leave, by order dated July 13, 2023, to address the concern that constitutional standing was lacking. *See* Dkt. 28. Specifically, the Court ordered, "[i]n light of Defendant's submissions," that "Plaintiff shall file any additional materials, or any additional argument, to rebut the factual challenge to jurisdiction no later than July 26, 2023." *Id*.

Plaintiff, in turn, filed a two-page supplemental declaration which alleged, in relevant part, that she "had the ability to cancel [her] trip for any reason and receive a 100% cash refund" from ACIS." Dakus Decl., July 25, 2023, Dkt. 29 at ¶ 9. Although directly inconsistent with the allegations in the Complaint, she further alleges that, although she "was not initially aware that the flights arranged by ACIS would be with KLM," she was "informed of this prior to [her] travel." *Id*. ¶ 10. Upon learning that she was traveling with KLM, she alleges she further "learned about its promises and commitments to limit its contributions to climate change," and "relied, in part, on KLM's promise and commitments to limit its contributions to climate change, in *deciding not to cancel* [her] trip." *Id*. ¶¶ 11, 13 (emphasis added). Defendant KLM thereafter filed a letter outlining the inconsistent allegations between the Complaint and Plaintiff's supplemental declaration, *see* Dkt. 32 at 2, and arguing that no authority supports the notion that "Article III standing can be predicated on a purported post-contractual decision not to use trip cancellation insurance," *id*. at 4.

4

## LEGAL STANDARD

"[S]tanding is the threshold question in every federal case, determining the power of the court to entertain the suit." *In re Gucci*, 126 F.3d 380, 387–88 (2d Cir. 1997). "If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008). Accordingly, where, as here, a defendant moves to dismiss on both 12(b)(1) and 12(b)(6) grounds, "[g]enerally, a court must determine whether it has subject matter jurisdiction before proceeding to evaluate the merits of a plaintiff's cause of action." *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *2 (S.D.N.Y. Jan. 19, 2018); *see also Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) ("Article III standing … ordinarily should be determined before reaching the merits . . . ."). If a court concludes that a plaintiff lacks Article III standing, it must grant dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See Corlandt St. Recovery Corp. v. Hellas Telecomms. S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

A 12(b)(1) challenge to jurisdiction can be either facial or factual. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). Whereas the more familiar facial attack "challenges the sufficiency of the jurisdictional facts alleged, not the facts themselves," a factual attack "challenge[s] whether sufficient facts exist for the court to determine that it has jurisdiction to hear the plaintiff['s] claims." *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (cleaned up). On a factual challenge, a defendant may "proffer[] evidence beyond the [p]leading," and, if the defendant's evidence "'reveal[s] the existence of factual problems' in the assertion of jurisdiction[,]" then the plaintiff must "come forward with evidence of their own to controvert that presented by the defendant." *Carter*, 822 F.3d at 57. In such a case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegation; rather, the burden is

5

on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Tasini*, 184 F. Supp. 2d at 353 (cleaned up); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."); *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits."). An evaluating court "should not merely rely on the allegations of the Complaint or draw inferences from it that are favorable to [p]laintiffs" but should instead "consider the evidence presented by the parties on the issue of standing, to determine whether that evidence is sufficient to satisfy [p]laintiffs' burden of proof." *Access 4 All, Inc. v. G&T Consulting Co., LLC*, 2008 WL 851918, at *6 (S.D.N.Y. Mar. 28, 2008). The plaintiff, as the party asserting jurisdiction, must "prov[e] by a preponderance of the evidence that [jurisdiction] exists." *Tandon*, 752 F.3d at 243.

## DISCUSSION

Article III standing contains three elements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury-in-fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* To be concrete, an injury must be "physical, monetary, or [a] cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021); to be particularized, an injury must "affect the plaintiff in a personal and individual way," *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). Second, a causal connection must exist between the injury and the defendant's conduct—that is, the injury must be "fairly…trace[able] to the challenged action

of the defendant." *Lujan*, 504 U.S. at 560. "As a rule, causation is shown if the defendant['s] actions had a 'determinative or coercive effect' on the action that produced the injury." *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Third, the injury must be able to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560. In the putative class action context, as here, "the relevant legal entity for determining whether Article III standing is proper is the named plaintiff(s), not the proposed class." *Catalano v. BMW of N. Am., LLC*, F. Supp. 3d, 2016 WL 844832, at *8 (S.D.N.Y. Mar. 1, 2016).

Plaintiff initially put forward two related theories of injury to satisfy the first element for Article III standing: that she would not have purchased her airline ticket absent Defendant KLM's alleged misrepresentations, and/or that she would not have paid as much for it absent said misrepresentations. As a legal matter, these theories fit well with prior decisions in this District, which have held that "[a]n allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing." *Richardson v. Edgewell Pers. Care, LLC*, 2023 WL 1109646, at *3 (S.D.N.Y. Jan. 30, 2023); *see also Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 340 (S.D.N.Y. 2021) ("[W]hen, as here, 'Plaintiffs contend that class members paid more for [a service] than they otherwise would have paid, or bought it when they otherwise would not have done so,' they have suffered an Article III injury in fact."). And the Complaint alleges a causal connection to Defendant's challenged conduct by claiming she "relied on" Defendant's representations when making these choices. FAC ¶¶ 54–56; *see Kraus v. Snow Teeth Whitening LLC*, 2022 WL 4642170, at *5 (E.D.N.Y. Sept. 15, 2022), *adopted by* 2022 WL 4662819 (E.D.N.Y. Sept. 30, 2022) ("In false advertising cases, the only way a plaintiff can show that he was injured as a result of the defendant's representations is to prove that he saw and relied on the statements at issue."). Those allegations, however, appear

not to be true.

### I. Plaintiff's Theory of Injury Does Not Withstand Defendant's Factual Challenge

Plaintiff's theory of constitutional standing falls apart once the Court considers Defendant's factual challenge to the allegations which form the basis of Plaintiff's alleged injury. That is, the Complaint's standing allegations are so contradicted by Defendant's proffered evidence that the factual challenge is dispositive for purposes of the present motion.

Specifically, Eric Caron, KLM's Senior Vice President for North America, affirms that, according to KLM's records, a third-party organization called the American Council for International Studies ("ACIS") booked a flight with KLM "on Ms. Dakus's behalf." *Id*., Ex. 1 ¶¶ 2, 5. Plaintiff's GoFundMe page, in turn, verifies that she was traveling as a chaperone for a group educational trip "through ACIS." *Id*., Ex. 4. at 2. And, notably, according to the ACIS Terms and Conditions, upon which Defendant relies, ACIS only provides airline information *after* payment has been rendered. *Id*., Ex. 3 at 3 ("Airline eticket information will be sent only if full payment and the signed release from all participants has been received by ACIS."). Put differently, at the time Plaintiff's airline ticket was purchased, she could not possibly have known which airline ACIS would select for her travel—and she could not possibly have "relied on" any representations made by that (as-yet undetermined) airline in making her purchase. Defendant's evidence thus establishes that Plaintiff did not know the airline ACIS would choose at the time of the purchase, as her ticket was booked by ACIS directly, *see id*., Ex. 1 ¶ 5—a fact which Plaintiff does not contradict in her supplemental declaration, *see* Dakus Decl., July 25, 2023, Dkt. 29.

This evidence plainly "'reveal[s] the existence of factual problems' in the assertion of jurisdiction," *Carter*, 822 F.3d at 57, as it directly contradicts Plaintiff's allegations that she "chose KLM over other airlines," that she "relied on" KLM's statements when she purchased her flight,

8

and that she "paid more for her flight on KLM than she would have paid absent its false and misleading statements and omissions," FAC ¶¶ 54–56. Rather, the evidence demonstrates that ACIS—and not Plaintiff—selected KLM based on a group travel contract it had with the airline, and that Plaintiff paid for her travel, via ACIS, without ever knowing the airline with which she would ultimately be traveling. Those facts having been established, Plaintiff's Article III standing theory unravels, as she is unable to satisfy the injury prong. *See Kraus v. Snow Teeth Whitening LLC,* 2022 U.S. Dist. LEXIS 167176*, \*15* (finding no standing where plaintiff "did not see or rely on any of the advertisements before purchasing the [product]"); *see also TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, 2006 WL 2463537 (S.D.N.Y. Aug. 23, 2006) (no standing where plaintiff did not directly rely on any misrepresentations by defendant).

In response, Plaintiff's opposition brief did not "come forward with evidence of [her] own to controvert that presented by the defendant." *Carter*, 882 F.3d at 57. Rather, the opposition ignored Defendant's standing argument entirely, appearing only to address the 12(b)(6) motion. *See* Opp. at 2. What limited discussion Plaintiff did include in her opposition related to Defendant's extrinsic evidence (notably not in the context of Article III standing) only asserting that the evidence is "without merit."[1] But her opposition did not present any evidence of her own to refute—or even deny—Defendant's allegations undermining her theory of injury. Instead, she argued that "any weighing of evidence is inappropriate on a motion to dismiss" and suggests that Defendant's extrinsic evidence is "[im]properly before this Court." Opp. at 3. These arguments

---

[1] Plaintiff states that Defendant's evidence that ACIS purchased her ticket is "without merit as it offers no evidence about whether this money was paid by her to KLM." Pl. Reply. Br. 4. What matters here, however, is not whether Plaintiff paid the money directly to KLM or through a third party, but whether she made that purchase in reliance on its representations. Plaintiff also claims that "Defendant offers no facts to support" its contention that she may not have known which airline she was flying until she paid for her trip. *Id.* But Defendant does offer facts to support its contention: namely, that KLM's records indicate ACIS purchased her ticket, along with ACIS Terms and Conditions stating its payment policies, pursuant to which ACIS only identifies the chosen airline after payment has been remitted.

9

are unavailing. It is well-established that, on a 12(b)(1) factual challenge, the court may "decide issues of fact by reference to evidence outside the pleadings…." *Tandon*, 752 F.3d at 243 (citation omitted); *see also, e.g., APWU*, 343 F.3d at 627 (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999) ("Where a Defendant provides evidence that controverts material factual allegations in the complaint, the Court could, and should, make a factual determination as to the standing related allegations."); *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings…."); *Tasini*, 184 F. Supp. 2d at 354 ("Since a *factual* jurisdictional challenge is involved, the court is permitted to refer to evidence extrinsic to the pleadings.") (emphasis in original).

Moreover, the allegations Plaintiff now includes in her supplemental declaration are—troublingly—directly contradictory to many allegations contained in the Complaint, and similarly fail to meaningfully rebut Defendant's factual challenge to defeat standing. Faced with Defendant's submissions, Plaintiff now contends that she "was *not* initially aware that the flights arranged by ASCIS would be with KLM," *id*. ¶ 10 (emphasis added), even though her Complaint plainly alleges that "Plaintiff *chose between* KLM and other airlines which did not tout their environmental attributes" in arranging her travel, FAC ¶ 55 (emphasis added). So too, Plaintiff now asserts that only "upon being informed" that her travel would be with KLM did she "learn[] about its promises and commitments to limit its contributions to climate change," Dakus Decl., Dkt. 29 at ¶¶ 10–11, although her Complaint alleges that "Plaintiff *saw and relied on* KLM's voluntary representations with respect to limiting climate change" in making her purchase in the first place, FAC ¶ 65 (emphasis added). Finally, although Plaintiff now alleges that she "relied, in

10

part, on KLM's promises and commitments to limit its contributions, in *deciding not to cancel [her] trip*," Dakus Decl., Dkt. 29 at ¶ 13 (emphasis added), her Complaint alleges that she "relied on the above-identified words, promises, commitments, plans, and pictures by KLM about its efforts to limit the effects of climate change *when she purchased her flight*," FAC ¶ 13 (emphasis added).

The Second Circuit has held that "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *see also Wright v. Erns & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (recognizing that a party may not amend its complaint through statements made in opposition to a motion to dismiss). "Accordingly," the Circuit has found that a district court "properly disregard[s]" a plaintiff's affidavit which "seeks to controvert its own pleading." *Bellefonte*, 757 F.2d at 528–29. Here, although Plaintiff's sparse supplemental declaration contains only a handful of allegations in all, each of them are directly contradictory to—and therefore incompatible with—the allegations contained in her Complaint. In any event, even with her supplemental declaration, Plaintiff has produced no evidence in response to Defendant's factual challenge "sufficient to satisfy Plaintiff['s] burden of proof" with respect to the jurisdictional allegations in the Complaint. *Access 4 All, Inc.*, 2008 WL 851918, at *6; *see also id*. (observing that a district court "should not merely rely on" a plaintiff's allegations but should "consider the evidence presented by the parties on the issue of standing"); *Tandon*, 752 F.3d at 243 (the plaintiff, as the party asserting jurisdiction, must "prov[e] by a preponderance of the evidence that [jurisdiction] exists"). Plaintiff having thus failed to meet her burden to establish jurisdiction as against Defendant's factual challenge, the 12(b)(1) motion must be granted. *See In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 673 ("Because Plaintiffs did not

offer evidence to controvert Ms. Adler's sworn declaration and it is Plaintiffs' burden to establish standing by a preponderance of the evidence, [Defendant's] motion to dismiss…is granted."); *see also M.M. ex rel. J.M. v. New York City Dep't of Educ.*, 2010 WL 2985477, at *6 (S.D.N.Y. July 27, 2010) ("By standing mute in the face of [Defendant's] jurisdictional challenge, Plaintiffs effectively concede that they cannot carry their burden and that the Court lacks subject matter jurisdiction over the claims….").[2]

Indeed, even accepting the new jurisdictional theory that Plaintiff relies upon in her supplemental jurisdiction—that she suffered an injury because she "relied, in part, on KLM's promise and commitments to limit its contributions to climate change, in *deciding not to cancel* [her] trip" via ACIS's cancellation insurance policy, Dakus Decl., Dkt. 29 at ¶ 13 (emphasis added)—Plaintiff still fails to establish Article III standing. The fact remains that at the time she purchased her ticket with ACIS, Plaintiff did not know the airline with which she would be traveling, and could not, when she made her purchase, have "relied upon" Defendant KLM's representations in choosing to strike that bargain. *See Kraus,* 2022 U.S. Dist. LEXIS 167176*, *15 (no standing where plaintiff "did not see or rely on any of the advertisements before purchasing the [product]"); *see also TeeVee Toons, Inc.*, 2006 WL 2463537 (S.D.N.Y. Aug. 23, 2006) (no standing where plaintiff did not directly rely on any misrepresentations by defendant). In related contexts for consumer claims, courts have held that a plaintiff must demonstrate that "[s]he has seen the misleading statements of which [s]he complains *before* [s]he came into possession of the

---

[2] Defendant alternatively argues that Plaintiff did not directly pay for her ticket, and thus could have suffered no injury-in-fact alleging that she "funded the ticket, in whole or in part, via her GoFundMe page and received 'complimentary benefits from ACIS' in connection with the trip." Def. Br. at 10. Insofar as Plaintiff did not directly pay for her ticket, Defendant urges, she also could not have paid a price premium for it. *See id*. at 13. Because the Court finds that Plaintiff has not established an Article III injury because she did not book her airline ticket via KLM, and did not "rely upon" any of its representations when making a purchase with ACIS, it need not separately determine whether her use of the GoFundMe page provides a separate basis defeating standing.

products [s]he purchased." *Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *3 (S.D.N.Y. Mar. 24, 2022) (emphasis); *see also Zachmann v. Coleman Co. Inc.*, 2022 WL 161480, at *4 (S.D.N.Y. Jan. 18, 2022) (dismissing claims where plaintiff failed to allege she ever saw the challenged labeling statements prior to her purchase). And Plaintiff does not point to any authority—nor has this Court been able to identify any—supporting the novel contention that a decision *not to cancel* a previously-purchased ticket by availing oneself of a travel insurance policy can give rise to an injury for Article III standing.

## II. Given the Factual Inaccuracies in the Complaint, Sanctions May Be Warranted

Finally, because the Court has serious concerns about Plaintiff's filings in this case—given the significant and direct inconsistencies between the allegations in the Complaint and those contained in Plaintiff's supplemental declaration, *see supra* at 11–12—Plaintiff's counsel is ordered to show cause no later than September 26, 2023 why sanctions pursuant to Federal Rule of Civil Procedure 11 should not be levied against him. Rule 11 provides, in pertinent part, that "[b]y presenting to the court a pleading, written motion, or any other paper," an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). Given the demonstrably false allegations in the Complaint, by Plaintiff's own admission in her supplemental declaration, her counsel's certification to the Court with that filing appears to have violated Rule 11(b)(3). *See O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (observing that the "standard certification for factual allegations under Rule 11(b)(3) is that there is (or likely will be) 'evidentiary support' for the allegation," and that sanctions may thus be imposed where an "allegation is utterly lacking in support"); *Sportvision, Inc. v. MLB Advanced Media, LP*, 2022 WL 19406558, at *4 ("Rule 11(b)(3) is violated where a party falsely represents

that its allegations or factual contentions have evidentiary support or are likely to have such support after a reasonable opportunity for further investigation.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Although the Court is highly skeptical that Plaintiff can in good faith amend the pleadings such that she is able to establish standing, "where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*." *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 121 (2d Cir. 2017) (emphasis in original) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016)); *see also Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]hen a case is dismissed for lack of federal subject matter jurisdiction 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.'") Accordingly, Plaintiff may file a further amended complaint within thirty (30) days, provided she has a good faith basis for doing so.

No later than September 26, 2023, Plaintiff's counsel shall show cause as to why sanctions should not be levied against him. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 19.

SO ORDERED.

Dated:   September 12, 2023
         New York, New York

Hon. Ronnie Abrams
United States District Judge