UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KANDUS DAKUS, Individually and on behalf of all others similarly situated,

                     Plaintiff,

-vs-

KONINKLIJKE LUCHTVAART MAATSCHAPPIJ, N.V.,

                     Defendant.

---

Civil Action No. 1:22-cv-07962-RA
Hon. Ronnie Abrams

---

MEMORANDUM OF LAW IN RESPONSE TO ORDER TO SHOW CAUSE

---

        COSTELLO, COONEY & FEARON, PLLC
        Attorneys for Plaintiff's Counsel,
         Spencer Sheehan
        Office and Post Office Address
        211 West Jefferson Street, Suite 1
        Syracuse, New York 13202
        Telephone: (315) 422-1152

DANIEL R. ROSE,
 Of Counsel

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted on behalf of Spencer Sheehan in response to this Court's Order to Show Cause regarding Federal Rule of Civil Procedure Rule 11 sanctions.

As set forth herein, sanctions against Mr. Sheehan are not warranted since he did not act with subjective bad faith and never knowingly submitted false statements to this Court. As detailed below, when Mr. Sheehan drafted and filed the Complaint and Amended Complaint in this action, he reasonably believed there was evidentiary support for the statements that: (a) "Plaintiff chose between KLM and other airlines which did not tout their environmental attributes" in arranging her travel; (b) "Plaintiff saw and relied on KLM's voluntary representations with respect to limiting climate change" in making her purchase in the first place; and (c) Plaintiff "relied on the above-identified words, promises, commitments, plans and pictures by KLM about its efforts to limit the effects of climate change when she purchased her flight." (Dkt. No. 13 ¶¶ 54–55, 65). These allegations were included in the Complaint, and incorporated in the Amended Complaint, based upon Plaintiff Kandus Dakus' ("Plaintiff Dakus") written and oral representations provided to Mr. Sheehan. At no time did Mr. Sheehan have any intention of raising factually unsupported arguments before this Court.

Even if this Court holds that the standard of review is an "objectively reasonable" one (it should not, in light of the applicable legal authority), it should still not find sanctions are appropriate. At the time Mr. Sheehan drafted and filed the Complaint and Amended Complaint, it was reasonable to understand that Plaintiff Dakus directly purchased her flight from KLM and based upon the information Plaintiff Dakus provided, reasonable not to clarify whether she directly purchased the tickets or whether they were purchased through a third-party.

## STATEMENT OF FACTS

The relevant facts are set forth in the Declaration of Spencer Sheehan, dated October 10, 2023 (Exhibit "A") and the Declaration of Plaintiff Kandus Dakus, dated October 9, 2023 (Exhibit "B").

## ORDER TO SHOW CAUSE

In its September 12, 2023 Opinion & Order (Docket No. 33) granting Defendant Koninklijke Luchtvaart Maatschappij, N.V.'s ("KLM") motion to dismiss Plaintiff Kandus Dukas' complaint in its entirety, this Court *sua sponte* directed that "Plaintiff's counsel is ordered to show cause . . . why sanctions pursuant to Federal Rule of Civil Procedure 11 should not be levied against him." (Dkt. No. 33 at 13). In providing this directive, this Court noted "serious concerns about Plaintiff's filings in this case—given the significant and direct inconsistencies between the allegations in the Complaint and those contained in Plaintiff's supplemental declaration." (*Id.*). This Court further stated that the Order to Show Cause related to Rule 11(b)(3), or specifically:

> Rule 11 provides in pertinent part, that "[b]y presenting the court a pleading, written motion, or other paper,' an attorney 'certifies that to the best of the person's knowledge, information and belief, formed after inquiry reasonable under the circumstances" that "the factual contentions have evidentiary support."

(*Id.*).

" ' "[D]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." ' " *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (emphasis in original) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997)). Since this Court relied only upon Rule 11 in its Order to Show Cause, Mr. Sheehan will focus exclusively upon the standards applicable under that Rule, and the evidence supporting the assertions within the paragraphs identified by this Court therein. (Dkt. 33 at 13).

## ARGUMENT

### POINT I

### MR. SHEEHAN DID NOT ACT WITH SUBJECTIVE BAD FAITH

Prior to drafting and filing these documents, and based on representations from Plaintiff Dakus, Mr. Sheehan believed that Plaintiff Dakus purchased her KLM plane tickets directly from KLM, believed that Plaintiff Dakus chose to purchase her tickets with KLM based on KLM's representations regarding its promises regarding climate change, and believed Plaintiff Dakus relied upon KLM's promises when she purchased the tickets. Mr. Sheehan never had *actual knowledge* that the Complaint or Amended Complaint contained any false allegations. At no point did Mr. Sheehan have any intention of raising factually unsupported arguments before this Court. Thus, since Mr. Sheehan did not act in subjective bad faith, this Court should not impose *sua sponte* sanctions against Mr. Sheehan under Rule 11(c)(3).

**A.    Standard of Review**

"Pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, an attorney who presents a pleading to the court 'whether by signing, filing, submitting, or later advocating for it . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support.' " *Braun v. Zhiguo Fu*, No. 11cv04383 (CM)(DF), 2015 WL 4389893, at *11 (S.D.N.Y. July 10, 2015) (quoting Fed. R. Civ. P. 11(b)(3)); *accord ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009). "Rule 11(c) further provides that '[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction on any attorney . . . that violated the rule or is responsible for the violation.' " *Areu v. Fox News Network, LLC*, No. 20-CV-8678 (RA), 2021 WL 4124226, at *17

(S.D.N.Y. Sept. 9, 2021); *see Braun*, 2015 WL 4389893, at *11. "The Second Circuit has advised courts that Rule 11 sanctions should be 'made with restraint.' " *Areu*, 2021 WL 3124226, at *17 (quoting *Schlaifer Nance & Co.*, 194 F.3d at 334) (citing *Shin Park v. Seoul Broad Sys. Co.*, 5-CV-8956 (BSJ) (DFE), 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances.")).

"Sanctions may be sought by a party on motion [under Rule 11(c)(2)] or, alternatively, the court, on its own initiative" under Rule 11(c)(3) may *sua sponte* direct an attorney to show cause why sanctions should not be imposed. *Braun*, 2015 WL 4389893, at *11; *see Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 57 (2d Cir. 2000). Inasmuch as the language of Rule 11(c)(3) "states that a Court *may* impose any appropriate sanction if the court determines that Rule 11(b) has been violated, the analysis of the Rule involves two issues: (1) whether Rule 11 has been violated and (2) whether the court should exercise its discretion to award sanctions based on the violation." *Braun*, 2015 WL 4389893 at *12 (emphasis in original); *see also Bernhardt v. Tradition N. Am.*, 676 F. Supp. 2d 301, 306 (S.D.N.Y. 2009). "Thus a finding that Rule 11 has been violated does not compel the imposition of sanctions." *Braun*, 2015 WL 4389893 at *12; *New V&J Produce Corp. v. NYCCaterers Inc.*, No. 13 Civ. 4861 (ER), 2014 WL 5026157, at *6, *8 (S.D.N.Y. 2014).

It is well settled in this Circuit that where, as here, "a court considers whether to impose sanctions *sua sponte* under Rule 11(c)(3), it 'is akin to the court's inherent power of contempt,' and, 'like contempt, *sua sponte* sanctions in those circumstances should issue only upon a finding of subjective bad faith.' " *Mata v. Avianca, Inc.*, No. 22-CV-1461 (PKC), 2023 WL 4114965, at *13–*14 (S.D.N.Y. June 22, 2023) (quoting *Muhammed v. Walmart Stares E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013)); *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003); *Braun*,

4

2015 WL 4389893, at *16 ("[I]t seems clear that, if the court initiates sanction proceedings while simultaneously concluding an action, the bad faith standard applies.").

"Subjective bad faith is a heightened *mens rea* standard that is intended to permit zealous advocacy while deterring improper submissions." *Mata*, 2023 WL 4114965 at *13; *Braun*, 2015 WL 4389893 at *15 (" '[A]ctual knowledge' is required to satisfy the subjective-bad-faith standard."); *see also Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 387 (W.D.N.Y. 2013) ("The higher *mens rea* standard of subjective bad faith applicable to Fed. R. Civ. P. 11(c)(3) sanctions on a court's own initiative has been adopted to reduce the risk that a district court will sanction an attorney and inadvertently dampen attorneys' legitimate, zealous advocacy on behalf of clients."). "It requires more than being merely negligent, foolish or mistaken, and the person must be aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Mata*, 2023 WL 4114965 at *13; *see Securities & Exch. Comm'n v. Smith*, 798 F. Supp. 2d 412, 424 (N.D.N.Y. 2011) (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006)) ("Subjective bad faith requires proof of deliberate fraud or wrongdoing."). As such, conduct that constitutes "negligence, "gross negligence", "or even recklessness" is not sufficient for a Court to find conduct sanctionable. *Braun*, 2015 WL 4378783, at *15.

"An attorney may not be found to have acted in bad faith when he or she has relied on a 'client's statements as to factual claims when those statements are objectively reasonable.' " *Braun*, 2015 WL 4389893, at *16 (quoting *Calloway v. Marvel Ent. Grp.*, 854 F.2d 1452, 1479 (2d Cir. 1988), *rev. in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989)); *accord Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329–30 (2d Cir. 1995). "More specifically, an attorney who relies on a client's verification made under the penalty of perjury is not acting in bad faith; indeed, it is unlikely that such reliance would even rise to the

5

level of objective unreasonableness." *Braun,* 2015 WL 4389893 at *16; *see Optical Commc'ns Grp., Inc. v. M/V AMBASSADOR*, 938 F. Supp. 2d 449, 465 (S.D.N.Y. 2013), *aff'd*, 558 F. App'x 94 (2d Cir. 2014) (summary order denying motion for sanctions and holding "we cannot conclude that it was objectively unreasonable for counsel to rely on the [the plaintiff's] representations, as suspect as they may be").

The holding in *Braun v. Zhiguo Fu*, 2015 WL 4389893 (S.D.N.Y. 2015) is illustrative in this case. There, the Court held that it would not impose sanctions under Rule 11(c)(3) as against Plaintiff's counsel and/or firm. In the action, the law firm of Levi & Korsinky ("L&K"), on behalf of plaintiff Carl Braun, commenced a derivative suit against Advance Battery Technologies, Inc. ("ABAT"). *Id.*, at *1–*3. The plaintiff, Mr. Braun, first approached L&K by sending the firm an email response to a press release by the firm announcing that it was investigating potential claims against ABAT and inviting stockholders to contact the firm. *Id.*, at *2. Prior to filing the derivative suit, no one at L&K confirmed with Mr. Braun that he still held shares with ABAT. *Id.*, at *2–*3. In fact, unbeknownst to L&K, Mr. Braun sold his shares prior to being named as a plaintiff in the derivative action. *Id.*, at *6. Despite this, the derivative action complaint alleged: "Plaintiff . . . is a current shareholder of ABAT and has held ABAT stock during the Relevant Period and continues to hold today." *Id.*, at *5. While Mr. Braun verified this complaint, he testified at a hearing that he never reviewed the complaint before signing the verification and did not know its contents. *Id.*

The sanctions proceeding against L&K was initiated by the Court *sua sponte* after it granted the plaintiff Braun's motion for dismissal of his claims, having previously rejected the parties' stipulated dismissal. *Id.*, at *18. The District Court reviewed whether sanctions should be imposed under a standard of "subjective bad faith." *Id.* The Court held that this was the only standard to consider because any negligence, gross negligence, or even recklessness of the

attorneys/firm would not call for an imposition of sanctions where the Court initiated the sanctions proceedings. *Id.*, at *20. The Court held that L&K must have had *actual knowledge* that the Complaint contained a false allegation for sanctions to be appropriate. *Id.*

The *Braun* Court declined to impose sanctions, finding "[t]here is nothing in the record, even circumstantially, to suggest that [the law partner] or anyone else at the firm had *actual knowledge* that the Complaint contained a false allegation regarding Braun's standing to sue, and it is not enough that [the law partner] or her colleagues *should have known* that the firm was pressing a frivolous claim." *Id.*

The same is true here. Mr. Sheehan did not have actual knowledge that any of the allegations contained in the Complaint were false. Respectfully, no sanctions should be imposed against Mr. Sheehan.

**B.     Mr. Sheehan Did Not Act in Bad Faith**

As detailed in the attached declarations, Mr. Sheehan sought a representative plaintiff for an action against KLM by distributing an advertisement which stated: "Recently purchase airline tickets through a company that claimed to be more environmentally friendly than others?". (Declaration of Spencer Sheehan, dated October 10, 2023 ["Sheehan Dec."], ¶ 15); Declaration of Plaintiff Kandus Dakus, dated October 9, 2023 ["Plaintiff Dakus Dec."], ¶ 6). Plaintiff Dakus responded to this advertisement identifying KLM as the airline from which she "recently purchased" a ticket for her travels. (Sheehan Dec. ¶¶ 17–18; Plaintiff Dakus Dec. ¶¶ 7–8).

Mr. Sheehan then spoke with Plaintiff Dakus by telephone. (Sheehan Dec. ¶ 21; Plaintiff Dakus Dec. ¶ 21). On this call, Plaintiff Dakus confirmed that she "purchased" KLM airline tickets for a recent trip she took from Houston, Texas to Europe. (Sheehan Dec. ¶¶ 29–31; Plaintiff Dakus Dec. ¶ 25). Plaintiff Dakus told Mr. Sheehan that KLM's claims about its environmental

7

commitments were a factor in her decision to fly with KLM and would affect her decision to fly with KLM in the future. (Sheehan Dec. ¶ 39; Plaintiff Dakus Dec. ¶ 27). Mr. Sheehan reviewed his outline of a Complaint with Plaintiff Dakus, including the allegation that she relied on KLM's expressed environmental commitments "when [he or] she purchased [their] flight." (Sheehan Dec. ¶¶ 40–41; Plaintiff Dakus Dec. ¶ 37). The Complaint was filed on September 17, 2022. (*See* Dkt. No. 1). On September 20, 2022, Mr. Sheehan provided a copy of the filed Complaint to Plaintiff Dakus. (Sheehan Dec. ¶ 46; Plaintiff Dakus Dec. ¶ 40). Plaintiff Dakus never contacted Mr. Sheehan to inform him that any of the allegations in the Complaint were incorrect. (Sheehan Dec. ¶ 47; Plaintiff Dakus Dec. ¶ 41).[1]

At no time prior to Mr. Sheehan drafting or filing the Complaint and/or Amended Complaint did Mr. Sheehan know that Plaintiff did not directly purchase her KLM tickets. (Sheehan Dec. ¶ 47). While Plaintiff Dakus informed Mr. Sheehan she "purchased" the KLM ticket, she never informed him that she gave money to ACIS to purchase the ticket on her behalf. (Sheehan Dec. ¶ 33; Plaintiff Dakus Dec. ¶ 31). Based upon the conversation with Plaintiff and her responses to the questionnaire, Mr. Sheehan assumed Plaintiff Dakus directly purchased her KLM ticket and he never thought to ask Plaintiff Dakus if the ticket was purchased by a third-party buyer. (Sheehan Dec. ¶¶ 59–63).

Therefore, at the time of the filings, Mr. Sheehan believed that the allegations that: (a) "Plaintiff chose between KLM and other airlines which did not tout their environmental attributes" in arranging her travel; (b) "Plaintiff saw and relied on KLM's voluntary representations with respect to limiting climate change" in making her purchase in the first place; and (c) Plaintiff "relied on the above-identified words, promises, commitments, plans and pictures

---

[1] It is noted that the allegations that were of concern by this Court in the Amended Complaint are allegations which were in the originally filed Complaint. (*Compare* Dkt. No. 1 ¶¶ 47–48, 58, *with* Dkt. No.13 ¶¶ 54–55, 65).

by KLM about its efforts to limit the effects of climate change when she purchased her flight" were reasonable in light of the evidence in his possession. (Sheehan Dec. ¶¶ 66–69). Mr. Sheehan had no actual knowledge that these statements were inaccurate in any way. *See Mata*, 2023 WL 4114965, at *13; *Braun*, 2015 WL 4389893, at *15.

Since Mr. Sheehan had no actual knowledge that any of the allegations were false, it is submitted his actions and submissions to this Honorable Court simply do not rise to the level of bad faith necessary to impose sanctions. Therefore, it is respectfully submitted that the Court should not impose sanctions against Mr. Sheehan.

In its September 12, 2023 Opinion & Order, the Court cited two (2) cases which warrant discussion: *O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996), and *Sportvision, Inc. v. MLB Advanced Media, LP*, 2022 WL 19406558 (S.D.N.Y. 2022). It is respectfully submitted that both cases are inapposite as they, *inter alia,* address the "objective reasonableness" standard where a party moves for sanctions as against another party. *See O'Brien v. Alexander*, 898 F. Supp. 162, 174–76 (S.D.N.Y. 1995), *aff.* 101 F.3d 1479 (2d Cir. 1996); *Sportsvision, Inc.*, No. 18-CV-03025 (PGG) (VF), 2022 WL 19406558, at *1, *4 (S.D.N.Y. Dec. 5, 2022) (court failed to impose sanctions under "objective reasonableness" standard). They are not cases wherein the court initiated the sanctions proceedings and the "subjective bad faith" standard was required to show sanctions should be imposed. Thus, while the general principles for which the Court cited that authority remain good law, the ultimate standard of review within those cases does not apply here.

9

## POINT II

## IN THE ALTERNATIVE, THIS COURT SHOULD NOT IMPOSE SANCTIONS WHERE MR. SHEEHAN'S CONDUCT WAS REASONABLE

Alternatively, even if this Court should determine the appropriate standard in this case is "objective reasonableness" (which it should respectfully not find), this Court should still not impose sanctions against Mr. Sheehan.

"A pleading, motion or other paper violates Rule 11 either when it 'has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law . . . .' " *Carlton Grp., Ltd. v. Tobin,* No. 02 CIV.5065 SAS, 2003 WL 21782650, at *7 (S.D.N.Y. July 31, 2003) (quoting *W.K. Webster & Co. v. American President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994)). "Sanctions should only be imposed 'where it is patently clear that a claim has absolutely no chance of success.' " *Id.* (quoting *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991)). "Courts generally look for 'direct falsehood' in a filing" before they find that sanctions are warranted pursuant to Rule 11(b)(3). *See Sichel v. UNUM Provident Corp.*, 230 F. Supp. 2d 325, 332 (S.D.N.Y. 2002) (citing *Chum Ltd. V. Lisowski*, No. 98 Civ. 5060, 2001 WL 243541, at *14 (S.D.N.Y. Mar. 12, 2001)). "Furthermore, all doubts must be resolved in favor of the signer of the pleading." *Carlton,* 2003 WL 21782650, at *7 (citing *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).

As this Court aptly noted twenty (20) years ago:

> In determining whether a Rule 11 violation has occurred, a court should use an objective standard of reasonableness." *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253 (2d Cir. 1996) (citing *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 US.. 533, 548 (1991)). Whether an attorney's conduct was reasonable should be determined without the benefit of hindsight, based on what was objectively reasonable to believe at the time the pleading, motion or other paper was submitted.

> *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011–12 (2d Cir. 1986). "Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion or other paper; whether the pleading, motion or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel of another member of the bar." *Id.* at 1012 (quoting Fed. R. Civ. P. 11 Advisory Committee Note on 1983 Amendment). In addition, attorneys are entitled to rely on the objectively reasonable representations of their clients. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329–30 (2d Cir. 1995).

*Carlton Grp., Ltd.*, 2003 WL 21782650, at *3.

In the case at bar, Mr. Sheehan relied on the representations of Plaintiff Dakus that she purchased her ticket with KLM, in part, because of her understanding of KLM's environmental commitments. As detailed in Mr. Sheehan's Declaration, he relied on these representations in drafting the Compliant and incorporated those same facts into the Amended Complaint. (Sheehan Dec. ¶ 59). Moreover, Mr. Sheehan did not inquire with Plaintiff Dakus whether a third party purchased her ticket based upon Mr. Sheehan's reasonable understanding that most persons purchase airlines tickets directly themselves and do not use a third-party purchaser. (Sheehan Dec. ¶ 60). Finally, once Mr. Sheehan learned that Plaintiff Dakus provided money to ACIS to purchase her KLM tickets, Mr. Sheehan did not file any further documents which alleged Plaintiff Dakus was a direct purchaser. (Sheehan Dec. ¶¶ 64–65). Rather, Plaintiff Dakus submitted a declaration in opposition to Defendant's motion to provide clarification of how she purchased the tickets for her trip. (Dkt. No. 29).

Therefore, based upon the above, it was reasonable that Mr. Sheehan alleged the facts contained in the Amended Complaint and it was reasonable that Mr. Sheehan did not inquire with Plaintiff Dakus prior to filing the Complaint and Amended Complaint whether she was the direct purchaser of the tickets. As such, even if this Court determines to review this matter under the

11

"objective reasonableness" standard, it is submitted sanctions still should not be imposed, in light of the circumstances surrounding the filing of the allegedly offending pleadings.

## CONCLUSION

For the foregoing reasons and those set forth in the accompanying Declarations of Spencer Sheehan and Plaintiff Kandus Dakus, it is respectfully submitted this Court should not impose Rule 11 sanctions against Mr. Spencer.

**DATED:** October 10, 2023

**COSTELLO, COONEY & FEARON, PLLC**

_____
**DANIEL R. ROSE**
**Attorneys for Plaintiff's Counsel,**
  **Spencer Sheehan**
**Office and Post Office Address**
**211 West Jefferson Street, Suite 1**
**Syracuse, New York 13202**
**Telephone: (315) 422-1152**

**DANIEL R. ROSE,**
  **Of Counsel**