UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kandus Dakus, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> - against - <br><br> Koninklijke Luchtvaart Maatschappij, N.V., <br><br> Defendant. | 1:22-cv-07962-RA |

### DECLARATION OF SPENCER SHEEHAN

I, Spencer Sheehan, hereby declare and state under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I was the attorney for Plaintiff Kandus Dakus ("Plaintiff") in this action until its dismissal last month pursuant to this Court's September 12, 2023 Opinion & Order granting Defendant Koninklijke Luchtvaart Maatschappij, N.V.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 33 ("Order").

2. I have reviewed the Court's Order where it required me to "show cause" as to why sua sponte sanctions should not be imposed. *See* Order at 2, 13–14.

### I. CASE BACKGROUND

3. In April 2022, I learned that the Stichting Reclame Code ("SRC"), the Dutch Advertising Code Authority, issued a ruling that "KLM cannot truthfully say its flights are carbon neutral."[1]

---

[1] Staff, *KLM's carbon neutral claim is misleading, says advertising watchdog*, NL Times (Apr. 9, 2022, 12:30 PM), https://nltimes.nl/2022/04/09/klms-carbon-neutral-claim-misleading-says-advertising-watchdog; Diederik Baazil, *Dutch Watchdog Rules KLM's 'Carbon Zero' Ad is Misleading*, Bloomberg (Apr. 8, 2022), https://www.bnnbloomberg.ca/dutch-watchdog-rules-klm-s-carbon-zero-ad-is-misleading-1.1749881.

4. According to its website and confirmed by third parties, the SRC "deals with the self-regulation system of advertising in The Netherlands" and is managed by the Reclame Code Commissie ("RCC"), the Advertising Code Committee.[2]

5. Beyond reviewing the SRC decision and performing basic research on environmental claims with respect to greenhouse gas emissions from airlines, I took no further action at that time.

6. In July 2022, I learned that "Several environmental groups ha[d] launched legal action against Dutch airline KLM over advertisements that promoted flying as a sustainable form of travel" "filed with the District Court of Amsterdam."[3]

7. It is apparent the lawsuit built upon the SRC decision.

## II. DRAFTING AND FILING OF COMPLAINT AND AMENDED COMPLAINT

8. After reading about and verifying the bases of the lawsuit filed against KLM in the Amsterdam court, I researched whether those allegations could form the basis of a statutory consumer protection claim in the United States.

9. The assertion of such claims based on developments in a foreign jurisdiction is not uncommon or novel.[4]

---

[2] *About the Stichting Reclame Code: Self-regulatory organization of advertising in The Netherlands*, Stichting Reclame Code, http://www.reclamecode.nl/english/ (last visited October 10, 2023); Franziska Weber, *The Law and Economics of Self-regulation in Advertising*, J. of Eur. Consumer & Mkt. L. 3.1 (2014) at 6 (describing the SRC as "based on a voluntary agreement of the advertising industry").

[3] *Dutch airline KLM sued over alleged 'greenwashing'*, Associated Press (July 6, 2022, 11:21 AM), https://apnews.com/article/climate-lawsuits-airlines-netherlands-02a4851b1521aac60813723ebedcb60b; Merlyn Thomas, *Environmentalists sue Dutch airline KLM for 'greenwashing'*, BBC (July 6, 2022), https://www.bbc.com/news/science-environment-61556984.

[4] Diego A. Zambrano, *How Litigation Imports Foreign Regulation*, 107 Va. L. Rev. 1165, 1165–1254 (2021).

2

10. On a regular basis, such "Public findings, or new studies that detail wrongdoing by a company or entity, [] often provide the basis for tort or breach of contract claims" in American courts.[5]

11. This is consistent with how "private enforcement has been a consequence of deliberate statutory design and, further, of functional limitations of public regulatory bodies' ability to achieve regulatory objectives."[6]

12. I proceeded to prepare the outline of a complaint.

### A. Plaintiff Responded to Advertising Solicitation to Those Who "Recently Purchased" Airfare

13. Beyond legal and factual research, it was necessary to identify someone who purchased travel with KLM, in reliance on the challenged environmental claims.

14. I directed the generation of an advertisement in furtherance of this objective.

15. The advertisement stated, "Recently purchase airline tickets through a company that claimed to be more environmentally friendly than others?"

16. This was followed by text which indicated certain airlines may have made misleading claims with respect to their environmental practices.

17. My records indicate that Plaintiff Dakus responded to the advertisement on July 26, 2022.

18. She was then required to identify the airline from which she "recently purchased" tickets, the name and location of the departure airport, approximate dates of the travel, her first and last name, phone number, address and email address.

---

[5] Zambrano, *supra*, at 1189.

[6] J. Maria Glover, *The Structural Role of Private Enforcement Mechanism in Public Law*, 53 William & Mary L. Rev. 1137, 1146 (2011).

Plaintiff Dakus selected "KLM" from the list of airlines underneath the question of which airline she "recently purchased" tickets for her travel.

B. **Discussions With Plaintiff Dakus Regarding The Facts Contained in the Pleadings**

19. On September 9, 2022, after reviewing Plaintiff Dakus' submission in response to the question, "Recently purchase airline tickets through a company that claimed to be more environmentally friendly than others?," I sent her a representation agreement ("Agreement").

20. After Plaintiff Dakus viewed and signed the Agreement, I promptly called her to discuss the matter on September 9, 2022. My records indicate I was not able to speak with her that day.

21. According to my records, I next called Plaintiff Dakus on September 13, 2022, and spoke to her in relation to this lawsuit.

22. I reviewed all eight pages of the Agreement with Plaintiff Dakus.

23. I do this for all agreements where I may decide to accept an individual as a possible class representative, to prevent someone from being a signatory to a document which they may not understand.

24. If someone decides after I speak to them on the phone following their signing of an agreement that they do not want to proceed or if I conclude they would not be an adequate named plaintiff, I will not sign the document and will either manually void or decline it or allow it to expire without signing it.

25. I emphasized to Plaintiff Dakus certain portions of the Agreement, so it was clear about any expectations and possible subsequent steps.

26. This included the filing of a legal action on her behalf against KLM for their misleading claims about the environmental impact of flying.

27. I explained to Plaintiff Dakus the responsibilities and obligations of a named plaintiff.

28. She confirmed the information in her response to the advertisement asking whether she "Recently Purchased" airline tickets through an airline that made misleading claims about its environmental commitments.

29. Plaintiff Dakus confirmed she had purchased tickets from KLM.

30. Plaintiff Dakus and I discussed her recent travel on KLM.

31. She informed me that she traveled to Europe from Houston, Texas.

32. Plaintiff Dakus never told me that she traveled with a tour group for this trip.

33. Plaintiff Dakus never told me that she used ACIS Educational Tours to assist her with her travel plans, including the purchase of her KLM tickets.

34. I closely reviewed the subject matter of the suit relating to her decision to purchase KLM plane tickets based on, at least in part, KLM's claims about the environmental impact of flying.

35. During this telephone conversation, Plaintiff Dakus informed me she was already aware that KLM touted its environmental commitments before she flew on KLM for her trip.

36. I told Plaintiff Dakus about the SRC's conclusion that KLM's claims about the environmental impact of flying were misleading.

37. I explained to Plaintiff Dakus that environmental groups in the Netherlands filed a legal action against KLM based on what they alleged were its misleading claims about the environmental impact of flying.

38. Plaintiff Dakus was not aware that KLM's claims about the environmental impact of flying were untruthful.

39. Plaintiff Dakus told me that KLM's claims about its environmental commitments were a factor in her decision to fly with KLM and would affect her decision to fly with KLM in the future.

40. I reviewed the outline of the complaint I had prepared on this subject with Plaintiff Dakus, which was based on the lawsuit filed in the Amsterdam court.

41. This included the allegations that: (a) the named plaintiff relied on KLM's expressed environmental commitments "when [he or] she purchased [their] flight"; (b) she "chose between KLM and other airlines which did not tout their environmental attributes"; and (c) she "saw and relied on KLM's representations" in purchasing her tickets. (Dkt. No. 1 ¶ 47–48, 58).[7]

42. I asked Plaintiff Dakus if she wanted me to provide her with a copy of the Complaint to be filed on her behalf prior to its filing.

43. Plaintiff Dakus told me this was not necessary, if what was filed was generally consistent with what I reviewed with her during this conversation.

44. I told Plaintiff Dakus that after our call, I would sign the Agreement and proceed consistent with our conversation and her instructions and authorizations to me.

C. **Plaintiff Dakus Did Not Inform Me Any Portions of the Complaint Were Incorrect**

45. The Complaint was filed on September 17, 2023.

46. My office promptly provided Plaintiff Dakus with the filed Complaint by email on September 20, 2022, and Plaintiff Dakus confirmed receipt.

47. While I assume that Plaintiff Dakus read the filed Complaint, she did not contact me and tell me that any of the paragraphs of the Complaint were incorrect. For instance, Plaintiff

---

[7] Paragraphs 47, 48 and 58 in the Complaint are substantially identical to paragraphs 54, 55 and 65 in the Amended Complaint, which is the relevant pleading for purposes of the Court's Order seeking to impose *sua sponte* sanctions. (Dkt. No. 1, ¶¶ 47–48, 58; Dkt. No. 13, ¶¶ 54–55, 65).

6

Dakus never informed me that paragraph 47 was inaccurate or imprecise, because she was initially an "indirect purchaser."

48. On December 14, 2022, I filed an Amended Complaint. The Amended Complaint incorporated the facts as pleaded in the original Complaint. (*Compare* Dkt. No. 1 ¶¶ 47–48, 58, *with* Dkt. No. 13 ¶¶ 54–55, 65).

D. **My Understanding Of the Facts Based Upon Reasonable Inquiry At the Time of Filing of the Complaint and Amended Complaint**

49. As set forth above, during my initial call with Plaintiff Dakus, she did not tell me she was an indirect purchaser of a flight on KLM, because ACIS Educational Tours booked the flights on her behalf.

50. I failed to inquire if Plaintiff Dakus was a direct or indirect purchaser of airline tickets from KLM.

51. I incorrectly assumed that each person who completed the submission form directly purchased their flight as opposed to having it done for them, without their knowledge.

52. I should have been more precise in asking Plaintiff Dakus if she purchased her flights on KLM or if she understood this term more expansively.

53. In hindsight, "purchase" was understood by Plaintiff Dakus to apparently mean that she paid money that was ultimately received by KLM.

54. Since I believed that Plaintiff Dakus purchased her KLM tickets directly and Plaintiff told me that KLM's claims about its environmental commitments were a factor in her decision to fly with KLM, I believed that it was Plaintiff Dakus who "chose between KLM and other airlines which did not tout their environmental attributes." (Dkt. No. 13¶ 55).

7

55. I should have been more precise in asking Plaintiff about her comparisons of airlines prior to the purchase of the KLM ticket, and then she may have informed me that the ticket was purchased indirectly by ACIS.

56. I also should have also been more exacting in confirming that Plaintiff "saw and relied on KLM's voluntary representations with respect to climate change" before making her purchase in the first place, and then she may have informed me that the ticket was purchased indirectly by ACIS, without her knowledge of which airline would be selected.

57. Regrettably, I did not ask these questions and believed, based on Plaintiff Dakus' response to the advertisement and my conversation with Plaintiff Dakus, that: (a) she directly purchased the KLM ticket; (b) she saw and relied on KLM's voluntary representations with respect to climate change in making her purchase in the first place: and (c) she chose between KLM and other airlines which did not tout their environmental attributes.

58. As such, when I drafted and filed the Complaint and Amended Complaint, I believed these statements to be true.

E. **It Was Reasonable Under the Circumstances To Not Inquire If Plaintiff Dakus Purchased Her KLM Tickets Through a Third-Party**

59. Based upon Plaintiff's response to the advertisement and my conversation with her, I believed that she directly purchased the KLM tickets.

60. I further submit that it was "reasonable under the circumstances" for me not to inquire with Plaintiff Dakus whether her ticket was purchased through a third party.

61. This was based upon my reasonable understanding when I drafted the Complaint and Amended Complaint that in 2023, a large majority of Americans directly purchase their own airline tickets, rather than using third-parties such as travel agents.

8

62. This was also based upon my reasonable understanding when I drafted the Complaint and Amended Complaint that a very low percentage of Americans arrange travel through fully escorted group tours like Plaintiff Dakus.

63. Based upon these beliefs, it did not even occur to me to ask Plaintiff if her tickets were purchased by a third party.

**F.      No Documents Were Submitted to This Court with Known False Statements**

64. Following the filing of Defendant's motion to dismiss, I first learned that Plaintiff Dakus had ACIS purchase her KLM airline tickets.

65. On behalf of Plaintiff Dakus, in opposition to Defendant's motion, no papers were submitted which continued to argue that Plaintiff Dakus was a direct purchaser of the KLM tickets. Rather, Plaintiff Dakus submitted her declaration to provide clarification of how she purchased the tickets for her trip. (Dkt. No. 29).

### III. CONCLUSION

66. In filing the Amended Complaint, "to the best of [my] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," I believed "the factual contentions [that 'Plaintiff chose between KLM and other airlines which did not tout their environmental attributes' in arranging her travel] ha[d] evidentiary support." Fed. R. Civ P. 11(b)(3). (Dkt. No. 13 ¶ 55).

67. In filing the Amended Complaint, "to the best of [my] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," I believed "the factual contentions [that 'Plaintiff saw and relied on KLM's voluntary representations with respect to limiting climate change' in making her purchase in the first place] ha[d] evidentiary support." Fed. R. Civ P. 11(b)(3). (Dkt. No. 13 ¶ 65).

68. In filing the Amended Complaint, "to the best of [my] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," I believed "the factual contentions [that Plaintiff 'relied on the above-identified words, promises, commitments, plans and pictures by KLM about its efforts to limit the effects of climate change when she purchased her flight'] ha[d] evidentiary support." Fed R. Civ. P. 11(b)(3). (Dkt. No. 13 ¶ 54).

69. The allegations included in the Complaint, and incorporated into the Amended Complaint, were based upon Plaintiff's statements in response to an advertisement, as well as factual information provided in a conversation with Plaintiff Dakus prior to the filings.

70. At no point did I have any intention of raising factually unsupported arguments before this Court.

71. I regret that the information I learned subsequent to the filing of the Complaint and Amended Complaint was inconsistent with how the allegations of the Amended Complaint were pleaded.

**WHEREFORE**, I respectfully request an Order of this Court declining to impose sanctions upon me, together with such other and further relief as the Court may deem just and proper.

**Dated:   October 10, 2023**
         October 10, 2023 | 1:57:18 PM EDT

                                                      DocuSigned by:
                                                      [signature]
                                                      F5B5F3CD9AE04B9...
                                                      **Spencer Sheehan**