**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KANDUS DAKUS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KONINKLIJKE LUCHTVAART MAATSCHAPPIJ, N.V.,<br><br>Defendant. | Civil Action No. 1:22-cv-07962-RA |

**DEFENDANT KLM'S RESPONSE TO**
**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

Keara M. Gordon
Colleen Carey Gulliver
Haley D. Torrey (*pro hac vice*)
DLA PIPER LLP
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
keara.gordon@dlapiper.com
colleen.gulliver@dlapiper.com
haley.torrey@us.dlapiper.com

*Attorneys for Defendant*
*Koninklijke Luchtvaart Maatschappij, N.V.*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

    A.    This Court's Ruling on KLM's Motion to Dismiss. ................................................3

    B.    The Purported Pre-Suit Investigation......................................................................3

    C.    KLM Establishes the Meritless Nature of the Claims. ...........................................4

    D.    The Plaintiff's Counsel Continues to Assert Baseless Claims................................5

    E.    The Court's Ruling on KLM's Motion and Order to Show Cause. ........................6

LEGAL STANDARD............................................................................................................7

ARGUMENT .........................................................................................................................7

I.    Sanctions Are Warranted Under Section 1927 and the Court's Inherent Authority............7

    A.    The Plaintiff's Claims Were Not Colorable............................................................7

    B.    The Plaintiff's Counsel Acted in Bad Faith. ...........................................................9

II.    The Court Should Compel the Plaintiff's Counsel to Reimburse KLM For Attorneys' Fees, Costs, and Expenses Incurred.................................................................11

CONCLUSION....................................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Baker v. Urban Outfitters, Inc.*,
  431 F. Supp. 2d 351 (S. D. N. Y. 2006)..............................................................................10, 11

*Brownell v. Starbucks Coffee Co.*,
  2023 WL 4489494 (N.D.N.Y. July 12, 2023) ............................................................................1

*Charles v. Seinfeld*,
  2022 WL 889162, at *10 (S.D.N.Y. Mar. 25, 2022). ................................................................9

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
  2023 WL 5935694 (S.D.N.Y. Sept. 12, 2023) ............................................................3, 6, 7, 8

*George v. Pro. Disposables Int'l, Inc.*,
  2018 WL 2148762 (S.D.N.Y. May 1, 2018) ...........................................................................12

*Gordon v. Target Corp.*,
  2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) .............................................................................1

*Guzman v. Walmart Inc.*,
  2023 WL 4535903 (N.D. Ill. May 15, 2023) .......................................................................2, 11

*Hernandez v. Money Source Inc.*,
  2022 WL 2702894 (E.D.N.Y. July 12, 2022).........................................................................12

*Johnson v. Univ. of Rochester Med. Ctr.*,
  642 F.3d 121 (2d Cir. 2011)....................................................................................................10

*Kaufman v. Equifax Information Services, LLC*,
  2019 WL 3997461 (E.D.N.Y. Aug. 22, 2019)........................................................9, 10, 11, 12

*Ke v. J R Sushi 2 Inc.*,
  2022 WL 1496576 (S.D.N.Y. Feb. 7, 2022) *R&R adopted*, 2022 WL 912231
  (S.D.N.Y. Mar. 28, 2022) .....................................................................................................7, 9

*Keitel v. D'Agostino*,
  2023 WL 3560553 (S.D.N.Y. May 19, 2023) ...........................................................................1

*Lazzarino v. Kenton Assocs,, Ltd.*,
  998 F. Supp. 364 (S.D.N.Y. 1998) ..........................................................................................13

*Lesorgen v. Mondelēz Global, LLC*,
  2023 WL 3568686 (N.D. Ill. May 19, 2023)............................................................................1

*Long v. Koninklijke Luchtvaart Maatschappij, N.V.*,
  No. 3:23-cv-00435 (E.D. Va. July 7, 2023)..............................................................................6

*Matthews v. Polar Corp.*,
  No. 1:22-cv-649, ECF No. 40 (N.D. Ill. May 11, 2023)..........................................................1

*Rabin v. Dow Jones & Co.*,
  665 Fed. App'x 21 (2nd Cir. 2016)..................................................................................10, 11

*Reichmann v. Neumann*,
  553 F. Supp. 2d 307 (S.D.N.Y. 2008)...............................................................................8, 9

*Reyes v. Upfield US Inc.*,
  2023 WL 6276685 (S.D.N.Y. Sept. 26, 2023)........................................................................1

*Rubio v. City of New York,*,
  2005 WL 1498283 (S.D.N.Y. May 31, 2005) .....................................................................11

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323 (2d Cir 1999)..............................................................................................7, 8

*Tasini v. N.Y. Times Co.*,
  184 F. Supp. 2d 350 (S.D.N.Y. 2002)...................................................................................5

*Turk v. Rubbermaid Inc.*,
  2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) .........................................................................1

*Johnson ex rel. U.S. v. The Univ. of Rochester*,
  715 F. Supp. 2d 427 (W.D.N.Y. 2010) *affirmed*, 642 F.3d 121 (2d Cir. 2011) ......................11

*Van Orden v. Hikari Sales U.S.A., Inc.*,
  2023 WL 5336813 (N.D.N.Y. Aug. 18, 2023) ......................................................................2

**Statutes**

28 U.S.C. § 1927................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 11 ...............................................................................................1, 3, 7

New Yorker, The Lies in Your Grocery Store, Sept. 4, 2023,
  https://www.newyorker.com/magazine/2023/09/11/the-lies-in-your-grocery-
  store (last accessed October 17, 2023)..................................................................................2

ii

**INTRODUCTION**

"It is well established that district courts have inherent authority to impose sanctions on 'litigants and lawyers who show themselves to be serial abusers of the judicial system.'" *Keitel v. D'Agostino*, 2023 WL 3560553, at *3 (S.D.N.Y. May 19, 2023) (quoting *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 280 (2d Cir. 2021)).

Unfortunately, that appears to be the case here, and this Court is not the only one that has expressed concern about the plaintiff's counsel's filings. Rather, over the last two years, numerous courts around the country have cautioned the plaintiff's counsel to be more circumspect when bringing suits. *See, e.g.*, *Reyes v. Upfield US Inc.*, 2023 WL 6276685, 11, n.3-4 (S.D.N.Y. Sept. 26, 2023) (threatening the plaintiff's counsel with "sanctions under Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927" if counsel continued to assert "argument[s] contrary to prevailing law"); *Brownell v. Starbucks Coffee Co.*, 2023 WL 4489494, at *8 (N.D.N.Y. July 12, 2023) (ordering the plaintiff's counsel to show cause why he has not violated Rule 11(b)(2)); *Gordon v. Target Corp.*, 2022 WL 836773, at *9, n.3 (S.D.N.Y. Mar. 18, 2022) ("Plaintiff's counsel is now on notice that should he attempt to bring such a claim before this Court again, the Court will impose Rule 11 sanctions."); *Turk v. Rubbermaid Inc.*, 2022 WL 836894, at *6, n.1 (S.D.N.Y. Mar. 21, 2022) ("Should Plaintiffs' counsel attempt to bring another plainly frivolous claim for injunctive relief . . . the Court will impose Rule 11 sanctions."); *Lesorgen v. Mondelēz Glob., LLC,* 2023 WL 3568686, at *4-5 (N.D. Ill. May 19, 2023) ("remind[ing]" the plaintiff's counsel of "his obligations under Rule 11" and noting "[s]paghetti is best eaten, not thrown at walls"); *Matthews v. Polar Corp.*, No. 1:22-cv-649, ECF No. 40 (N.D. Ill. May 11, 2023) ("Suffice it to say that this case . . . has left this Court with a sour taste in its mouth. The theory of the case was not close to viable. . . . Going forward, counsel should proceed with eyes wide open.").

Indeed, "[the] [p]laintiff's counsel has developed a fair bit of notoriety for filing cases

1

about consumer labeling" and "[m]any of the complaints have suffered the judicial equivalent of . . . an explosion on the launch pad" as "[t]hey haven't survived for long." *Guzman v. Walmart Inc.*, 2023 WL 4535903, at *3 (N.D. Ill. May 15, 2023). "In reviewing [the plaintiff's counsel's] long history of filing class action lawsuits," another court observed that "courts around the country have been inundated with a seemingly endless supply of trivial (bordering on frivolous) lawsuits, asking the courts to read the labels of consumer goods in manners that strain credulity. . . ." *Van Orden v. Hikari Sales U.S.A., Inc.,* 2023 WL 5336813, at *10 (N.D.N.Y. Aug. 18, 2023).

Despite these repeated warnings, the plaintiff's counsel apparently has no intention of restraining from continuing to file frivolous cases. When asked in a recent media profile "whether judges' warnings would affect his behavior in the future," "'No!' he said. 'Why should it? The only thing it affects is that I have to take time to respond to those demands, rather than doing work.'" (Declaration of Keara M. Gordon, dated October 24, 2023, Ex. 1.)

Here, the facts make clear that the plaintiff's counsel failed to conduct a proper investigation into the basic facts underpinning the Complaint before filing it and then, when the truth was revealed, nevertheless doubled down and continued to pursue patently meritless claims. Specifically, the plaintiff's counsel apparently failed to ask his client for basic information concerning her purported purchase from KLM, including from whom she bought the ticket (which was not KLM). Then, after KLM established that the plaintiff did not see or rely on the challenged statements and did not even buy her ticket from KLM, the plaintiff's counsel chose not to withdraw or amend the First Amended Complaint ("FAC")—even after the Court asked if he would like to amend and after the Court requested that he respond to KLM's factual challenge. (*See* ECF Nos. 22, 33.) Such actions are clear evidence of bad faith and vexatious litigation.

As a result, KLM respectfully requests that this Court, in addition to imposing sanctions

under Rule 11, consider imposing sanctions under 28 U.S.C. § 1927 ("Section 1927") and this Court's inherent power, and that it award KLM its attorneys' fees, expenses, and costs incurred in responding to the meritless Complaint and FAC, or, in the alternative, for the expenses, costs and attorneys' fees incurred after KLM filed its motion to dismiss ("Motion" or "Mot.").

## FACTUAL BACKGROUND

### A. This Court's Ruling on KLM's Motion to Dismiss.

This Court dismissed the plaintiff's case, finding that she lacked Article III standing because she did not book her airline ticket via KLM, as alleged, and did not "rely upon" any of its representations when buying it through a third party, ACIS. *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, 2023 WL 5935694, at *4-5 (S.D.N.Y. Sept. 12, 2023) (Abrams, J.) The Court found that "ACIS—and not [Ms. Dakus]—selected KLM based on a group travel contract it had with the airline, and that [Ms. Dakus] paid for her travel, via ACIS, without ever knowing the airline with which she would ultimately be traveling." *Id.*

### B. The Purported Pre-Suit Investigation.

The plaintiff's counsel admits he advertised for customers to sue KLM. (*See* Declaration of Spencer Sheehan ("Sheehan Decl.") ¶¶ 17-18.) Ms. Dakus apparently responded to his advertisement, and, as part of that response, was required to provide answers to certain pre-determined questions. (*Id.*) The plaintiff's counsel asserts that in so doing, Ms. Dakus was "required to identify the airline from which she 'recently purchased' tickets." (*Id.*) But a review of the actual online form demonstrates that while that phrase was on the first line of the website, the actual question posed was "[w]hich of the following airlines have you traveled with?" (Gordon Decl., dated October 24, 2023, Ex. 2.) Similarly, the line directly above that question asked, "If you have recently *flown* on this airline, please signup below." (*Id.* (emphasis added).)

According to the plaintiff's counsel, approximately six weeks later, he sent Ms. Dakus a

3

representation agreement. (Sheehan Decl. ¶ 19.) He then apparently spoke with Ms. Dakus once over the phone and asked her to confirm the answers she provided. (*Compare id.* ¶ 18 *with* ¶¶ 29-31.) During this call, it appears that the plaintiff's counsel did not take certain steps that would have revealed that she did not purchase her ticket from KLM and had no claim; he:

- did not ask Ms. Dakus from whom or how she bought the ticket (Declaration of Kandus Dakus ("Dakus Decl.") ¶ 33; Sheehan Decl., *generally*);

- did not ask for any documentation of her purchase or for a copy of the alleged contract;

- did not ask whether she was aware of "KLM's environmental marketing" *before her purchase* (Sheehan Decl. ¶ 35);

- did not ask whether she had visited KLM's website at any time, let alone before her purchase;

- did not ask Ms. Dakus whether she purchased Sustainable Aviation Fuel or contributed to the reforestation projects that are the subject of the Complaint; and

- did not ask Ms. Dakus whether she considered flying on airlines other than KLM, since the Complaint alleged that she "chose between KLM and other airlines which did not tout their environmental attributes." (FAC ¶ 55).

Compounding the problem, apparently the plaintiff's counsel did not require that Ms. Dakus review the Complaint to ensure that it was accurate and complete and she chose not to, but he filed it anyway. (Sheehan Decl. ¶¶ 42-43.)

### C. KLM Establishes the Claims Have no Merit.

KLM's Motion informed the plaintiff's counsel that Ms. Dakus "did not select" KLM "to fly to Europe, did not purchase her ticket . . . and may not have even paid for her ticket." (Mot. at 1.) Instead, "a third-party organization that offers group educational trips purchased Ms. Dakus' ticket and selected KLM as the airline." (*Id*. at 2.) KLM further put the plaintiff's counsel on notice that, due to its factual challenge to standing, the burden shifted to the plaintiff "to satisfy the Court, as fact-finder, of the jurisdictional facts." *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 353-54

4

(S.D.N.Y. 2002) (citation omitted) (collecting cases).

The plaintiff's counsel admits that, at that time, he "learned" that Ms. Dakus "had ACIS purchase her KLM" tickets. (Sheehan Decl. ¶ 64.) But his declaration does not indicate whether he took *any steps* to confirm the accuracy of the information KLM provided and he did not withdraw the FAC. (*See generally id.*)

### D. The Plaintiff's Counsel Continues to Assert Baseless Claims.

Pursuant to the Court's Individual Rules & Practices, the plaintiff had an opportunity to amend the FAC in response to KLM's revelations. (*See* ECF No. 22; Your Honor's Individual Rules & Practices, Rule 4(C).) Even though counsel was fully aware that Ms. Dakus did not select KLM or purchase her ticket from KLM, he chose not to amend but to proceed despite the fact that the existing allegations were false.

While the plaintiff's counsel asserts that "no papers were submitted which continued to argue that Plaintiff Dakus was a direct purchaser of the KLM tickets" (Sheehan Decl. ¶ 65), that unfortunately does not appear to be accurate. Instead, in the Opposition ("Opp.") to KLM's Motion, the plaintiff's counsel argued that "none of [KLM's] arguments are a basis for dismissal and its Motion should be denied." (Opp. at 1.) The plaintiff's counsel also made other assertions that do not square with the facts, including:

- "Had Plaintiff known that flying on KLM's airline would not 'limit the effects of climate change,' she would not have 'paid more for her flight.'" (*Id.* at 2 (quoting FAC ¶¶ 54-56));

- "Plaintiff entered into a contract with KLM 'when she paid for a flight on' its airline *based on representations* of its initiative to 'reach the goals of the Paris Agreement and preventing climate change to exceed 1.5 degrees Celsius by 2050.'" (*Id.* at 3) (emphasis added); and

- "Defendant offers no facts to support that Plaintiff 'may not have known what airline she was flying until after she agreed to the ACIS Terms and paid for her trip.'" (*Id.* at 4).

While the Motion was pending, the plaintiff's counsel found a second plaintiff to sue KLM

5

and instead of amending his existing New York action to replace Ms. Dakus as the named plaintiff, he chose instead to file a new case in a different jurisdiction. *Long v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 3:23-cv-00435 (E.D. Va. July 7, 2023). KLM has fully briefed a motion to transfer that action to this Court. (Gordon Decl., ¶¶ 5-8.)

Shortly thereafter, this Court ordered Ms. Dakus to "file any additional materials, or any additional argument, to rebut the factual challenge to jurisdiction" (ECF No. 28), in response to which Ms. Dakus filed a declaration in "Opposition" to KLM's Motion. (ECF No. 29.) This sworn statement repeatedly conflicted with Ms. Dakus' allegations in her original Complaint and her FAC and offered a new theory for why her claim was purportedly viable: she "decid[ed] not to cancel [her] trip, even though [she] could have done so" because of "KLM's promises and commitments to limit its contributions to climate change." (*Id.* ¶¶ 9, 13; *see also* ECF No. 32.)

### E. The Court's Ruling on KLM's Motion and Order to Show Cause.

In addition to dismissing Ms. Dakus' claims, the Court found the allegations in Ms. Dakus' declaration were "troublingly—directly contradictory to many allegations contained in the Complaint, and similarly fail[ed] to meaningfully rebut Defendant's factual challenge to defeat standing." *Dakus*, 2023 WL 5935694, at *5. The Court further stated that it had "serious concerns about Plaintiff's filings in this case—given the significant and direct inconsistencies between" what was alleged in the Complaint and the additional facts the plaintiff included in the supplemental declaration. *Id.* at *6. Due to these "demonstrably false" allegations, the Court ordered the plaintiff's counsel to show cause why sanctions should not be levied against him for failing to comply with Federal Rule of Civil Procedure 11(b)(3), which requires counsel to certify that "the factual contentions have evidentiary support." *Id.* The plaintiff's counsel submitted a memorandum in response to the Court's Order ("Response" or "Resp."), his declaration, and one from Ms. Dakus in support. (ECF No. 39.) The plaintiff's counsel's declaration stated that he

ceased being Ms. Dakus' lawyer after the action was "dismiss[ed] last month," and, as such, he apparently was not Ms. Dakus' attorney when he and she submitted declarations to this Court in response to the Order to Show Cause. (*See id.* ¶ 1.)

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1927, an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Likewise, a district court has the inherent power to impose sanctions where "(1) the challenged claim was without a colorable basis, and (2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir 1999).

To impose sanctions under either Section 1927 or the Court's inherent authority, "the court must find that 'the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" *Ke v. J R Sushi 2 Inc.*, 2022 WL 1496576, at *8 (S.D.N.Y. Feb. 7, 2022), *R&R adopted*, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022) (imposing sanctions) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

## ARGUMENT

**I.     Sanctions Are Warranted Under Section 1927 and the Court's Inherent Authority.**

Sanctions are warranted against the plaintiff's counsel here under both Section 1927 and the Court's inherent authority because the plaintiff's claims were not colorable and counsel repeatedly continued to pursue them after he was on notice of their falsity.

**A.     The Plaintiff's Claims Were Not Colorable.**

There was no colorable basis upon which to bring the claims in the original Complaint or

7

the FAC. "[A] claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." *Schlaifer*, 194 F.3d at 337. "The question is whether a reasonable attorney . . . 'could have concluded that facts supporting the claim might be established.'" *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 320 (S.D.N.Y. 2008). For example, in *Reichmann*, the Court sanctioned, under Section 1927 and its inherent authority, "attorneys [that] should have investigated their client's vague claims more thoroughly from the start." *Id.* at 319-320. The Court explained that counsel "were obliged to make an additional investigation into the facts underlying the client's claims before filing" and "[t]hey were obliged to investigate whether there was any factual support at all for the claims, *beyond* the representations of the client." *Id.* at 320 (emphasis added).

Here, it cannot seriously be disputed that the Complaint and FAC lacked a factual and legal basis because "ACIS—and not [Ms. Dakus]—selected KLM based on a group travel contract it had with the airline, and that [Ms. Dakus] paid for her travel, via ACIS, without ever knowing the airline with which she would ultimately be traveling." *Dakus*, 2023 WL 5935694, at *4. Accordingly, it is clear that Ms. Dakus *never* had Article III standing to bring suit against KLM nor a plausible basis to assert her claims for breach of contract and for violation of the New York General Business Law 349 and 350. A reasonable attorney would not have pursued such claims.

The plaintiff's counsel insists that it was "reasonable" for him to bring these claims because his client failed to tell him that she did not buy her ticket from KLM. (*See, e.g.,* Resp. at 8-9). But, as *Reichmann* explains, this argument turns the inquiry on its head. It is not the client's responsibility (as a non-lawyer) to inform her counsel of the pertinent facts. Instead, it is counsel's job to assess the facts necessary to ascertain whether there is standing and facially plausible claims. "A lawyer has a responsibility to examine the plausibility and supportability of the client's claims.

8

Our legal system depends on lawyers, as officers of the court, to conduct reasonable inquiries *before* asserting claims." *Reichmann,* 553 F. Supp. 2d at 325 (emphasis added).

Here, apparently, the plaintiff's counsel failed to ask Ms. Dakus basic questions about her interaction with KLM or to request proof of purchase. And, it was unreasonable not to insist that she review the Complaint before it was filed for accuracy. Because no reasonable attorney would have pursued the claims here, the claims lacked a colorable basis.

### B.   The Plaintiff's Counsel Acted in Bad Faith.

The plaintiff's counsel acted in bad faith here. "Bad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Reichmann*, 553 F. Supp. 2d at 321. The "standard is [also] met if an attorney becomes 'aware of the meritless nature of his client's claims,' yet continues to pursue the litigation." *Ke*, 2022 WL 1496576, at *8 *(*quoting (*Baiul v. NBC Sports*, 708 Fed. App'x 710, 715 (2d Cir. 2017) (summary order) (alterations omitted)).

In *Charles v. Seinfeld*, for example, the Court imposed sanctions through its inherent power on a counsel who "refused repeated opportunities to withdraw the claims" after being on notice of their infirmity. 2022 WL 889162, at *10 (S.D.N.Y. Mar. 25, 2022). The Court explained that this conduct "created unusually high costs,' . . . and delayed resolution of th[e] action" because counsel "[a]pparently" "decided to roll the dice." *Id.*

Similarly, another Court has previously imposed sanctions where, like here, the plaintiff was presented with the truth and proceeded anyway. *Kaufman v. Equifax Info. Servs., LLC*, 2019 WL 3997461, at *3 (E.D.N.Y. Aug. 22, 2019). There, the plaintiff asserted a claim under the Fair Credit Reporting Act alleging that there was an inaccurately reported late payment on his credit report. *Id.* at *1. However, the defendant explained that the late payment was "accurate" and provided "documentary evidence" in support. *Id.* The Court imposed sanctions under Section 1927

because "[i]f . . . counsel had properly investigated the factual basis for the claims before filing a complaint, plaintiff would not have brought this action in the first place." *Id.* \*3. The Court concluded,

> But counsel continued to litigate his meritless claims even after defendants provided documents clearly demonstrating that these claims were false. Plaintiff and his counsel had, but did not utilize, multiple opportunities to voluntarily dismiss these claims . . . . Under these circumstances, I find that both plaintiff and his counsel acted in bad faith in both commencing and continuing to litigate plaintiff's meritless claims.

*Id.; see also Rabin v. Dow Jones & Co.*, 665 Fed. App'x 21, 23-24 (2nd Cir. 2016) (affirming imposition of sanctions under Section 1927 where the plaintiff's counsel "failed to conduct a good-faith investigation into . . . evidence [disproving allegations] or to adjust the pleadings"); *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 126 (2d Cir. 2011) (affirming district court's award of sanctions under Section 1927 where the plaintiff's attorney "pursued claims she knew had no basis in law or fact"); *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 363 (S.D.N.Y. 2006) (imposing sanctions under Section 1927 where counsel who not only filed a meritless claim but "maintain[ed] it for so long," even after opposing counsel highlighted the defects).

The same result is compelled here. The plaintiff's counsel here acted in bad faith by: (1) conducting a woefully deficient pre-complaint investigation, which was compounded by his failure to insist that the client review the Complaint (*see, e.g.,* Factual Background, Section A, *supra*); (2) affirmatively deciding to rely on the false allegations in the FAC after being made aware of the truth (*see* ECF No. 22); (3) repeatedly failing to withdraw the false claims; (4) submitting an Opposition stating that KLM's arguments were "without merit" when they were in fact legally and factually accurate (Opp. at 4); and (5) submitting a declaration from his client in opposition to KLM's factual challenge, which asserted a new spurious theory of purported standing and injury in an attempt to keep the case alive. (ECF No. 29.) Even now, the plaintiff's counsel offers no

10

explanation why he did not dismiss the case once he became aware of the true facts. (*See generally* Sheehan Decl.). The facts therefore lead to the undeniable conclusion that the plaintiff's counsel acted in bad faith here.

II. **The Court Should Compel the Plaintiff's Counsel to Reimburse KLM For Attorneys' Fees, Costs, and Expenses Incurred.**

KLM seeks the expenses, costs, and attorneys' fees it incurred in responding to the meritless Complaint and FAC, or, in the alternative, for the expenses, costs and attorneys' fees incurred after it filed its Motion. An award of attorneys' fees under Section 1927 can include "'all work reasonably performed in' response to the meritless complaint." *Kaufmann*, 2019 WL 3997461, at *5. As one court observed about the plaintiff's counsel's frivolous filings, "Plaintiff's counsel has become a wrecking ball when it comes to imposing attorneys' fees on other people. And this Court is starting to wonder who should pay for the cleanup. At some point, even lawyers have to internalize the costs of their own behavior." *Guzman*, 2023 WL 4535903, at *4.

Courts routinely order the payment of attorneys' fees as sanctions for the type of vexatious conduct at issue here. *See, e.g., Rabin*, 665 Fed. App'x at 24 (affirming award of $144,000 in fees in meritless class action where plaintiff's counsel "failed to conduct a good-faith investigation into th[e] evidence or to adjust the pleadings"); *Baker*, 431 F. Supp. 2d at 367 (awarding fees in the amount of $65,760.50); *Johnson ex rel. U.S. v. The Univ. of Rochester Med. Ctr.*, 715 F. Supp. 2d 427, 430 (W.D.N.Y. 2010) *affirmed*, 642 F.3d 121, 126 (2d Cir. 2011) (awarding attorneys' fees because "defendants' motion to dismiss elucidated the claims' deficiencies in detail, and provided counsel with a nearly year-long window of opportunity to withdraw . . . which counsel ignored"); *Rubio v. City of New York,*, 2005 WL 1498283, at *4 (S.D.N.Y. May 31, 2005) (awarding attorneys' fees of $25,006.44 "as full reimbursement of the [defendant's] attorneys' fees and litigation costs in th[e] matter").

11

In *Kaufmann*, for example, the Court ordered the payment of the defendants' attorneys' fees in connection with defending the entire action as a sanction because if the plaintiff's "counsel had acted in good faith and ensured there was a factual basis for the complaint when it was filed, then defendants would not have had to expend any time or money on this case in the first place." 2019 WL 3997461, at *4. In so holding, this Court noted that counsel "ha[d] still not provided any explanation for their conduct or expressed any contrition for wasting defendants' time and money on this case." *Id.* at *3.

So too here. Essentially, the plaintiff's counsel's only explanation for why he did not know his client lacked Article III standing from the start is that he did not ask the right questions. (Dakus Decl. ¶ 33; Sheehan Decl. ¶ 42.) As explained above, had the plaintiff's counsel adequately investigated and confirmed the plaintiff's claims, he would not have filed the complaint and thus KLM would not have had to expend *any* time or resources responding to it (instead of the approximately one year that it was forced to defend against this case). As a result, KLM respectfully requests an award of its attorneys' fees from inception. At a minimum, KLM requests an award of the attorneys' fees that it was forced to incur following the filing of its Motion because the plaintiff's counsel repeatedly failed to withdraw the false claims.

KLM expects that the plaintiff's counsel will argue that he must be provided notice and an opportunity to be heard before the Court can impose sanctions under Section 1927. *See Hernandez v. Money Source Inc.*, 2022 WL 2702894, at *8 (E.D.N.Y. July 12, 2022). The plaintiff's counsel will have the opportunity to be heard through his reply to this response. *See George v. Pro. Disposables Int'l, Inc.*, 2018 WL 2148762, at *1 (S.D.N.Y. May 1, 2018) (Abrams, J.) (citing *Wynder v. McMahon*, 2013 WL 1759968, at *9 (E.D.N.Y. Apr. 24, 2013) ("The essence of the opportunity to be heard is the opportunity to present reasons, either in person or in writing, why

12

proposed action should not be taken.") (citation omitted))). Or the Court could order additional briefing specifically to address whether it is appropriate to impose sanctions under Section 1927.

If the Court is inclined to award KLM its attorneys' fees as sanctions, KLM requests that it be permitted to submit a bill of costs and an accompanying affidavit that demonstrate the exact sums for which it seeks reimbursement. *See, e.g.*, *Lazzarino v. Kenton Assocs., Ltd.*, 998 F. Supp. 364, 368 (S.D.N.Y. 1998) (allowing moving party to submit an affidavit to the court showing attorneys' fees and costs incurred after granting sanctions pursuant to the court's inherent power).

## CONCLUSION

KLM respectfully requests that this Court impose sanctions against the plaintiff's counsel and compel him to pay KLM's attorneys' fees, expenses, and costs incurred in in this case in its entirety, or, in the alternative, for the attorneys' fees, expenses, and costs incurred after it filed its Motion.


Dated: October 24, 2023                              Respectfully submitted,

                                                     DLA Piper LLP (US)

                                                     */s/ Keara M. Gordon*
                                                     Keara M. Gordon

                                                     *Attorney for Defendant*
                                                     *Koninklijke Luchtvaart Maatschappij, N.V.*

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on October 24, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and thereby served on the following counsel:

Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck, NY 11021
spencer@spencersheehan.com

Daniel R. Rose
Costello, Cooney & Fearon, PLLC
211 West Jefferson Street, Suite 1
Syracuse, NY 13202


Dated: October 24, 2023

<u>*/s/ Keara M. Gordon*</u>
Keara M. Gordon