UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

KANDUS DAKUS,

                              Plaintiff,

                v.

KONINKLIJKE LUCHTVAART
MAATSCHAPPIJ, N.V.,

                              Defendant.

No. 22-CV-7962 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

In September 2017, Plaintiff Kandus Dakus filed this action against Defendant Dutch airline Koninklijke Luchtvaart Maatschappij, N.V. ("KLM") on behalf of consumers who had purchased flight tickets. She alleged that KLM had enticed her and others' purchases by misrepresenting its commitment to climate goals. During the litigation, however, it became apparent that Dakus' complaint contained false allegations. She had not in fact relied on KLM's representations in purchasing tickets because she had used a third-party travel booking service and had not herself selected an airline. Nonetheless, Dakus' lawyer, Spencer Sheehan, continued to pursue her claims. This Court then ordered Sheehan to show cause why it should not, on its own initiative, impose sanctions on him for filing the complaint and continuing to pursue Dakus' claims after he was on notice of the allegations' falsity. For the reasons that follow, the Court imposes sanctions on Sheehan under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11.

## BACKGROUND

Spencer Sheehan is a highly prolific class action attorney who, according to a recent *New Yorker* article, once "proudly" stated: "I've never been sanctioned by a court for filing anything frivolous." Dkt 41, ex. 1 at 1. He has since been subject to monetary sanctions, while a "chorus of courts around this nation [have] warn[ed] [him] to abide by the standards and rules governing [the

legal] profession." *Durant v. Big Lots, Inc.*, No. 23-CV-561, 2024 WL 3321879, at *7 (M.D. Fla. July 3, 2024); *see, e.g.*, *Reyes v. Upfield US Inc.*, 694 F. Supp. 3d 408, 429 n.3, 430 n.4 (S.D.N.Y. Sept. 26, 2023); *Brownell v. Starbucks Coffee Co.*, 681 F. Supp. 3d 27, 42 (N.D.N.Y. July 12, 2023); *Lesorgen v. Mondelēz Glob., LLC*, 674 F. Supp. 3d 459, 466 (N.D. Ill. May 19, 2023); *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *6 n.1 (S.D.N.Y. Mar. 21, 2022); *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *9 n.3 (S.D.N.Y. Mar. 18, 2022).

In September 2017, Sheehan filed a putative class action against KLM on behalf of his client, Kandus Dakus. According to the complaint, KLM had enticed ticket purchases by misleading consumers about its environmental commitments. *See* Dkt. 1. An amended complaint (the "complaint"), filed in December 2022, asserted claims under New York General Business Law §§ 349 and 350 and other states' similar consumer fraud statutes, as well as common law claims for breach of contract and unjust enrichment. *See* Dkt. 13, ¶¶ 64–67. Like the original complaint, *see* Dkt. 1, ¶¶ 47–49, the amended complaint alleged that

- [Dakus] relied on the [certain] words, promises, commitments, plans, and pictures by KLM about its efforts to limit the effects of climate change when she purchased her flight;

- [Dakus] chose between KLM and other airlines which did not tout their environmental attributes; and

- [Dakus] paid more for her flight on KLM than she would have paid absent its false and misleading statements and omissions,

*id*. ¶¶ 54–56.

KLM filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in January 2023. *See* Dkt. 19. Under Rule 12(b)(1), KLM challenged Dakus' factual allegations regarding jurisdiction and argued that she lacked constitutional standing. *See* Dkt. 20 at 9–11. Supporting documentation revealed that Dakus had used a third-party travel booking service and had not herself chosen KLM as her airline. *See* Dkt. 21, exs. 1, 3. In an attached declaration, a KLM senior vice president represented that "KLM's records reflect[ed] that Ms. Dakus did not purchase her ticket"

and that a third-party organization, the American Council for INTL Studies ("ACIS"), had instead booked her flight. *See* Dkt. 21, ex. 1 ¶ 5. ACIS' Terms and Conditions, meanwhile, indicated that it only provides airline information to customers *after* payment is remitted. *See id*., ex. 3. Dakus thus could not have relied on KLM's representations about its climate commitments in choosing to book a KLM flight, as her complaint alleged.

Dakus' opposition to KLM's motion to dismiss did not directly address the factual challenge and instead relied on the familiar Rule 12(b)(6) standard that a court "must accept all well pleaded allegations as true." Dkt. 24 at 2. It further argued that KLM had "offer[ed] no facts to support [the proposition] that [Dakus] may not have known what airline she was flying until after she agreed to the ACIS Terms and paid for her trip." Dkt. 24 at 4.

In its reply brief, KLM rightly noted that Dakus' opposition had not addressed its factual challenge. It further filed multiple letters providing supplemental authority in support of its motion to dismiss. The Court then ordered Dakus to file any additional materials or arguments rebutting KLM's factual challenge. *See* Dkt. 28.

In response, Dakus filed a two-page supplemental declaration containing statements that were flatly inconsistent with the complaint. Contrary to her complaint's assertion that she had relied on KLM's representations in booking a KLM flight, she admitted that she "was not initially aware that the flights arranged by ACIS would be with KLM"—though she was allegedly "informed of this prior to [her] travel." Dkt. 29 at ¶ 10. According to her declaration, Dakus "learned about [KLM's] promises and commitments to limit its contributions to climate change" and then "relied, in part, on [them] in deciding *not to cancel* [her] trip." *Id*. ¶¶ 11, 13 (emphasis added). KLM then filed a letter outlining the inconsistencies between the complaint and Dakus' supplemental declaration. *See* Dkt. 32 at 2. At no point did Sheehan withdraw the complaint or seek leave to amend it.

In September 2023, the Court dismissed Dakus' complaint for lack of standing. *See* Dkt. 33. In addition, it ordered Sheehan to show cause as to why it should not impose sanctions on him under

Federal Rule of Civil Procedure 11. *See id.* at 13–14. The Court observed that allegations in Dakus'

complaint were "demonstrably false." *Id.* at 13. It continued: "[B]y [Dakus'] own admission in her

supplemental declaration, her counsel's certification to the Court with that filing appears to have

violated Rule 11(b)(3)," *id.*, which provides that

> [b]y presenting to the court a pleading, written motion, or any other paper, [an attorney]
> certifies that to the best of the person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances [that] the factual contentions have
> evidentiary support.

Fed. R. Civ. P. 11(b)(3).

In response, Sheehan submitted a declaration in which he maintained that when he drafted and

filed the complaint he reasonably believed that there was evidentiary support for the identified

allegations. *See* Dkt. 39 at 8–9; *id.*, ex. 1 ¶¶ 57–58. He explained that he had sought a representative

plaintiff for an action against KLM by distributing an advertisement; Dakus responded to that

advertisement, after which he spoke with her by telephone. *See* Dkt. 39 at 7–8; *id.*, ex. 1 ¶¶ 14–17, 21.

According to Sheehan, during that call, Dakus "confirmed [that] she [had] purchased" KLM tickets.

*Id.*, ex. 1 ¶ 29. She further "told [him] that KLM's claims about its environmental commitments [had]

been] a factor in her decision to fly with KLM." *Id.* ¶ 39. Sheehan "reviewed the outline of the

complaint," *id.* ¶ 40, [with Dakus] before filing it, *id.* ¶ 46. After filing it, he provided her with a copy,

*id.*, and she did not inform him that any allegations in it were false. *See id.* ¶ 47. Nevertheless, Sheehan

now admits that he "should have been more precise," *id.* ¶¶ 52, 55, and "exacting," *id.* ¶ 56, in

interviewing Dakus and expressed "[r]egret[]," *id.* ¶ 67, that he had not asked critical questions.

In January 2024, the Court issued another order to show cause, specifically seeking a response

as to why it should not impose sanctions under 28 U.S.C. § 1927 or Rule 11 for Sheehan's continued

pursuit of Dakus' claims. *See* Dkt. 46.[1] It explained that "[e]ven assuming counsel initially believed

---

[1] The Court's also ordered Sheehan to show cause why it should not sanction him under its inherent power. However, where "there is bad-faith conduct . . . that could be adequately sanctioned under the Rules [or 28 U.S.C. § 1927], the court ordinarily should rely on the Rules [and § 1927] rather than the inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). The Court thus does not consider whether to sanction Sheehan under its inherent power.

that evidentiary support existed, he appears to have acted in bad faith once he was on notice of the falsity of [Dakus'] allegations." *Id.* In his response, Sheehan again emphasized that he did not know the allegations were false when he filed the complaint. *See* Dkt. 47 at 4; *id.*, ex. 1 ¶ 13. He also underscored that, upon learning the true facts of Dakus' purchase, she disclosed those facts in her supplemental declaration, at which time he "advocated for an alternative theory of standing." *Id.*, ex. 1 ¶ 17.

## DISCUSSION

The Court *sua sponte*—that is, by its own initiative—considers whether Spencer Sheehan's conduct is sanctionable under 28 U.S.C. § 1927 or Rule 11. It concludes that it is. Although the Court does not have evidence sufficient to sanction Sheehan for his initial filing of the complaint, his continued pursuit of the claims once he knew it contained false allegations is sanctionable under both 28 U.S.C. § 1927 and Rule 11.

### I.    **28 U.S.C. § 1927**

Under 28 U.S.C. § 1927, a court maintains the discretion to order "[a]ny attorney . . . who so multiplies . . . proceedings . . . unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see Crown Awards, Inc. v. Trophy Depot, Inc.*, No. 15-CV-1178, 2017 WL 564885, at *14 (S.D.N.Y. Feb. 13, 2017) (collecting cases).[2] To impose sanctions, the "court must find clear evidence that (1) the offending party's . . . [actions] were entirely without color[] and (2) the . . . [party acted] in bad faith." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000); *see also United States v. Int'l Bhd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991). An attorney's actions are "without color" when they

---

[2] Unless otherwise indicated, this opinion and order omits all internal quotations marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

"lack[] any legal or factual basis." *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

Actions are in "bad faith," meanwhile, when "improper purposes such as harassment or delay" "motivate[]" them. *Eisemann*, 204 F.3d at 396. At times, "[an] attorney's actions are so completely without merit [that they] require the conclusion that they must have been undertaken for some improper purpose." *Int'l Bhd. of Teamsters,* 948 F.2d at 1345. Numerous courts have accordingly sanctioned attorneys who continued to pursue claims after learning that a central allegation was false. In *Baiul v. NBC Sports*, for example, the Second Circuit concluded that an attorney's conduct was sanctionable where he "advanced claims based on a written agreement for over a year after learning that [none] existed." 708 F. App'x 710, 715 (2d Cir. 2017). In addition, in *Yi Mei Ke v. J R Sushi 2 Inc.*, the court found that counsel had acted in bad faith by continuing to pursue labor law claims after testimony established that the plaintiff had sued the wrong employer. No. 19-CV-7332, 2022 WL 1496576, at *12 (S.D.N.Y. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022); *see also Ji Li v. New Ichiro Sushi, Inc.*, No. 14-CV-10242, 2020 WL 2094095, at *11 (S.D.N.Y. Apr. 30, 2020), *aff'd*, No. 20-1783-CV, 2021 WL 6105491 (2d Cir. Dec. 21, 2021) (imposing sanctions where counsel continued to pursue claims after evidence at trial established that the plaintiff had sued incorrect defendants). The court similarly imposed sanctions in *Kaufman v. Equifax Information Services, LLC*, where counsel "continued to litigate . . . meritless claims even after defendants provided documents clearly demonstrating that these claims were false." No. 18-CV-7420, 2019 WL 3997461, at *3 (E.D.N.Y. Aug. 22, 2019).

As an initial matter, the Court does not find that Sheehan acted in "bad faith" when he initially filed Dakus' complaint. *Eisemann*, 204 F.3d at 396. According to Sheehan, he spoke with Dakus by phone before he filed the complaint. *See* Dkt. 39, ex. 1 ¶ 21. During that call, Dakus purportedly "confirmed [that] she [had] purchased" KLM tickets. *Id.* ¶ 29. She further "told [him] that KLM's claims about its environmental commitments were a factor in her decision to fly with KLM." *Id.* ¶ 39.

Sheehan, moreover, maintains that he "reviewed the outline of the complaint," *id*. ¶ 40, with Dakus before filing it. When he provided her with a copy of it after its filing, Dakus, he says, did not inform him that any allegations in it were false. *See id*. ¶¶ 46–47. As Sheehan rightly acknowledges, however, he "should have been more precise," Dkt. 39, ex. 1 ¶¶ 52, 55, and "exacting," *id*. ¶ 56, in interviewing Dakus. Regardless, the Court does not have reason to believe that his filing of the complaint was "so completely without merit [that it] require[s] the conclusion that [it] must have been [done] for some improper purpose." *Int'l Bhd. of Teamsters,* 948 F.2d at 1345. The Court thus does not find his filing of the complaint sanctionable under 28 U.S.C. § 1927.[3]

By contrast, Sheehan's continued pursuit of Dakus' claims after KLM filed its motion to dismiss is sanctionable. The Court first finds "clear evidence" that his actions "were entirely without color." *Wolters Kluwer Fin. Servs. Inc.*, 564 F.3d at 114. Sheehan opposed KLM's motion to dismiss after it provided evidence demonstrating the allegations necessary to establish standing were false. Contrary to Paragraphs 54 through 56 of the complaint, Dakus did not rely on KLM's representations about its environmental commitments in choosing to purchase KLM tickets: She had used a third-party travel booking service and had not herself even chosen KLM as her airline. *See* Dkt. 21, exs. 1–4. Declining to withdraw or amend the complaint, Sheehan ignored these truths and continued to maintain that had Dakus "known that flying on KLM . . . would not limit the effects of climate change, she would not have paid more for her flight." Dkt. 24 at 2. At the same time, he improperly relied on the Rule 12(b)(6) standard that a court "must accept all well pleaded allegations as true." *Id*. The allegations, of course, were not true, and Sheehan's continued pursuit "lack[ed] any legal or factual basis." *Wolters Kluwer Fin. Servs. Inc*, 564 F.3d at 114.

---

[3] In any event, the Court may not impose sanctions under 28 U.S.C. § 1927 for the filing of the complaint because it initially notified Sheehan that it was considering sanctions for his filing of the complaint under Rule 11, not § 1927. *See* Dkt. 33, at 13–14; *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997) ("An attorney must be forewarned of *the authority under which sanctions are being considered*, and [be] given a chance to defend himself against specific charges." (emphasis added)). The Court's subsequent order to show cause, moreover—which referenced both Rule 11 and 28 U.S.C. § 1927—focused exclusively on Sheehan's continued advocacy of the complaint rather than its initial filing. *See* Dkt. 46.

The Court further finds that Sheehan acted in "bad faith" in continuing to pursue Dakus' claims. *Eisemann*, 204 F.3d at 396. Similar to the counsel in *Baiul*, *Yi Mei Ke*, and *Kaufman*, Sheehan continued to pursue his client's claims after receiving clear notice—through KLM's motion to dismiss—that allegations central to those claims were false. And he continued to do so even after the Court ordered him to "file any additional materials or arguments rebutting KLM's factual challenge." Dkt. 28. This continued pursuit was "so completely without merit [that it] require[s] the conclusion that [it] must have been undertaken for some improper purpose." *Int'l Bhd. of Teamsters*, 948 F.2d at 1345.

Sheehan seeks to defend his actions on the basis that he "advocated for an alternative theory of standing," Dkt. 47., ex. 1 ¶ 17, when confronted with the truth—thereby suggesting his actions had a "legal or factual basis," *Wolters Kluwer Fin. Servs. Inc*, 564 F.3d at 114. This "advoca[cy]" apparently refers to Dakus' supplemental declaration—filed in response to the Court's order—stating that, *after* purchasing her ticket, she learned about KLM's representations and relied on them "in *deciding not to cancel* [her] trip." Dkt. 29 ¶¶ 11, 13 (emphasis added). But these new facts—even assuming they would be sufficient to establish standing—could not have supplanted the false allegations in the complaint. "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (recognizing that a party may not amend its complaint through statements made in opposition to a motion to dismiss). His continued pursuit of the claims was thus still "entirely without color." *Eisemann*, 204 F.3d at 396.

Sheehan also suggests that he did not act in "bad faith," *Eisemann*, 204 F.3d at 396, because he still believed that Dakus had been offered various flight options and had chosen KLM as her airline until he began preparing her supplemental declaration, Dkt. 47, ex. 1 ¶ 14. But the notice Sheehan received through KLM's motion to dismiss entirely undercuts his purported belief. In a declaration

supporting the motion, a KLM senior vice president noted that "KLM's records reflect[ed] that Ms. Dakus did not purchase her ticket" and that ACIS had booked her flight. *See* Dkt. 21, ex. 1 ¶ 5. According to ACIS' Terms and Conditions, moreover, "[t]he particular airline used [for a given trip] [was to] be determined by ACIS," *id.*, ex. 3 at 1, which would provide airline information to customers *after* payment was remitted. *See id.*, ex. 3.

Sheehan nonetheless failed to directly address KLM's factual challenge to the jurisdictional allegations in opposing the motion to dismiss. Instead, he—incorrectly—asserted that the Court had to "accept all well pleaded allegations as true." Dkt. 24 at 2. As the Second Circuit explained in *Carter v. HealthPort Technologies, LLC*, however, where a defendant proffers evidence "reveal[ing] the existence of factual problems in the assertion of jurisdiction," the plaintiff must "come forward with evidence of [its] own to controvert" that evidence. 822 F.3d 47, 57 (2d Cir. 2016). Sheehan did no such thing. To the contrary, he argued that KLM had "offer[ed] no facts to support [the proposition] that [Dakus] may not have known what airline she was flying until after she agreed to the ACIS Terms and paid for her trip." Dkt. 24 at 4. In short, KLM's notice, coupled with Sheehan's litigation strategy in the face of such notice, belies his assertion about when he came to believe the allegations were false. Dkt. 47, ex. 1 ¶ 14. The Court thus remains convinced Sheehan's continued pursuit was "so completely without merit [that it] require[s] the conclusion that [it] must have been undertaken for some improper purpose." *Int'l Bhd. of Teamsters*, 948 F.2d at 1345.

In light of Sheehan's sanctionable conduct, the Court awards KLM "the excess costs, expenses, and attorneys' fees reasonably incurred" after KLM filed its motion to dismiss. 28 U.S.C. § 1927.

## II. Rule 11

Like under § 1927, Sheehan's continued advocacy of Dakus' complaint—but not his initial filing of it—is sanctionable under Federal Rule of Civil Procedure 11.

Rule 11(b) sets forth several certification requirements for attorneys' representations to the court. Under Rule 11(b)(3), for example, an attorney who "present[s]" a pleading to the court "whether

by signing, filing, submitting, or *later advocating it* . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3) (emphasis added). A court may exercise its discretion to "impose an appropriate sanction on any attorney . . . that violated the rule" upon "notice and a reasonable opportunity to respond," Fed. R. Civ. P. 11(c)(1); *see Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir. 1998)—although it may not award attorneys' fees *sua sponte*, *see Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 94 (2d Cir. 1999). In doing so, it must "resolve all doubts in favor of the signer." *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir. 1989).

Typically, "liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009). "When a court initiates Rule 11 sanctions *sua sponte* and the opportunity to correct or withdraw the challenged submission is unavailable," however, a heightened standard applies: "[T]he court must make a finding of [subjective] bad faith on the part of the attorney before imposing the sanctions." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822 (2024); *see In re Pennie & Edmonds LLP*, 323 F.3d 86, 87, 91–92 (2d Cir. 2003); *see also Cameron Int'l Trading Co. v. Hawk Imps., Inc.*, 486 F. App'x 963, 964 (2d Cir. 2012) (applying the "bad faith" standard where the court issued an order to show cause alongside the dismissal of a complaint).

"[C]ourts in this Circuit have found subjective bad faith in a variety of [circumstances]." *Cardona v. Mohabir*, No. 14-CV-1596, 2014 WL 1804793, at *3 (S.D.N.Y. May 6, 2014). Among those are cases in which an attorney had "actual knowledge" that he was advocating a pleading that relied on falsehoods. *Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*, No. 11-CV-4383, 2015 WL 4389893, at *14 (S.D.N.Y. July 10, 2015); *see also Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 464 (S.D.N.Y. 2023) (imposing sanctions where the respondents "advocated for . . . fake cases and

legal arguments . . . after being informed by their adversary's submission that their citations were non-existent and could not be found"). In *Chien v. Skystar Bio Pharm. Co*., for instance, the court imposed sanctions on an attorney who "continued to advocate for [a] . . . complaint" that he knew contained falsehoods rather than amend or withdraw it. 256 F.R.D. 67, 75 (D. Conn. 2009), *aff'd*, 378 F. App'x 109 (2d Cir. 2010). Similarly, in *Adams v. New York State Education Department*, the court imposed a "substantial monetary sanction" on an attorney who "willful[ly] persiste[d]" in advocating claims "despite warnings that those claims lacked evidentiary support." No. 08-CV-5996, 2010 WL 4970011, at *12 (S.D.N.Y. Dec. 8, 2010), *report and recommendation adopted as modified sub nom. Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205 (S.D.N.Y. 2012), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013).

For the same reasons articulated above, the Court does not find that Sheehan acted with subjective bad faith when initially filing Dakus' complaint. Sheehan affirms that he spoke with Dakus before filing the complaint and reviewed an outline of it with her. *See* Dkt. 39, ex. 1 ¶¶ 21, 40. During their conversation, Dakus confirmed her purchase of KLM tickets, *see id*. ¶ 29, and "told [him] that KLM's claims about its environmental commitments" factored into her flight choice, *see id*. ¶ 39. "[R]esolv[ing] all doubts" in Sheehan's "favor," *Cross & Cross Props., Ltd.*, 886 F.2d at 504, the Court does not have reason to believe that he had "actual knowledge" that the complaint's "factual contentions" lacked "evidentiary support," Fed. R. Civ. P. 11(b)(3), at the time of filing.

By contrast, the Court finds that Sheehan did act with "subjective bad faith" in continuing to advocate Dakus' complaint once KLM filed its motion to dismiss. Sheehan freely admits that he knew her allegations were false once Dakus filed her supplemental declaration. *See* Dkt. 47, ex. 1 ¶¶ 14–15. And, as discussed earlier, KLM's notice, coupled with Sheehan's litigation strategy in the face of that notice, leaves the Court without any doubt that he had "actual knowledge" that the allegations were false even before that point. *Braun ex rel. Advanced Battery Techs., Inc.*, 2015 WL 4389893, at *14.

Despite this knowledge, Sheehan declined to withdraw or amend the complaint, leaving KLM to file a reply brief and letters addressing a variety of arguments, and the Court to rule on the motion to dismiss.

The Court accordingly imposes a $1,000 fine to be deposited with the Clerk of Court.

## CONCLUSION

Spencer Sheehan's continued pursuit of Dakus' claims after KLM notified him that the complaint contained critical false allegations is sanctionable under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11.

Under § 1927, the Court imposes on Sheehan the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Within fourteen days of this opinion and order, KLM shall file an affidavit setting forth "the excess costs, expenses, and attorneys' fees reasonably incurred" after KLM filed its motion to dismiss. 28 U.S.C. § 1927. Sheehan shall file any response within seven days, and KLM may file a reply within seven days thereafter. In addition, under Rule 11, the Court imposes a $1,000 fine to be deposited with the Clerk of Court within fourteen days of this opinion and order.

Finally, the Court expresses its hope that Sheehan has learned a valuable lesson here—not simply that he "should [be] more precise," Dkt. 39, ex. 1 ¶¶ 52, 55, and "exacting," *id*. ¶ 56—but that he, "as [an] officer[] of the court," must "properly temper[] [his] enthusiasm for a client's cause with careful regard for the obligations of truth, candor, accuracy, and professional judgment," *Oliveri v. Thompson*, 803 F.2d 1265, 1267 (2d Cir. 1986).

Dated:    September 23, 2024
          New York, New York

Ronnie Abrams
United States District Judge