UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KANDAS DAKUS, individually and on behalf          :
of all others similarly situated                            :
                                                                        :
                                Plaintiff,                        :
                                                                        :
            - against -                                         :            22-CV-7962 (RA) (RWL)
                                                                        :
KONINKLIJKE LUCHTVAART                             :      **REPORT AND RECOMMENDATION**
MAATSCHAPPIJ, N.V.,                                       :         **TO HON. RONNIE ABRAMS:**
                                                                        :        <u>**ATTORNEY'S FEES AND COSTS**</u>
                                Defendant,                    :
                                                                        :
            - against -                                         :
                                                                        :
SPENCER SHEEHAN,                                      :
                                                                        :
                                Respondent.                 :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

        This case began as a putative class action by Plaintiff Kandus Dakus against

Defendant Koninklijke Luchtvaart Maatschappij, N.V. ("KLM"), the Dutch airline, for

alleged false advertising of KLM's commitment to climate goals.  The Court dismissed the

case and has awarded sanctions against Plaintiff's counsel, Spencer Sheehan, pursuant

to 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11 ("Rule 11"), based on his

having continued to prosecute the case after KLM filed its motion to dismiss.  The matter

has been referred to me to determine the reasonable attorney's fees and costs to be paid

as sanctions by Sheehan to KLM.

**Background**

        Dakus filed the instant action on September 17, 2022.  (Dkt. 1.)  She filed an

amended complaint on December 14, 2022.  (Dkt. 13.)  KLM moved to dismiss the

amended complaint for lack of standing and failure to state a claim.  (Dkts. 19-21.)  In

1

support of its motion, KLM provided factual proof that Dakus had not herself chosen KLM or purchased her airline ticket; a travel booking service did so. (Dkt. 53 at 2.)  In other words, Dakus could not have relied on KLM's advertising in making her purchase and, consequently, she had no plausible claim.  (*Id.* at 3.)

Rather than withdraw the amended complaint, Dakus opposed the motion to dismiss (Dkt. 24), to which KLM filed a reply (Dkt. 25) and later filed two notices of supplemental authority (Dkts. 26-27).    On July 13, 2023, the Court ordered Dakus to file any additional materials or arguments rebutting KLM's factual challenge.  (Dkt. 28.)  In response, Dakus filed a supplemental declaration (Dkt. 29) containing statements that "were flatly inconsistent" with the amended complaint.  (Dkt. 53 at 3.)  At the Court's invitation (Dkt. 31), KLM filed a response to the supplemental Dakus declaration addressing its inconsistencies.  (Dkt. 32.)

On September 12, 2023, the Court ruled on KLM's motion, dismissing the amended complaint for lack of standing.  (Dkt. 33.)  The Court's decision stated that the allegations in the complaint were "demonstrably false" and ordered Sheehan to show cause why the Court should not impose sanctions on him pursuant to Rule 11.  (*Id.* at 13-14.)  On October 10, 2023, Sheehan filed a brief and declaration in his defense (Dkt. 39), to which KLM filed an opposing brief (Dkt. 41), and Sheehan replied (Dkt. 42).  KLM filed a sur-reply (Dkt. 44) to which Sheehan objected.  (Dkt. 45.)

On January 5, 2024, the Court issued another order to show cause giving Sheehan "one more opportunity to convince [the Court] that he did not act in bad faith" and explaining why he should not be sanctioned under 28 U.S.C. § 1927 or Rule 11 for continued pursuit of Dakus's claims.  (Dkt. 46.)  Sheehan filed a responding brief on

January 25, 2024 (Dkt. 47); KLM filed an opposing brief (Dkt. 49); and Sheehan replied (Dkt. 50). A few months later, KLM filed a third notice of supplemental authority. (Dkt. 52.)

On September 23, 2024, the Court issued its decision. (Dkt. 53.) The Court found that Sheehan "acted in 'bad faith' in continuing to pursue Dakus' claims" after KLM filed its motion to dismiss. (*Id.* at 8.) The Court determined that Sheehan's conduct was sanctionable and awarded KLM "'the excess costs, expenses and attorneys' fees reasonably incurred' after KLM filed its motion to dismiss." (*Id.* at 9 (quoting 28 U.S.C. § 1927).) The Court additionally sanctioned Sheehan under Rule 11, requiring him to pay $1,000 to the Clerk of Court. (*Id.* at 12.)

The Court directed KLM to file an affidavit in support of the amount of fees and costs to be awarded pursuant to 28 U.S.C. § 1927. (*Id.* at 12.) On October 7, 2024, KLM filed the Declaration of Keara M. Gordon ("Gordon Decl."), a partner with KLM's law firm, DLA Piper LLP (US), in support of costs, expenses, and attorney's fees. (Dkt. 55.) Sheehan filed an opposing brief on October 14, 2024 ("Opp."). (Dkt. 56.) KLM replied on October 21, 2024, filing both a brief ("Reply") and a Second Declaration of Keara M. Gordon ("Second Gordon Decl."), along with copies of the billing records for time spent on the case after the motion to dismiss had been filed (Second Gordon Decl. Ex. 1). (Dkt. 58.) The matter was referred to me on March 7, 2025, to determine the appropriate attorney's fee and cost award. (Dkt. 61.)

## Determination of Reasonable Legal Fees

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). The Second Circuit has held that "the

3

lodestar … creates a 'presumptively reasonable fee.'" *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673 (2010)); *see also Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (reaffirming *Millea*).

To arrive at a lodestar calculation, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). KLM has submitted such evidence here, including declarations from counsel and copies of contemporaneous records of time expended by attorneys and paralegals.[1] (Dkts. 55, 58.) In total, KLM requests attorney's fees in the amount of $116,566.20 for 146.2 hours of work. (Reply at 10 & n.4; Second Gordon Decl. ¶¶ 5, 9-31.)

---

[1] In its initial submission on attorney's fees, KLM did not include copies of its attorney's contemporaneous billing records but offered to provide them to the Court for *in camera* review. With its reply, KLM included copies of the billing records but with redaction of all descriptions of work performed. The Court asked for and reviewed the unredacted records in camera, determined that most of the descriptions did not reveal information protected by attorney-client privilege or the work product doctrine, and ordered that KLM provide Sheehan with revised copies. (Dkt. 62.) KLM complied. (Dkt. 64.) The Court provided Sheehan an opportunity to file a supplement in opposition based on review of the unredacted billing records. (Dkt. 62.) Sheehan filed that supplement on March 28, 2025. (Dkt. 66.) As Sheehan had the opportunity to review and comment on substantive billing records, his arguments that he was deprived of "any meaningful review of the time spent on any of the various tasks" and "a reasonable opportunity to review and respond" to the fees billed is moot. (*See* Opp. at 6-9.) The time spent by KLM in unredacting and producing the revised set of billing records is not included within the fees sought by KLM, nor should it be.

A.    **Hourly Rates**

A "reasonable hourly rate is the rate a paying client would be willing to pay." *McDaniel v. County of Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010) (internal quotation marks and citation omitted).   "The rates to be used in calculating the ... lodestar are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896, 104 S. Ct. 1541, 1547 n.11 (1984)).   The relevant community here is the Southern District of New York in New York City.   *Vista Outdoor Inc. v. Reeves Family Trust*, No. 16-CV-5766, 2018 WL 3104631, at *5 (S.D.N.Y. May 24, 2018).   "The rates used by the court should be current rather than historic hourly rates."   *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citation omitted).   "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted."   *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks and citation omitted).   "[T]he range of rates that … counsel actually charge their clients … is obviously strong evidence of what the market will bear."   *Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

In exercising their discretion, courts determining a reasonable hourly rate "should bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."   *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019)

(internal quotation marks, brackets, and citation omitted).  Potentially applicable factors include the so-called *Johnson* factors, such as the level of skill required to properly perform the legal service, the novelty and difficulty of the issues presented, and the hourly rate regularly charged by the attorneys to their clients.[2]  Courts "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and that "an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* (internal quotation marks and citation omitted).

Here, KLM was represented by the law firm DLA Piper LLP (US) ("the Firm").  The following table summarizes information about the timekeepers and the hourly rates charged:

| Name | Title | Location | Rate Billed |
|---|---|---|---|
| Gordon, Keara | Partner | New York City | $1,195 |
| Gulliver, Colleen | Partner | New York City | $995 |
| Torrey, Haley | Senior Attorney | Philadelphia | $790 |
| Reichart, William | Associate | Baltimore | $685 |
| Roche, Caleb | Associate | New York City | $608 |

---

[2] The twelve *Johnson* factors are: (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the level of skill required to perform the legal service properly; (iv) the preclusion of employment by the attorney due to acceptance of the case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed by the client or the circumstances; (viii) the amount involved in the case and results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.  *Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989)).

| Ehrenberg, Heather | Paralegal | New York City | $415 |
| Alcibar-Zucker, Athenais | Paralegal | New York City | $259 |

(Gordon Decl. ¶ 4.)   The Firm billed KLM at discounted rates; accordingly, the rates reflected above are less than what the Firm ordinarily charges its clients.  (*Id.* ¶ 36.)  KLM agreed to the rates charged and paid them.  (*Id.* ¶¶ 3, 36.)

Except as explained below, the Court finds that the hourly rates charged are reasonable.  The rates charged generally are in line with hourly rates for non-routine, commercial matters in this District.  *See, e.g.*, *Dennis v. JPMorgan Chase & Co.*, No. 16-CV-6496, 2023 WL 3646801, at *2 (S.D.N.Y. May 25, 2023) (finding reasonable hourly rates ranging from $185 to $1,295 in class action) (for identification of rates, see Dkt. 555 at 14-15); *Tessemae's LLC v. Atlantis Capital LLC*, No. 18-CV-4902, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) (collecting cases supporting reasonableness of hourly rates ranging from $250 to $1,260 per hour for work on "a commercial litigation matter"); *Vista Outdoor*, 2018 WL 3104631, at *6 (finding reasonable hourly billing rates for partners of $1,170 in 2016, $1,195 in 2017, and $1,260 in 2018, while discounting by 25% associate rates of $615 to $925 in 2018).  For routine cases, the rates charged may well be considered high.  But the instant case was not routine as it was brought as a class action alleging false advertising against a worldwide airline.  That the case ended early due to the Firm's successful work, before the parties had to deal with extensive discovery and complex substantive issues, does not detract from the reasonableness of the fees charged at the outset.  Moreover, the rates charged were accepted and paid by KLM, and those rates are below those the Firm regularly charges clients.

The rates charged also are supported by the experience of the Firm and the lawyers who worked on the case.  The Firm has been highly rated in several practice areas relevant to the instant case.  (*See* Gordon Decl. ¶ 7.)  The legal team that worked on the case "has extensive experience defending clients, including aviation clients, in consumer class actions, has litigated dozens of cases before this Court including the types of putative class claims Ms. Dakus asserted" and even has "substantial experience litigating against Mr. Spencer Sheehan" in particular.  (*Id.*)  Keara Gordon, who led the team, has over 30 years of experience defending class actions and complex litigations in a variety of substantive areas and industries in both state and federal courts, and is recognized for her prowess in general commercial litigation by Chambers & Partners.  (*Id.* ¶ 5.)

The Court has reviewed the Firm biographies for Ms. Gordon and the four other attorneys who billed time to the case and, with one exception, finds their experience commensurate with their billing rates.  (*See id.* Ex. A.)  The exception is Caleb Roche. The information provided about Mr. Roche is bare, reflecting that he has a law degree but lacking any other information indicating his level of seniority or experience.  The Court therefore does not have sufficient basis to evaluate the rate charged for him and could exclude his time entirely.  *See Custodio v. American Chain Link & Construction, Inc.*, No. 08-CV-7148, 2014 WL 116147, at *2, *7 (S.D.N.Y. Jan. 13, 2014) (rejecting fees for attorneys for whom no substantive experiential information was provided and stating "Judges in this district have routinely denied requests for attorney's fees where applications were not properly supported by information on attorneys' qualifications and experience"); *United States ex rel. ATC Distribution Group, Inc. v. Ready-Built*

*Transmissions, Inc.*, No. 03-CV-2150, 2007 WL 2522638, at *3 (S.D.N.Y. Sept. 7, 2007) (disallowing fees for timekeeper for whom firm provided no credentials and experience). However, given that the information provided indicates that Mr. Roche has at least graduated law school, and identifies him as an associate rather than a law clerk (indicative of having passed the bar exam), fees should be awarded as if he were at least a first-year associate. *See Capitol Records, LLC v. ReDigi, Inc.*, No. 12-CV-95, 2022 WL 3348385, at *4 (S.D.N.Y. Aug. 12, 2022) (reducing rates from ones that might be deemed reasonable if adequate documentation were provided to ones that are much closer to the lower end of a reasonable range of billing rates, and collecting cases taking same approach).

Although KLM has not provided fee information for new associates, rates approximating $300 per hour have been found to be reasonable for first-year litigation associates in this District. *See City of Almaty v. Ablyazov*, No. 15-CV-5345, 2020 WL 614656, at *3 (S.D.N.Y. Feb. 7, 2020) (finding $330 an hour to be a reasonable rate for a second-year associate at Boies Schiller Flexner LLP in connection with motions to compel and sanctions motions); *Match Group, LLC v. Beazley Underwriting Ltd.*, No. 22-CV-4629, 2023 WL 9603886, at *7 (S.D.N.Y. Dec. 21, 2023) (finding $300 an hour to be a reasonable rate for junior associate with one year of experience in a breach of contract suit), *R. & R. adopted*, 2024 WL 863468 (S.D.N.Y. Feb. 29, 2024); *HomeAway.com, Inc. v. City of New York*, 523 F. Supp.3d 573, 599 (S.D.N.Y. 2021) (finding $300 an hour to be a reasonable rate for Gibson Dunn & Crutcher LLP associates with one to two years of experience in a Fourth Amendment suit). Although rates likely have increased during

the last one-and-a-half to five years, KLM has not provided any such evidence. Accordingly, the Court finds that a rate of $300 per hour for Mr. Roche is reasonable.

There is an additional reason that certain of the rates merit adjustment. The case was staffed with five attorneys and two paralegals. KLM notes that although two associates billed hours, they did not overlap; rather, one, Mr. Reichart, joined the team in February 2024 after another associate left, who, from the billing records, appears to be Mr. Roche. (Gordon Decl. ¶ 4 n.3; Second Gordon Decl. Ex. 1.) The billing rates for the two associates were not the same, however, and there is no indication from the description of the work that the work performed by Mr. Reichart after Mr. Roche left required a more senior attorney or an attorney with a higher billing rate. If the work performed by Mr. Reichart at $685 per hour could just as well have been done by a junior associate with a lower billing rate, there is no reasonable basis for charging the higher rate for the same work. *See Beastie Boys v. Monster Energy Co.*, 112 F. Supp.3d 31, 51 (S.D.N.Y. 2015) ("clients commonly demand that legal work be 'pushed down' to the timekeeper with the lowest billing rate who is able to capably perform that work, so as to keep legal fees manageable"). Accordingly, the Court finds that Mr. Reichart's time should be billed at a rate of $300 per hour (the reasonable rate for Mr. Roche), not $685 per hour.

The same analysis applies to the two paralegals. As with the associates, the two paralegals did not overlap in time. Rather, Ms. Ehrenberg provided assistance while the other paralegal, Ms. Alcibar-Zucker, was unavailable. (Gordon Decl. ¶ 4 & n.4.) Even though the paralegals were fungible, however, their billing rates were significantly different, with Ms. Alcibar-Zucker's rate being $259 per hour and Ms. Ehrenberg's rate

being $415 per hour.  No basis has been provided for charging Ms. Ehrenberg's higher rate.

Moreover, KLM did not provide any information about either paralegal's seniority or experience.  "With respect to the hourly rate for paralegals in commercial litigation, courts in this District generally award between $150 to $250."  *Bisnow LLC v. Lopez-Pierre*, No. 20-CV-3441, 2022 WL 17540573, at *23 (S.D.N.Y. Nov. 2, 2022), *R. & R. adopted*, 2022 WL 17540349 (S.D.N.Y. Dec. 05, 2022); *see also K2M Design, Inc. v. Schmidt*, No. 22-CV-3069, 2023 WL 10674525, at *12 (S.D.N.Y. Nov. 30, 2023) (finding paralegal rates of $150 to $200 per hour to be reasonable), *R. & R. adopted*, 2024 WL 1208910 (S.D.N.Y. March 21, 2024); *Top Jet Enterprises, Ltd. v. Kulowiec*, No. 21-MC-789, 2022 WL 1184245 (S.D.N.Y. Apr. 21, 2022) ("With respect to the time sought for non-attorney staff, courts in this District generally find that reasonable hourly rates for paralegal and litigation support staff range from $150 to $250") (citing *Tatintsian v. Vorotyntsev*, No. 16-CV-7203, 2020 WL 2836718, at *5 (S.D.N.Y. June 1, 2020) ("$150 per hour is reasonable for a paralegal in a complex commercial litigation matter")).  There may well be evidence and data to support higher paralegal fees in this District at the present time, but KLM has not provided any.  Accordingly, the Court finds that both paralegal rates should be reduced to $150 per hour, the lower end of the spectrum.

To be sure, an attorney or paralegal with more experience may justify a higher billing rate, particularly if they are able to perform the work more efficiently and skillfully than a less experienced attorney or paralegal with a lower billing rate.  But KLM has not provided any information to suggest that it benefitted from greater efficiency or skill

provided by Mr. Reichart as compared to Mr. Roche or by Ms. Ehrenberg as compared to Ms. Alcibar-Zucker. Accordingly, the Court adopts the following rates as reasonable:

| Name | Title | Location | Rate Awarded |
|---|---|---|---|
| Gordon, Keara | Partner | New York City | $1,195 |
| Gulliver, Colleen | Partner | New York City | $995 |
| Torrey, Haley | Senior Attorney | Philadelphia | $790 |
| Reichart, William | Associate | Baltimore | $300 |
| Roche, Caleb | Associate | New York City | $300 |
| Ehrenberg, Heather | Paralegal | New York City | $150 |
| Alcibar-Zucker, Athenais | Paralegal | New York City | $150 |

## B.    Hours Worked

To determine the compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp.2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger*, 160 F.3d at 876). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger*, 160 F.3d at 876 (internal quotation marks and citation omitted). "The relevant issue … is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same). A court thus should exclude from the lodestar calculation "excessive,

redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422,

425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)

("If the district court concludes that any expenditure of time was unreasonable, it should

exclude these hours from the lodestar calculation").

      KLM seeks fees for 146.2 hours of work.  The Court has reviewed the entirety of

the billing records submitted by KLM.  As explained in the Gordon Declaration, the work

performed following the date when KLM filed its motion to dismiss can be divided into

discrete phases.  (Gordon Decl. ¶¶ 9-31.)  The phases and the hours expended for each

are as follows:

| Phase | Dates | Work Product | Hours |
|---|---|---|---|
| Motion to dismiss briefing, post-filing | March 15, 2023; May 10, 2023; July 12, 2023 | Reply brief; Two notices of supplemental authority | 38.8 |
| Court's July 13, 2023 Order giving Plaintiff opportunity to submit additional material | Aug. 10, 2023 | Response to Plaintiff's declaration that was flatly inconsistent with the complaint | 13.7 |
| Court's Sept. 12, 2023 Opinion and First Order to Show Cause ("OSC") | Oct. 24, 2023; Dec. 8, 2023 | Response to Sheehan's brief and declarations; Letter to Court re other Sheehan cases | 53.8[3] |

---

[3] For this third phase, the Gordon Declaration states a total of 54.1 hours for this phase while at the same time stating that the Firm spent 50 hours for one set of tasks and 3.8 hours for another, for a total of 53.8 hours.  (Gordon Decl. ¶¶ 17-19.)  The Court uses the lesser number.

| Court's Jan. 5, 2024 Second OSC | Feb. 8, 2024 | Response to Sheehan's response; Notice of supplemental authority | 12.8[4] |
|---|---|---|---|
| Court's Sanctions Opinion | Oct. 7, 2024 | Gordon Declaration supporting application for fees and costs | 27.1 |

(*Id.*)  Each phase of work required reviewing, analyzing, researching, drafting, editing, and finalizing submissions to the Court as well as conferencing both internally and with the client.  All of those endeavors are standard legal work; and each work product produced by the Firm after filing the motion to dismiss was measured and appropriate.

Sheehan takes issue with the time devoted to certain tasks, claiming that the time is excessive.  (*See* Dkt. 66 at 1-3.)  For example, Sheehan points to instances where three separate timekeepers reviewed, analyzed, and/or summarized Plaintiff's opposition to the motion to dismiss; a paralegal spent 3.5 hours cite-checking and compiling a table of authorities for a 10-page brief; defense counsel spent 8 hours preparing a three-page letter responding to Plaintiff's declaration; and the two partners spent "several hours" reviewing and analyzing the Court's 12-page order awarding sanctions.  The Court agrees that there appears to be some duplication and excess "fat" in the billing that merits trimming.

When faced with such a situation, courts have discretion "simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (citation omitted);

---

[4] For this fourth phase, the Gordon Declaration states a total of 12.8 hours while at the same time stating that the Firm spent 9.5 hours for one set of tasks and 3.9 hours for another set of tasks, for a total of 13. 4 hours.  (Gordon Decl. ¶¶ 25-29.)  Again, the Court uses the lesser number.

*see also Association of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04-CV-3600, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) ("It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate").  Considering all billing entries, the Court finds that a 15% deduction should be applied across the board to account for redundancy and excess. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (finding no abuse of discretion in district court's having reduced fees by 20% due to vague, duplicative, and inconsistent entries); *Siegel v. Bloomberg L.P.*, No. 13-CV-1351, 2016 WL 1211849, at *12 (S.D.N.Y. March 22, 2016) (reducing fee award by 15% to account for duplication, overbilling, and overstaffing); *Humane Society of United States v. HVFG, LLC*, No. 06-CV-6829, 2010 WL 3322512, at *7 (S.D.N.Y. Aug. 19, 2010) (finding "20% reduction in hours based on specific items deemed unnecessary, coupled with … additional 15% voluntary reduction to the overall fee request, sufficient to 'trim the fat' and render a reasonable number of hours expended").

Additionally, it is apparent from the billing records that the case was staffed with a "top-heavy" team – two partners, one "senior attorney," and effectively one associate and one paralegal.  Unlike the two associates and two paralegals, the two partners worked on the case at the same time.  In general, there is nothing wrong with that.  *See, e.g., Rojas v. B E F Restaurante Inc.*, No. 23-CV-6160, 2023 WL 8039473, at *3 (S.D.N.Y. Nov. 20, 2023) (awarding fees for time spent by two partners, three associates, and a law clerk); *Star Insurance Co. v. A&J Construction of New York, Inc.*, No. 15-CV-8798, 2018 WL 6177857, at *5 (S.D.N.Y. Nov. 26, 2018) (observing that "[a]lthough two partners and

three associates worked on this case at various times, they performed reasonable and non-duplicative tasks"); *see generally Williamsburg Fair Housing Committee v. Ross-Rodney Housing Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984) (stating that "[m]ultiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law"). Different cases require different levels and combinations of staffing.

However, as the following table shows, the work performed was skewed heavily to the three timekeepers – the two partners and senior attorney – with the highest billing rates:

| Name | Title | Rate Billed | Hours Billed |
|---|---|---|---|
| Gordon, Keara | Partner | $1,195 | 41.6 |
| Gulliver, Colleen | Partner | $995 | 38.7 |
| Torrey, Haley | Senior Attorney | $790 | 39.9[5] |
| Reichart, William | Associate | $685 | 2.3 |
| Roche, Caleb | Associate | $608 | 12.1 |
| Ehrenberg, Heather | Paralegal | $415 | 3.7 |
| Alcibar-Zucker, Athenais | Paralegal | $259 | 7.9 |

(Dkt. 65.)  In terms of percentage of work performed, the seniormost partner with the highest billing rate performed 28.5% of the work; the two partners together performed 55% of the work; and the two partners and senior attorney performed 82% of the work.

---

[5] The table of individual hours submitted by KLM at the request of the Court indicates a total of 40.2 hours for attorney Torrey.  When that number is used, the total hours of all timekeepers is 146.5 hours, not 146.2 hours.  As noted above, KLM withdrew its initial request for the work billed for Torrey's pro hac vice application.  The Court attributes the .3 discrepancy in the total of the individual timekeeper hours to that adjustment.  Accordingly, the Court has reduced Torrey's time by .3 to arrive at 39.9.

In contrast, associates performed less than 10% of the work. If only lawyer hours and not paralegal hours are considered, the disparity is even greater. The Court does not doubt the expertise and general efficiency of each attorney's individual efforts. But the distribution of time spent is the inverse of how big firms, such as DLA Piper, typically staff cases; "such lopsidedly partner-heavy bills are quite unusual in the context of litigation work." *Beastie Boys*, 112 F. Supp.3d at 51. And, there is nothing about the work performed – much of which was devoted to reviewing, analyzing, and editing briefs and affidavits for the motion to dismiss and sanctions briefing – that required such a top-heavy distribution.

"Ample case authority in this District, applying the standard of objective reasonableness, supports reducing a fee award where the legal hours recorded by plaintiffs' counsel fell unusually heavily on partners with high hourly rates." *HomeAway.com*, 523 F. Supp.3d at 592 (collecting cases); *see also McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, No. 22-CV-1138, 2023 WL 4422495, at *4 (S.D.N.Y. July 10, 2023) (collecting cases and stating: "many courts in this district reduce fee awards where hours recorded fall heavily onto partners billing at high rates"). This is so regardless of whether the context is a fee-shifting statute or sanctions. *See McKenzie-Morris*, 2023 WL 4422495, at *4 (reducing Rule 11 fee award due to top-heavy staffing). "Although it is the Defendants' prerogative to commission or to approve top-heavy staffing on this matter, the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending. The test is whether the plaintiff spent the minimum necessary to litigate the case effectively." *Id.* (internal quotation marks and citation omitted). Thus, when "determining the amount of fees to

award as a sanction, the Court … should base its award of fees on an objective standard, rather than deferring to what may have been Defendants' preference to staff the motion in a particularly top-heavy manner." *Id.*

In instances of top-heavy staffing, courts have reduced fee awards by varying percentages. *See id.* at *4 (reducing fee award by 10% where partner billed approximately 60% of lawyer hours); *HomeAway.com*, 523 F. Supp.3d at 592-93 (reducing fee award by 15% where partners billed over 50% of all lawyer hours); *Ferrara v. Happy Time Trucking LLC*, No. 17-CV-7450, 2020 WL 13159036, at *12 (E.D.N.Y. Oct. 28, 2020) (reducing fee award by 25% for partner billing over 80% of the work); *Beastie Boys*, 112 F. Supp.3d at 57 (reducing fee award by 30% mainly for "partner-intensive nature of the case staffing" and observing that "[f]ee reductions around 30% are … common in this District to reflect considerations of whether work performed was necessary, leanly staffed, or properly billed").

Given the considerable disparity between senior, and particularly partner, time billed on one hand compared to associate time on the other, the Court finds that a 25% reduction in the time devoted by the two partners (Gordon and Gulliver) and a 15% reduction in the time devoted by the senior attorney (Torrey) is warranted in addition to the 10% reduction applied across-the-board for redundancy and excess.

## C.   Sheehan's Other Arguments

Much of Sheehan's opposition to the amount of fees sought by KLM is misguided as it essentially seeks to revisit issues already resolved. According to Sheehan, KLM "appears to take the position that upon receipt of its motion to dismiss, Mr. Sheehan should have immediately discontinued the action and eliminated the need for any further litigation." (Opp. at 2.) Precisely. And, that is exactly why the Court awarded sanctions

for all work following the motion to dismiss filing.  (*See, e.g.*, Dkt. 53 at 7 ("Sheehan's

continued pursuit of Dakus' claims after KLM filed its motion to dismiss is sanctionable").)

Sheehan thus is incorrect when he states that "this conclusion appears to be at odds with

this Court's prior findings."  (Opp. at 2.)

Similarly, Sheehan errantly attempts to cabin the Court's finding that he acted in

bad faith by arguing that the Court did not find that Sheehan acted in bad faith in regard

to either Order to Show Cause.  (*Id.* at 4.)  That position again ignores the Court's findings.

The Court found that while Sheehan did not act in bad faith when he initially filled the

complaint – before the motion to dismiss – he clearly acted in bad faith once he was on

notice of the falsity of Dakus's allegations and that his "continued pursuit 'lacked any legal

or factual basis.'"  (Dkt. 53 at 6-7 (brackets and citation omitted).)

Sheehan also argues that the only excess costs caused by his bad faith conduct

was at most the 13.7 hours of time KLM devoted to its response to the Court's July 13,

2023 order.  (Opp. at 11.)  Sheehan argues that the balance of the work performed by

KLM was unnecessary and gratuitous.[6]  (*See id.* at 4-5.)  Not so.  The Court awarded

---

[6] For instance, Sheehan accuses KLM of acting out of "vindictiveness" and pursuing a "vendetta" against Sheehan.  (Opp. at 5.)  Yet, the sanctions issue was first raised by the Court *sua sponte*, not by KLM.  (Dkt. 53 at 5.)  Sheehan also takes issue with KLM's having notified the Court about other courts' discussions of Sheehan's sanctionable conduct.  (Opp. at 5-6.)  But doing so was appropriate.  The imposition of sanctions against Sheehan on prior occasions can inform the bad faith inquiry as well as assessment of what level of deterrence may be required of a present sanction.  *See Durant v. Big Lots, Inc.*, No. 23-CV-561, 2024 WL 3321879, at *4 (M.D. Fla. July 3, 2024) (sanctioning Sheehan and citing *Trump v. Clinton*, 653 F. Supp.3d 1198, 1219 (S.D. Fla. 2023) (stating that "while a litigant's conduct in other cases would normally not be relevant, when … faced with … a repeat offender, undeterred by admonitions, [the court] has the authority to consider that litigant's outside conduct")); *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368, 2020 WL 3483661, at *18 (S.D.N.Y. June 26, 2020) (considering, in context of assessing sanctions, attorney's pattern of sanctionable conduct

KLM the excess costs, expenses and attorneys' fees reasonably incurred "after KLM filed its motion to dismiss." (Dkt. 53 at 9.)  Had Sheehan withdrawn the case after KLM provided clear notice, through its motion to dismiss, that Dakus's claim was false, KLM would not have incurred any of the ensuing costs of litigation.  As explained above, everything that KLM filed for which it seeks fees was an appropriate response to Sheehan's submissions and arguments. Sheehan has only himself to blame for prolonging matters after KLM filed its motion to dismiss and thereby causing KLM to incur the excess fees and costs of continued litigation.

**D.    The Amount Of Fees Awarded**

The following table applies the adjustments discussed above – modified hourly rates for the two associates (Roche and Reichart) and one of the paralegals (Ehrenberg); a 15% across-the-board reduction of time; and, in addition, a 25% reduction in the time of the two partners (Gordon and Gulliver) and a 15% reduction in the time of the senior attorney (Torrey).

| Name | Rate Awarded | Hours Adjusted | | Total Fees |
|---|---|---|---|---|
| Gordon, Keara | $1,195 | 25 | (=41.6x.6) | $29,875.00 |
| Gulliver, Colleen | $995 | 23.2 | (=38.7x.6) | $23,084.00 |
| Torrey, Haley | $790 | 27.9 | (=39.9x.7) | $22,041.00 |
| Reichart, William | $300 | 2 | (=2.3x.85) | $600.00 |
| Roche, Caleb | $300 | 10.3 | (=12.1x.85) | $3,090.00 |

in other cases), *aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. 2021), *aff'd*, 6 F.4th 267 (2d Cir. 2021); *Winegard v. New Media Investment Group, Inc.*, No. 19-CV-4834, 2020 WL 5015361, at *5 (S.D.N.Y. Aug. 25, 2020) (attorney's history of "numerous warnings and sanctions in other cases in this district … is surely relevant to the assessment of whether a lesser sanction would suffice").

| Ehrenberg, Heather | $150 | 3.1 (=3.7x.85) | $465.00 |
| Alcibar-Zucker, Athenais | $150 | 6.7 (=7.9x.85) | $ 1,005.00 |

The grand total comes to $80,160.00, which the Court deems reasonable. Accordingly, the Court recommends that KLM be awarded fees in the amount of $80,160.00.

### Determination of Costs

KLM seeks to recover $3,300.50 in costs.[7]  (Reply at 10; Second Gordon Decl. ¶ 5.)  Virtually all of those costs are for Westlaw research; only $0.50 are PACER charges.[8]  (Gordon Decl. ¶ 32; Second Gordon Decl. Ex. 1.)  To be awarded, costs must be properly substantiated through invoices or receipts, or "a sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items." *Rosales v. Gerasimos Enterprises Inc.*, No. 16-CV-2278, 2018 WL 286105, at *2 (S.D.N.Y. Jan. 3, 2018) (awarding costs based on sworn statement by attorney under penalty of perjury); *see also Mordant v. Citinsider LLC*, No. 18-CV-9054, 2019 WL 3288391, at *3 (S.D.N.Y. July 22, 2019) (same); *Dominguez v. 322 Restaurant Corp.*, No. 14-CV-3643, 2019 WL 2053995, at *4 (S.D.N.Y. May 9, 2019) (same).  KLM has satisfied the substantiation requirement here with both the Gordon Declarations and the billing records, which include Westlaw charges.

---

[7] KLM's cost request initially included a $200 filing fee for the pro hac vice admission application of one of its attorneys.  In its reply, KLM removed that charge from its request. (Reply at 10 n.3.)

[8] PACER is an acronym for "Public Access to Court Electronic Records," the electronic filing system and database for the federal courts.  Charges may be incurred for viewing and downloading filings from a case's docket.

Sheehan argues, however, that none of those costs are recoverable because computerized legal research costs are properly considered firm overhead expenses. (Opp. at 12-13.)  Many cases have so held.  *See, e.g.*, *Charles v. Seinfeld*, No. 18-CV-1196, 2022 WL 889162, at *8 (S.D.N.Y. March 25, 2022) (denying costs of electronic research, "which are already accounted in the attorneys' hourly rates"); *PMJ Capital Corp. v. Lady Antoinette*, No. 16-CV-6242, 2020 WL 4740534, at *8 (S.D.N.Y. Feb. 19, 2020) (disallowing PACER charges), *R. & R. adopted*, 2020 WL 4735178 (S.D.N.Y. Aug. 14, 2020); *BD v. DeBuono*, 177 F. Supp.2d 201, 209 (S.D.N.Y. 2001) ("Westlaw fees are simply an item of overhead, and as such should be built into the fees charged, rather than unbundled and reimbursed separately").

The cases are not uniform, however, and it has been observed that "courts in this district are split on whether the cost of computerized legal research is compensable." *Rahman v. Smith & Wollensky Restaurant Group Inc.*, No. 06-CV-6198, 2009 WL 72441, at *9 (S.D.N.Y. Jan. 7, 2009).  KLM thus cites cases, particularly in the sanctions context, where courts have awarded costs for electronic research charges and PACER charges. *See, e.g.*, *Citigroup Inc. v. Seade*, No. 21-CV-10413, 2022 WL 1205599, at *2 (S.D.N.Y. March 15, 2022) (awarding costs for computer research); *Rahman*, 2009 WL 72441, at *9 (same); *Profile Publishing & Management Corp. APS v. Musicmaker.com, Inc.*, No. 01-CV-2886, 2003 WL 1785798, at *1 (S.D.N.Y. Apr. 2, 2003) (same); *Manti's Transportation v. Kenner*, No. 13-CV-6546, 2015 WL 1915004, at *13 (E.D.N.Y. Apr. 27, 2015) (awarding PACER costs).

To resolve this division of authority, the Court looks to the Second Circuit's pronouncements on the issue.  The Second Circuit, in affirming the district court's denial

of awarding costs for computer research, has held that "computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *United States for Use & Benefit of Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp.*, 95 F.3d 153, 173 (2d Cir. 1996). "If," however, "[the firm] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award." *Arbor Hill*, 369 F.3d at 98; *see also Rahman*, 2009 WL 72441, at *9 (stating that computer research expenses "are recoverable as a component of attorneys' fees where it is clear that counsel regularly charge paying clients separately for them").

Here, it is clear that the Firm charged KLM for Westlaw and PACER charges as they appear directly on the billing records. (*See* Second Gordon Decl. Ex. 1.) The Court infers from the Gordon Declarations, and the manner the charges are reflected in the billing records, that doing so is the Firm's regular practice. Accordingly, the computer research and PACER charges should be awarded as costs. The total Westlaw charges reflected in the billing records are $3,300.00, and the total PACER charges are 0.50, for a total cost award of $3,300.50.

## Conclusion

For the foregoing reasons, I recommend that KLM be awarded $80,160.00 in reasonable attorney's fees, and $3,300.50 in costs.

## Deadline for Objections and Appeal

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Any party shall have fourteen (14) days to file a written response to the other party's objections. Any such objections and responses shall

be filed with the Clerk of Court, with courtesy copies delivered to the Chambers of the Honorable Ronnie Abrams, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any request for an extension of time for filing objections must be addressed to Judge Abrams. **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: April 4, 2025
        New York, New York

Copies transmitted this date to all counsel of record.